# EXHIBIT 1



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

**SENT VIA EMAIL: FOIA@hq.dhs.gov**

**SENT TO USCIS VIA ONLINE PORTAL**

**SENT TO CBP VIA SecureRelease PORTAL**

March 8, 2023

Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-065

National Records Center
FOIA/PA Office
U.S. Citizenship and Immigration Services
P.O. Box 648010
Lee's Summit, MO 64064-8010

FOIA Office,
U.S. Customs and Border Protection
90 K Street, NE
MS 1181
Washington, DC 20229


Dear FOIA Officers,

    Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the implementing FOIA regulations of the Department of Homeland Security (DHS), Office of the Secretary, 6 CFR Part 5, I respectfully request the following records (or records containing the following information) that DHS, U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) have within its possession:

Section 1)    All records within the Alien File (A-File) of Prince Henry Charles Albert David (Date of Birth 09/15/1984) of the British Royal Family *aka* Prince Harry *aka* His Royal Highness Prince Henry of Wales *aka* the Duke of Sussex, including but not limited to:
- Any and all applications for immigration benefits filed, whether or not adjudicated;



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

- Any and all Forms I-213;
- Any and all Forms I-275; and
- Any and all Forms I-877.

Section 2)   All records pertaining to the Duke of Sussex in the following system of records maintained by CBP and DHS
- Automated Targeting System (ATS, DHS/CBP-006);
- Advance Passenger Information System (APIS, DHS/CBP-005);
- Border Crossing Information System (BCIS, DHS/CBP-007);
- U.S. Customs and Border Protection TECS (DHS/CBP-011);
- Non-Federal Entity Data System (NEDS, DHS/CBP-008);
- DHS Use of the Terrorist Screening Database (TSDB) System of Records (DHS/ALL-030);
- CBP Intelligence Records System (CIRS, DHS/CBP-024);
- DHS Automated Biometric Identification System (IDENT, DHS/USVISIT-004);
- Electronic System for Travel Authorization (ESTA, DHS/CBP-009);
- Nonimmigrant Information System (NIIS, DHS/CBP-016);
- Arrival and Departure Information System (ADIS, DHS/CBP-021);and
- Electric Visa Update System (EVUS., DHS/CBP-022).

Section 3)   All records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act including, but not limited to, email communications within the DHS Office of the Secretary, the USCIS Office of the Director, the CBP Office of the Commissioner, or any subordinate office within those named departments or agency or a record of any communication between any of those named entities and the U.S. Department of Stater, the U.S. Embassy in London, the Federal Bureau of Investigation, or U.S. Immigration and Customs Enforcement.

  The terms "pertaining to," "referring," "relating," or "concerning" with respect to any given subject means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

  The term "record" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following:  memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (emails), MMS or SMS text messages, instant messages, messaging



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

systems (such as iMessage, Microsoft Teams, WhatsApp, Telegram, Signal, Google Chat, Twitter direct messages, Lync, Slack, and Facebook Messenger), contracts, cables, telexes, notations of any type of conversation, telephone call, voicemail, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electronic records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.  A record bearing any notation not a part of the original text is to be considered a separate record.  A draft or non-identical copy is a separate record within the meaning of this term.  By definition a "communication" (as that term is defined herein) is also a "record" if the means of communication is any written, recorded, or graphic matter of any sort whatsoever, regardless of how recorded, and whether original or copy.

The terms "and" and "or" should be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope.  The terms "all," "any," and "each" should each be construed as 'encompassing any and all.  The singular includes the plural number, and vice versa.  The present tense includes the past and vice versa.  The masculine includes the feminine and neuter genders.

The term "communication" means each manner or means of disclosure or exchange of information (in the form of facts, ideas, inquiries, or otherwise), regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in an in-person meeting, by telephone, facsimile, e-mail (desktop or mobile device), text message, MMS or SMS message, messaging systems (such as iMessage, Microsoft Teams, WhatsApp, Telegram, Signal, Google Chat, Twitter direct messages, Lync, Slack, and Facebook Messenger), regular mail, telexes, releases, or otherwise.

"Communications with," "communications from," and "communications between" means any communication involving the related parties, regardless of



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

whether other persons were involved in the communication, and includes, but is not limited to, communications where one party is cc'd or bcc'd, both parties are cc'd or bcc'd, or some combination thereof.

The term "employee" means a current or former: officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, permanent employee, staff employee, attorney, agent (whether de jure, de facto, or apparent without limitation), advisor, representative, attorney (in law or in fact), lobbyist (registered or unregistered), borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, provisional employee, or subcontractor.

Please consider all members of a document "family" to be responsive to the request if any single "member" of that "family" is responsive, regardless of whether the "family member" in question is "parent" or "child."

This request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

In the interest of expediency and to minimize the research and/or duplication burden on your staff, please send records electronically if possible. If this is not possible, please notify me before sending to the mailing address listed below. If access to this request will take longer than twenty business days, please let me know when I might receive records or be able to inspect the requested records. Please produce responsive documents as soon as they become available. In all cases, please communicate with me at the below email address.

Please comply fully with 5 U.S.C. § 552(b). Accordingly, without limitation to the foregoing, if any portion of this request is denied for any reason, please provide written notice of the records or portions of records that are being withheld and cite each specific exemption of the Freedom of Information Act on which the agency relies. Moreover, to the extent that responsive records may be withheld in part produce all reasonably segregable portions of those records. Additionally, please provide all responsive documents even if they are redacted in full.

**Fee Waiver Request**

This request is primarily and fundamentally for non-commercial purposes. As a 501(c)(3) nonprofit, Heritage Foundation does not have a commercial purpose and



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

the release of the information requested is not in Heritage Foundation's interest. Heritage Foundation's mission is to is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense. Heritage Foundation uses the information requested and analyzes it in order to educate the public through social media,[1] broadcast media[2] (traditional and nontraditional) and press releases.[3]  This request is in the public interest in light of the potential revocation of Prince Harry's visa for illicit substance use[4] and further questions regarding the Prince's drug use and whether he was properly vetted before entering the United States.

     Because this is a request by a member of the news media for information of public interest, made in my capacity as an author for the *Daily* Signal[5] (a major news outlet[6]), I actively gather information of potential interest to our Daily Signal Audience, and I use my editorial skills to turn raw materials into a distinct work, and  I distribute that work to our Daily Signal audience through podcasts[7] or articles. I request that you waive all applicable fees associated with this request.

If you deny this request for a fee waiver, please advise me in advance of the estimated charges if they are to exceed $50. Please send me a detailed and itemized explanation of those charges.

**Request for Expedited Processing**

     Pursuant to 6 C.F.R. § 5.5(e)(1)(iv), I request expedited processing for this request.  I certify the following statement of facts in support of expedited processing to be true and correct pursuant to 6 C.F.R. § 5.5(e)(1)(iv).

**Background:**

    **1**. The following factual Appendices are attached and expressly incorporated herein and made part of this request (as are the factual sources cited therein):

---

[1] Heritage Foundation. [@ Heritage] (2022, February 18). 626.8K Followers Twitter.  https://twitter.com/Heritage
[2] Fox News. (2022, February 18). Heritage Foundation launches Conservative Oversight Project aimed at 'exposing' Biden admin, leftist policies. https://www.foxnews.com/politics/heritage-conservative-oversight-project-biden-admin-leftist-policies
[3] Heritage Foundation. (2022, February 18) Press.  https://www.heritage.org/press .
[4] https://www.express.co.uk/news/royal/1743247/Prince-Harry-US-visa-at-risk-drug-use-admission-Piers-Morgan-dxus
[5] Daily Signal. (2022, February 18). Mike Howell.  https://www.dailysignal.com/author/mike-howell/
[6] Daily Signal. [@DailySignal] (2022, February 18). 73.7K Followers Twitter.  https://twitter.com/DailySignal
[7] Apple. (2022, March 4)  The Daily Signal Podcast. https://podcasts.apple.com/us/podcast/the-daily-signal-podcast/id1313611947



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

- Appendix A is a compilation of news articles and national TV transcripts covering the issue of substance abuse by Prince Harry, including the Prince's own admissions regarding the use of drugs such as cocaine and marijuana in his recent book "Spare."

**Expedited processing is warranted under 6 C.F.R. § 5.5(e)(1)(iv).**

1. This section provides that requests for expedited processing "will" be granted when the request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

Section 6 C.F.R. § 5.5(e)(1)(iv) mirrors the Department of Justice regulation governing expedited processing, 28 C.F.R. § 16.5(e)(1)(iv), which provides that expedited processing shall be granted regarding "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."

Courts have held that the DOJ Regulation requires the requester to show: (1) that the request involves a "matter of widespread and exceptional media interest" (28 C.F.R. § 16.5(e)(1)(iv)); and (2) that the matter is one "in which there exists possible questions about the integrity of the government that affect public confidence" (*id.*). *See Edmonds v. FBI*, No. 02-cv-1294 (ESH), 2002 WL 32539613, *3 (D.D.C. Dec. 3, 2002). It is not necessary to show "prejudice or a matter of current exigency to the American public." *Id.*

First, the DOJ Regulation requires showing that the matter about which questions of integrity have been raised is the subject of widespread national media attention. *See Am. Oversight v. DOJ*, 292 F.Supp.3d 501, 507–508 (D.D.C. 2018) (denying motion for expedited processing because general media interest in Solicitor General's nomination is insufficient to show media interest in possible ethics questions concerning the nomination). There need not be a showing that the disclosure would shed considerable light on agency operations; only that there is "exceptional" and "widespread" media interest. *See CREW v. DOJ*, 870 F.Supp.2d 70, 81 (D.D.C. 2012), *rev'd on other grounds*, 746 F.3d 1082 (D.C. Cir. 2014). While the media interest need be "widespread" and "exceptional" it need not be overwhelming. *See ACLU*, 321 F.Supp.2d at 31–32 (rejecting DOJ's position that requester's citation to what the court described as "only a handful of articles" was insufficient to show "widespread and exceptional media interest" because those articles "were published in a variety of publications and repeatedly reference the ongoing national discussion about the Patriot Act and Section 215" (second



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

quotation added)); *Edmonds*, 2002 WL 32539613, at *3 (numerous national newspaper and network television broadcasts concerning whistleblower's allegations of security lapses in FBI translator program met test).[8]

Second, the DOJ Regulation requires showing that "'there exists *possible* questions about the government's integrity that affect public confidence.'" *CREW v. DOJ*, 436 F.Supp.3d 354, 361 (D.D.C. 2020) (*quoting* 28 C.F.R. § 16.5(e)(1)(4)) (emphasis by Court).[9] It does not "require the requester to prove wrongdoing by the government in order to obtain documents on an expedited basis." *Id.* at 362. "The primary way to determine whether such possible questions exist is by examining the state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant as to reduce public confidence in governmental institutions." *Am. Oversight v. DOJ*, 292 F.Supp.3d 501, 508 (D.D.C. 2018). This is not an extraordinarily high bar. *See, e.g.*, *CREW*, 436 F.Supp.3d at 361 (complaint sufficient to survive a motion to dismiss where it alleged Attorney General's action regarding disclosure of Mueller Report "supported an inference that at best, the Attorney General undertook to frame the public discussion on his own terms, and at worst that he distorted the truth"); *ACLU v. DOJ*, 321 F.Supp.2d 24, 32 (D.D.C. 2004) (allegations in press that Section 215 of the Patriot Act may be unconstitutional and reports that Members of Congress have alleged abuses of Section 215 "implicate[] government integrity" and hence are sufficient to meet test); *Edmonds*, 2002 WL 32539613, at *3–4 (test met where plaintiff alleged security lapses in FBI translators program, national news covered the issue, and two Senators expressed concern regarding "the significant security issues raised by plaintiff's allegations and the integrity of the FBI").[10]

---

[8] *Cf.* 28 C.F.R. § 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic.").
[9] To be sure, this standard does not require expedition of any questions concerning government integrity. *See, e.g.*, *White v. DOJ*, 16 F.4th 539, 544 (7th Cir. 2021) (test not met in case where records sought to cast doubt on requestors' criminal conviction where requestor claimed he was subject to an elaborate government sting operation).
[10] DOJ has granted expedition under the DOJ Regulation in a number of circumstances. *See, e.g.*, *CREW v. DOJ*, 870 F.Supp.2d at 81 n. 14 (expedition granted to request seeking records on FBI's closed investigation of Congressman DeLay for misconduct which did not result in charges, but received considerable media attention (subsequent history omitted)); *CREW v. DOJ*, 820 F.Supp.2d 39, 42, 46 (D.D.C. 2011) (expedition granted to request seeking information concerning possible deletion of Office of Legal Counsel emails where the possible deletion was flagged as a hindrance in an internal investigation, covered in the media, and was the subject of Congressional concerns); *Elec. Frontier Found. v. DOJ*, 565 F.Supp.2d 188, 189–91 (D.D.C. 2008) (expedition granted to request seeking information regarding storage of information obtained by National Security Letters in FBI's Data Warehouse); *CREW v. DOJ*, No. 05-cv-2078 (EGS), 2006 WL 1518964, *1 (D.D.C. June 1, 2006) (expedition granted to request concerning government's decision to seek a reduced penalty in tobacco litigation where government's decision was subject to intensive news coverage and prompted concern



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

**2**.    I am requesting expedited processing for this FOIA request to understand whether Prince Harry was properly vetted prior to or during admission into the United States.  National media outlets have widely reported on Prince Harry's drug use which, pursuant to the Immigration and Nationality Act, should make him inadmissible to the United States absent the requisite waiver available to non-immigrants.  *See generally* App. A.  Specifically, multiple media outlets have consistently reported on Prince Harry's abuse of multiple illicit substances, including marijuana, cocaine, "magic mushrooms," and other psychedelic drugs.  *See* App. A at 6, 8–9, 15, 19, 21–22, 24, 27, 34, 38, 46, 49, 52–53, 55–56, 59, 73, 87, 92, 94, 96–97, 100, 106–107, 114–115, 118, 121–122.  From media reports, it appears this drug use was continuous and substantial, at the very least from the Prince's teenage years into his "late 20s."  *See* App. A at 106, 114.  Media coverage has even included reports that Prince Harry became addicted to cocaine, heroin, ketamine, and MDMA.  *See* App. A at 122.  This conduct likely violated numerous laws in relevant jurisdictions.  It is unclear at this juncture whether DHS complied with the law if, in admitting Prince Harry, did so without a waiver or any interview with CBP to assess whether, given his history, he was admissible to the United States.  As a result, this widespread media interest in Prince Henry's drug abuse inevitably raises possible questions regarding his application for residency in the United States.  Public confidence in the government would undoubtedly suffer if DHS, CBP, and USCIS failed to properly vet such a high-profile case.  Moreover, if Prince Harry was granted preferential treatment that to would undermine public confidence in DHS, CPB, and USCIS's application of equal justice under the law.  Expedition is warranted.

Thank you in advance for considering my request.  If you have any questions please contact me at <u>oversightproject@heritage.org</u>.

                                        Sincerely,

                                        Mike Howell
                                        Senior Advisor &
                                        Author at *The Daily Signal*
                                        The Heritage Foundation
                                        214 Massachusetts Ave
                                        Washington, DC 20002

---

from "several Congressman" which caused a request for an Inspector General investigation of "improper political interference" with the decision).