UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, et. al, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23-1198 (CJN) |
| DEPARTMENT OF HOMELAND SECURITY | |
| *Defendant*. | |

**MEMPORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Authorities ……………………………………………………………...……ii

Introduction…………………………………………………………………….……….1

Background………………………………………………………………………….…..2

   I.  Statutory and Regulatory Framework……………………………….…….…....2

   II.  Factual and Procedural Background ………………..…………………………...…4

Argument …………………………………………………………………………6

   I.  Preliminary Injunctions are Generally Not Appropriate in FOIA Cases…………………6

   II.  In Any Event, Plaintiffs Have Failed to Carry Their Heavy Burden to Show Entitlement
to a Preliminary Injunction. ………………………………………………………9

     A.  Plaintiffs Have Not Demonstrated that they Will Suffer Irreparable Harm………...10

     B.  Plaintiffs have not Shown a Likelihood of Success on the Merits…………………..13

       1.  Because Plaintiffs' underlying FOIA request to CBP was denied, their request for
expedited processing from CBP is moot. ………………………………………..13

       2.  Widespread and exceptional media interest is lacking. …………………………15

       3.  Plaintiffs failed demonstrate that the sought after records rasise questions about
the government's integrity that affect public confidence………………………..18

     C.  The Public Interest and Balance of Equities Weigh Against a Preliminary
Injunction...............................................................................................................20

Conclusion ………………………………………………………………………....22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Dep't of Just.*,
   321 F. Supp. 2d 24 (D.D.C. 2004) ....................................................................... 17, 18

*Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001) ............................................................................. 3, 20

*Allied Progress v. Consumer Fin. Prot. Bureau*,
   Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) .................. 8, 10

*Am Oversight v. Dep't of State*,
   414 F. Supp. 3d 182 (D.D.C. 2019) .............................................................................. 9

*Aviles-Wynkoop v. Neal*,
   978 F. Supp. 2d 15 (D.D.C. 2013) ............................................................................. 11

*Baker v. Consumer Fin. Prot. Bureau*,
   Civ. A. No. 18-2403 (CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ..................... 8

*Brennan Ctr. For Just. v. Dep't of*,
   *Com.*, 498 F. Supp. 3d 87 (D.D.C. 2020) ................................................. 8, 9, 18, 19

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022) ................................................................................... 10

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) .................................................................................... 10

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) .................................................................................... 6

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*,
   15 F. Supp. 2d 1 (D.D.C. 1997) ................................................................................ 11

*Cornish v. Dudas*,
   540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................................ 11

*Council v. Dep't of Homeland Sec.*,
   470 F. Supp. 3d 32 (D.D.C. 2020) .............................................................................. 9

*Dale v. IRS*,
   238 F. Supp. 2d 99 (D.D.C. 2002) ............................................................................ 16

*Davis*,
   571 F.3d at ............................................................................................................. 9, 10

*Dep't of Just.*,
   436 F. Supp. 3d 354 (D.D.C. 2020) .................................................................. 4, 5, 19

*Dep't of Lab.*, Civ. A.,
   No. 22-3569 (RC), 2023 WL 2043149 (D.D.C. Feb. 16, 2023) ................................... 7

*Dorfmann v. Boozer*,
   414 F.2d 1168 (D.C. Cir. 1969) .................................................................................. 7

*Edmonds v. FBI*, Civ. A.,
   No. 02-1294, 2002 U.S. Dist. LEXIS 26578 (Dec. 3, 2002) ............................... 17, 19

*Frontier Found. V. Off. of Dir. Nat'l Intel.*,
   542 F. Supp. 2d 1181 (N.D. Cal. 2008) ....................................................................... 9

*Frontier Found. V. Off. of Dir. Nat'l Intel.*,
  Civ. A. No. 07-5278, 2007 WL 4208311 ....................................................... 9

*Garvey v. Dep't of Just.*,
  53 F. Supp. 3d 215 (D.D.C. 2014) ............................................................... 14

*Graff v. FBI*,
  822 F. Supp. 2d 23 (D.D.C. 2011) ............................................................... 15

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  920 F.3d 1 (D.C. Cir. 2019) ........................................................................ 10

*\*Heritage Found. v. EPA*, Civ. A.,
  No. 23-0748 (JEB), 2023 WL 2954418 (D.D.C. Apr. 14, 2023) ................... passim

*Info. Ctr. v. Dep't of Just.*,
  15 F. Supp. 3d 32 (D.D.C. 2014) ............................................................... passim

*Landmark Legal Found. V. EPA*,
  910 F. Supp. 2d 270 (D.D.C. 2012) ............................................................... 8

*Leadership Conf. on Civ. Rts. v. Gonzales*,
  404 F. Supp. 2d 246 (D.D.C. 2005) ......................................................... 13, 14

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ............................................................. 11, 12, 16

*Long v. Dep't of Homeland Sec.*,
  436 F. Supp. 2d 38 (D.D.C. 2006) ............................................................... 8

*Munaf v. Geren*,
  553 U.S. 674 (2008) .................................................................................. 9

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) ......................................................... 13, 15

*N.Y. Times Co. v. Def. Health Agency*,
  Civ. A. No. 21-566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ............. 7, 11, 12

*Nation Magazine v. Dep't of State*,
  805 F. Supp. 68 (D.D.C. 1992) .................................................................. 20

*Nat'l Conf. on Ministry to the Armed Forces v. James*,
  278 F. Supp. 2d 37 (D.D.C. 2003) ............................................................... 6

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
  48 F. Supp. 3d 87 (D.D.C. 2014) ............................................................... 10

*Oversight v. Dep't of Just.*,
  292 F. Supp. 3d 501 (D.D.C. 2018) ......................................................... 18, 19

*Privacy Info. Ctr. v. Dep't of*,
  *Def.*, 355 F. Supp. 2d 98 (D.D.C. 2004) ................................................... 2, 3, 16

*Privacy Info. Ctr. v. Dep't of Just.*,
  416 F. Supp. 2d 30 (D.D.C. 2006) ............................................................... 13

*Protect Democracy Project, Inc. v. Dep't of*,
  *Def.*, 263 F. Supp. 3d 293 (D.D.C. 2017) ..................................................... 9

*Protect Democracy Project, Inc. v. Dep't of Just.*,
  498 F. Supp. 3d 132 (D.D.C. 2020) ......................................................... 8, 20

*Pub. Citizen Health Rsch. Grp. V. Acosta*,
  363 F. Supp. 3d 1 (D.D.C. 2018) ............................................................... 10

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................................. 10

*Save Jobs USA v. Dep't of Homeland Sec.*,
    105 F. Supp. 3d 108 (D.D.C. 2015) ................................................................... 10
*Sherley*,
    644 F.3d ........................................................................................................... 10
*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ............................................................................................ 7
*Wadelton v. Dep't of State*,
    941 F. Supp 2d 120 (D.D.C. 2013) ................................................................... 20
*Wash. Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ............................................................... 9, 12
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................ 9

## Statutes

5 U.S.C. § 552(a)(3)(A) ............................................................................................ 6
5 U.S.C. § 552(a)(4)(C) ......................................................................................... 4, 5
5 U.S.C. § 552(a)(6)(E) ............................................................................................ 2
Pub. L. No. 104-231 .................................................................................................. 2

## Regulations

6 C.F.R. § 5.10(c) ................................................................................................... 14
6 C.F.R. § 5.5(e) ....................................................................................................... 3
6 C.F.R. § 5.5(e)(1)(iv) ............................................................................... 2, 3, 13, 18
40 C.F.R. § 2.104(f)(4) ............................................................................................. 3

## INTRODUCTION

In the Freedom of Information Act ("FOIA"), Congress established expedited procedures for requesters to seek judicial relief to enforce their rights under the statute.  Plaintiffs the Heritage Foundation and Mike Howell ("Plaintiffs") have filed a lawsuit that, in part, challenges the U.S. Department of Homeland Security's (the "Department," or "Defendant") denial of Plaintiffs' request for expedited processing of a three-part FOIA request that broadly seeks records related to Henry Charles Albert David, a British National, otherwise known as "Prince Harry," or the "Duke of Sussex."  Not satisfied with the expedited litigation timeline provided in FOIA itself, Plaintiffs now move for a preliminary injunction to resolve one of the merits issues raised in their complaint: expedited processing of their request.  Plaintiffs' motion is an attempt to exploit, as a scheduling tool, a procedural mechanism intended only to provide true emergency relief.  The Court should deny the motion as at least one other judge has done in another recent FOIA case brought by Plaintiffs where they sought provisional injunctive relief.  *See, e.g., Heritage Found. v. EPA*, Civ. A. No. 23-0748 (JEB), 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) (denying Plaintiffs' request for a preliminary injunction, noting "Here, issuing the requested injunction would just allow Heritage to jump over other FOIA requesters in line.").

Precedent dictates that for plaintiffs to demonstrate irreparable harm when seeking a mandatory injunction, they must meet an exceedingly high bar.  Plaintiffs have not done so here. They identify no imminent event or date after which the information they seek will be stale, let alone point to evidence that they will suffer harm if the Court resolves their expedited processing claim on the expedited statutory schedule that FOIA provides, rather than issue a preliminary injunction with respect to that claim.

Moreover, Plaintiffs cannot demonstrate a likelihood of success on the merits of their expedited processing claim. As an initial matter, Plaintiffs' request is partially moot because U.S. Customs and Border Protection ("CBP") has already responded to Plaintiffs' FOIA request. Because CBP issued a decision with respect to Plaintiffs' FOIA request, there is nothing left to expedite.

The rest or Plaintiffs' expedited processing claim also fails on the merits. Under the relevant FOIA regulations, to obtain expedited processing, Plaintiffs must demonstrate that their FOIA request involves "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv). The articles and commentary that Plaintiffs submitted in support of their request fail to meet this standard.

Finally, the public interest and balance of equities weigh against granting Plaintiffs' motion. The preliminary injunction sought by Plaintiffs would disadvantage other FOIA requesters who would be bumped further back in the Department's FOIA processing queues. Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## BACKGROUND

### I.   Statutory and Regulatory Framework

Agencies ordinarily process FOIA requests on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Amendments of 1996 (the "1996 FOIA Amendments"), Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051-52 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedition, when granted, entitles requesters to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons. *See Elec. Privacy Info. Ctr. v. Dep't of Def.*,

355 F. Supp. 2d 98, 104 (D.D.C. 2004) ("*EPIC I*").  For that reason, expedition should be sparingly granted.  *See id.*  "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of expedited processing procedure would unfairly disadvantage other requesters who do not qualify for its treatment."  *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795 at 26, *reprinted in* 1996 U.S.C.C.A.N. 3448, 3469 (Sept. 17, 1996)).  Indeed, as the D.C. Circuit has explained, "an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.*

As part of the 1996 FOIA Amendments, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(I).  Accordingly, the Department of Homeland Security's FOIA regulations permit a requester to seek expedited processing in several circumstances.  6 C.F.R. § 5.5(e) (enumerating specific circumstances).  In this case, Plaintiffs seek expedited processing because they claim that the records responsive to their request involve "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  Mem. in Supp. of Mot. for Prelim. Inj. ("Open. Br.") at 2.  (ECF No. 10-1) (quoting 6 C.F.R. § 5.5(e)(1)(iv)).

The requester bears the burden of showing that expedition is appropriate.  *See Al-Fayed*, 254 F.3d at 305 n.4.  FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition."  5 U.S.C. § 552(a)(6)(E)(iii); *see also* 40 C.F.R. § 2.104(f)(4) ("If the Agency grants the request for expedited processing, the Agency will give the request priority and will process the request as soon as practicable.").  When

a request for expedited processing is filed, the agency must determine whether to grant the request, and give notice of the determination, within ten days of the request. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I).

In addition to expedited processing, Congress accelerated litigation involving all FOIA claims. *See* 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Federal Rule of Civil Procedure 12). FOIA litigation is further accelerated in this District because FOIA cases are exempt from Rule 16 requirements. *See* LCvR 16.5(c)(1). And claims of improper denial of expedition are especially accelerated as the requester is not required to exhaust administrative remedies before filing suit. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 436 F. Supp. 3d 354, 358-59 (D.D.C. 2020) (collecting cases).

## II.   Factual and Procedural Background

On March 8, 2023, Plaintiffs submitted a FOIA request to the U.S. Department of Homeland security for various records regarding the government's decision to admit Prince Harry into the United States. *See* Pl. Request (ECF No. 7-2). The request identified three categories of records: (1) all records within Prince Harry's Alien Registration file, (2) all records pertaining to Prince Harry within twelve different databases, and (3) "all records relating to any requests for waiver by Prince Harry pursuant to Section 212(d)(3) of the Immigration and Nationality Act." *Id.* Plaintiffs' request sought expedited processing. *Id*. at 8-9. Plaintiffs' request did not include any documents showing that Prince Harry had authorized release of this information to Plaintiffs. Ex. 1, Suzuki Decl. ¶ 5.

The Department's Privacy Office reviewed the request and determined that Department components, CBP, U.S. Citizenship and Immigration Services ("USCIS"),[1] and the Office of Biometric Identity Management ("Biometric Identity Office") were the components most likely to have responsive records, and that the Department's Headquarters did not have any responsive records. Ex. 2, Dep't Response Letter; Pl.'s Ex. 16, CBP Referral Letter. The Privacy Office then forwarded the request to USCIS, CBP, and the Biometric Identity Office and notified Plaintiffs of the referral. *Id.*

On March 9, 2023, CBP denied Plaintiffs' request because "Plaintiffs did not provide written authorization from the Duke of Sussex indicating that the Duke of Sussex consented to his information being released to Plaintiffs." Ex. 1, Suzuki Decl. ¶ 7. On March 15, 2023, Plaintiffs administratively appealed CBP's denial, but their appeal did not address the issue of expedited processing. *Id.* ¶ 9. On April 5, 2023, Plaintiffs submitted an additional letter to CBP to "supplement the record in support of my request for expedited processing for my FOIA Request/Appeal CBP-FO-2023-053731." *Id.* ¶ 10. On May 23, 2023, CBP issued an administrative decision denying Plaintiffs' appeal. *Id.* ¶ 12. The Biometric Identity Office has not yet issued a determination on the request.

Plaintiffs served Defendant with this lawsuit on May 2, 2023, and as required under FOIA, 5 U.S.C. § 552(a)(4)(C), Defendant's deadline to answer the complaint is thirty days from the date of service, on May 31, 2023.

---

[1]     Plaintiffs' motion does not concern USCIS.  Open. Br. at 1.

**ARGUMENT**

I.     **Preliminary Injunctions are Generally Not Appropriate in FOIA Cases.**

Courts generally do not award the extraordinary remedy of preliminary injunctive relief in FOIA cases. *See Heritage Found.*, 2023 WL 2954418, at *4 ("Courts in our district have generally found irreparable harm in FOIA preliminary-injunction cases only where the requested documents are 'time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost.'") (collecting authorities).

*First*, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); *id.* § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint). Courts should not casually sidestep this statutory framework by granting emergency preliminary relief, which is reserved only for extraordinary circumstances posing imminent and irreparable harm.

*Second*, the traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted). Therefore, when, as here, a movant seeks mandatory injunctive relief—i.e., an injunction that "would alter, rather than preserve, the status quo by commanding some positive act"—"the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) ("*EPIC III*") (citations omitted); *see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not

issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party."
(citation omitted)).  An order compelling expedited processing of Plaintiffs' FOIA request would
not merely preserve the status quo but would force specific action by the Department.  As such,
Plaintiffs' request here is mandatory in nature, and thus, Plaintiffs must overcome an even higher
hurdle for the extraordinary relief they seek in their motion.  *See, e.g., Nat'l Council of Agric.
Emps. v. Dep't of Lab.*, Civ. A. No. 22-3569 (RC), 2023 WL 2043149, at *3 (D.D.C. Feb. 16,
2023) (denying preliminary injunction, noting "mandatory injunctions that would change the status
quo are disfavored as an even more extraordinary remedy than the typical preliminary injunction,
especially when directed at the United States Government") (cleaned up).

    *Third*, because preliminary injunctive relief is not intended to provide plaintiffs with a
means to bypass the litigation process and achieve rapid victory, "a preliminary injunction should
not work to give a party essentially the full relief he seeks on the merits."  *Dorfmann v. Boozer*,
414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *accord N.Y. Times Co. v. Def. Health
Agency*, Civ. A. No. 21-566 (BAH), 2021 WL 1614817, at *4 (D.D.C. Apr. 25, 2021) (invoking
this principle before denying preliminary injunction in FOIA case); *see also Univ. of Tex. v.
Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the
preliminary-injunction stage to give a final judgment on the merits.").  Here, Plaintiffs expressly
demand such relief at the outset of this litigation—a preliminary injunction requiring the
Department to process their FOIA request on an expedited basis.  *See* Open. Br. at 5-6.  Plaintiffs'
motion is a thinly veiled tactic to circumvent the standard—and already expedited—FOIA
litigation process for determining the merits of an expedition claim.

    Against this background, courts in this jurisdiction routinely deny requests for preliminary
injunctions in FOIA cases.  *See, e.g.*, *Heritage Found.*, 2023 WL 2954418, at *7; *N.Y. Times*,

2021 WL 1614817, at *4 (denying preliminary injunction requiring defendants to process and produce "on an expedited basis" all documents responsive to two outstanding FOIA requests); *Baker v. Consumer Fin. Prot. Bureau*, Civ. A. No. 18-2403 (CKK), 2018 WL 5723146, at *6 (D.D.C. Nov. 1, 2018) (denying plaintiffs' motion for preliminary injunction granting release of documents by a date certain); *Allied Progress v. Consumer Fin. Prot. Bureau*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *8 (D.D.C. May 4, 2017) (denying preliminary injunction requiring expedited processing of FOIA request); *EPIC III*, 15 F. Supp. 3d at 49 (denying plaintiffs' motion for preliminary injunction seeking immediate release of documents); *Landmark Legal Found. V. EPA*, 910 F. Supp. 2d 270, 280 (D.D.C. 2012) (denying preliminary injunction seeking to compel expedited processing of FOIA request); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (denying motion for preliminary injunction to compel processing within twenty days).

The cases cited by Plaintiffs in which courts have granted preliminary injunctions presented extraordinary circumstances such as an impending deadline related to the 2020 United States census, *Brennan Ctr. For Just. v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020) ("It is rare that any preliminary relief is appropriate in a FOIA case, but this is not a run-of-the-mill case."), and "potential political interference by the Department of Justice with the U.S. Postal Service's preparations for processing the anticipated surge in voting by mail [in the 2020 elections] in light of the COVID-19 pandemic," *Protect Democracy Project, Inc. v. Dep't of Just.*, 498 F. Supp. 3d 132, 140 (D.D.C. 2020) ("*Protect Democracy II*"). *See* Open. Br. at 8-9. Notably, in most of these cases, the defendant agencies had granted the plaintiffs' requests for expedited processing—agreeing that they met the standard for expedited treatment—and the requesters were instead challenging agencies' alleged failures to in fact process their FOIA requests in an expedited

manner.  *See Am. Immigr. Council v. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 34 (D.D.C. 2020); *Am Oversight v. Dep't of State*, 414 F. Supp. 3d 182, 184 (D.D.C. 2019)*; Elec. Frontier Found. V. Off. of Dir. Nat'l Intel.*, 542 F. Supp. 2d 1181, 1183 (N.D. Cal. 2008) ("*EFF II*"); *Elec. Frontier Found. V. Off. of Dir. Nat'l Intel.*, Civ. A. No. 07-5278, 2007 WL 4208311, at*2 (N.D. Cal. Nov. 27, 2007) ("*EFF I*"); *see also Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 297 (D.D.C. 2017) ("*Protect Democracy I*") (Department of Justice components had granted plaintiff's Requests for expedited processing; Department of Defense and State Department had denied expedition requests); *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 65 (D.D.C. 2006) (agency had granted expedited processing, but then determined that records sought were not "agency records"); *Brennan Ctr.*, 498 F. Supp. 3d at 95 (by date of hearing on motion for preliminary injunction, most defendant agencies had granted expedited processing or expedited processing in part).

## II.    In Any Event, Plaintiffs Have Failed to Carry Their Heavy Burden to Show <u>Entitlement to a Preliminary Injunction.</u>

"A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted).  A movant may be awarded such an "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To establish such entitlement, a movant must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Id.* at 20.

"The four factors have typically been evaluated on a 'sliding scale.'"  *Davis*, 571 F.3d at 1291 (citation omitted).  Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong

a showing on another factor." *Id.* at 1291-92.  Courts in this District have noted that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*.  *See, e.g. Allied Progress*, 2017 WL 1750263, at *2 (citing *Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015).  Several judges on the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)).  The D.C. Circuit, however, has yet to hold definitively that *Winter* has displaced the sliding-scale analysis.  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) ("We follow the same approach here because, even under the sliding-scale approach, the movant must raise at least a serious legal question on the merits").  In any event, this Court need not resolve the viability of the sliding-scale approach today since Plaintiff cannot meet its burden under the less demanding sliding-scale analysis.

The last two factors merge when the government is the opposing party.  *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *accord Pub. Citizen Health Rsch. Grp. V. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018).  "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'"  *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014).  As discussed more fully below, Plaintiffs have failed to bear their burden.

### A.      Plaintiffs Have Not Demonstrated that they Will Suffer Irreparable Harm.

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)); *see also EPIC III*, 15 F. Supp. 3d at 39 ("It is clear

beyond cavil that two of the prongs of the four-factor preliminary injunction test—likelihood of success and irreparable injury—are the most significant aspects of the court's inquiry because they relate directly to the purpose of a preliminary injunction.").  To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm."  *League of Women Voters v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (citation and alteration omitted).  In the context of a mandatory injunction, like the one sought here, Plaintiffs "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction."  *EPIC III*, 15 F. Supp. 3d at 39 (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd*., 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).  Plaintiffs have the burden to put forth sufficient evidence to satisfy this high standard.  "The movant cannot simply make 'broad conclusory statements' about the existence of harm.  Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'"  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).

As noted above, "Courts in our district have generally found irreparable harm in FOIA preliminary-injunction cases only where the requested documents are 'time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost.'"  *Heritage Found.*, 2023 WL 2954418, at *4 (citing *N.Y. Times*, 2021 WL 1614817, at *8).  While courts have granted FOIA preliminary injunctions where there is a monumental, time-sensitive event on the horizon (e.g., a presidential election, the issuance of the decennial census, an imminent evidentiary hearing), "[b]y contrast, courts have

denied preliminary injunctions in cases without a definite impending or time-limited event[.]" *Heritage Found.*, 2023 WL 2954418, at *4 (collecting citations).  In other words, where the requested documents "are not 'time-sensitive' in the sense of losing value vis-à-vis any date certain[,]" provisional injunctive relief is inappropriate. *Id.* (citing *N.Y. Times*, 2021 WL 1614817, at *8).  "The touchstone for the FOIA irreparable-harm analysis is thus whether a plaintiff can show a specific need for records in advance of an upcoming event that, once past, would leave the information with little to no relevance." *Heritage Found.*, 2023 WL 2954418, at *4.

Here, Plaintiffs have not presented evidence that irreparable injury, let alone "extreme or very serious damage," *EPIC III*, 15 F. Supp. 3d at 39, will result from denial of the injunction. Plaintiffs argue "a wrongful denial of a statutory right to expedited processing necessarily causes irreparable harm."  Open. Br. at 19.  This argument lacks merit.  Even if Plaintiffs were entitled to expedited processing of their FOIA request, their entitlement to expedited processing would not be sufficient to show that "certain and great," actual, imminent harm will result from denial of the emergency relief sought here. *League of Women Voters*, 838 F.3d at 7-8.

Essentially, Plaintiffs argue that they need not separately show irreparable harm if the Court is convinced by their argument that they are likely to succeed on the merits of their claim that the Department wrongfully denied their request for expedited processing. *See* Open. Br. at 20. But such reasoning collapses two separate elements of the preliminary injunction standard, and none of the cases cited by Plaintiffs supports such an approach.  Rather, as discussed above, the courts' conclusions in those cases rested on observations that the plaintiffs' requests related to some imminent or time-limited event, *see Wash. Post*, 459 F. Supp. 2d at 74-75 (information sought in advance of upcoming federal midterm election); or that denial of emergency relief would deprive the requester of "timely" access to "vital" information bearing on current and ongoing

debates about specific government policies, *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (information sought was vital to the "debate surrounding the legality of the Administration's warrantless surveillance program").

Unlike in the cases that they cite, Plaintiffs did not identify an imminent event or a time certain where the information that they are seeking will no longer be useful to them. Thus, Plaintiffs have failed to show that denying their requested preliminary injunction will cause them irreparable harm.

**B.    Plaintiffs have not Shown a Likelihood of Success on the Merits.**

Plaintiffs also are unlikely to succeed on the merits of their claim for expedition. As an initial matter, CBP has already denied Plaintiffs' FOIA request on the merits. Ex. 1, Suzuki Decl. ¶ 12. When an agency denies a FOIA request, expedited processing is no longer needed and the issue becomes moot. Thus, Plaintiffs' expedited processing request is moot to the extent that it seeks expedited processing from CBP.

Additionally, Plaintiffs' expedited claim fails on the merits. Plaintiffs claim they are entitled to expedited processing under 6 C.F.R. § 5.5(e)(1)(iv) which requires a Department component to grant expedited processing when the component determines that the request involves "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." But Plaintiffs fail to demonstrate that their request meets this standard.

1.    Because Plaintiffs' Underlying FOIA Request To CBP Was Denied, Their Request For Expedited Processing From CBP Is Moot.

When an individual requests expedited processing of a FOIA request, "the only relief required . . . is moving an individual's request 'to the front of the agency's processing queue.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) (quoting *Leadership Conf. on*

*Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 259 (D.D.C. 2005)).  In other words, whether a requester is entitled to expedited processing is a separate issue from whether the agency fully fulfilled the FOIA request.  Because CBP determined that Plaintiffs' FOIA request could not be processed without a privacy waiver, Plaintiffs' request for expedited processing from CBP is moot.

Plaintiffs submitted their request to the U.S. Department of Homeland Security.  *See* Pl. Request.  When the Department received the request, it determined that USCIS, CBP, the Biometric Identity Office were the Department components "most likely" to maintain responsive records and that the Department headquarters did not have any responsive records.  Ex. 2, Dep't Response Letter; Pl.'s Ex. 16 Dep't Referral Letter.  The Department then informed Plaintiffs that it had forwarded the request to the components.  *Id.*  Plaintiffs are seeking records regarding Prince Harry, a private third party, Pl. Request, and their request did not include a privacy waiver.  Ex. 1, Suzuki Decl. ¶ 7.  When CBP receives a FOIA request for information regarding a third party "the information will not be disclosed without that person's prior written consent that provides the same verification information that the person would have been required to submit for information about him or herself[.]"  6 C.F.R. § 5.10(c).  Because Plaintiffs did not submit a privacy waiver, CBP denied their request.  Ex. 1, Suzuki Decl. ¶ 12.

CBP's decision to deny the request without a privacy waiver is consistent with FOIA.  In a case like this, where "a request by its terms specifically calls for law enforcement records related to a third party, all of the responsive records will fall within the scope of the categorical exemption unless it can be shown that the invasion of privacy is 'warranted.'"  *Garvey v. Dep't of Just.*, 53 F. Supp. 3d 215, 221 (D.D.C. 2014) (permitting defendant to categorically deny a request for records regarding a third party because requester "has not specified the public interest justification for the disclosure he requests," and "the government need not guess what the requesters had in mind");

*Graff v. FBI*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011) (approving agency's policy of categorically denying such requests in absence of death certificate, privacy waiver, or showing of public interest that would be advanced).

Even if Plaintiffs have a valid argument that CBP's decision to deny their request was incorrect as a matter of law, their arguments could not revive their claim for expedited processing. In declining to process Plaintiffs' request the components provided a "complete response," which is "a final administrative determination whether to release any records that are responsive to the individual's request." *Muttitt*, 926 F. Supp. 2d at 296.  Once an agency provides a "complete response," "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records." 5 U.S.C. § 552(a)(6)(E)(iv).  The agency "need not . . . obtain a judicial declaration that its search efforts were adequate or that its withholding determinations were warranted." *Muttitt*, 926 F. Supp. 2d at 296.  Plaintiffs may contest the CBP's decision to deny the request, but the timing of any production of responsive records now "occurs at the direction of the court—pursuant to a scheduling order, not the expedited processing provision of the FOIA." *Id.*  Because CBP completed its response to Plaintiffs' FOIA request, there is nothing left for CBP to expedite.

### 2.   Widespread And Exceptional Media Interest Is Lacking.

Plaintiffs have failed to show that their request involves widespread media interest. Plaintiffs' request sought three categories of records broadly related to Prince Harry and each category contained multiple subtopics.  *See* Pl.'s Ex. 1, Request.  The categories of records requested by Plaintiffs include "all records within the Alien File (A-File) of Prince Henry Charles Albert David," all records pertaining to Prince Harry in twelve different record systems, and "all

records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act." *Id.* at 1-2.

Even assuming that Prince Harry's status in the United States is a topic of media interest, Plaintiffs' request for expedited processing does not demonstrate that the specific categories of records sought by Plaintiffs concern matters of exceptional media interest. *See, e.g., EPIC I*, 355 F. Supp. 2d at 102 ("The case law makes it clear that only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment."). In other words, it was Plaintiffs' obligation to submit, alongside their FOIA request, evidence connecting what they alleged was a matter of "widespread and exceptional" interest to their request for "all records within the Alien File (A-File) of Prince Henry Charles Albert David," records pertaining to Prince Harry in each of the identified record systems, and "all records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act."[2]

Plaintiffs' assertion that "National media outlets have widely reported on Prince Harry's drug use which, pursuant to the Immigration and Nationality Act, should make him inadmissible to the United States absent the requisite waiver available to non-immigrants," *id.* at 9, does not connect the media coverage to the specific topics of Plaintiffs' FOIA request and thus fails to satisfy Plaintiffs' burden. *EPIC I*, 355 F. Supp. 2d at 104 ("It is neither the Court's nor the agency's responsibility to connect the dots for plaintiffs such as *EPIC*, by presuming that interest in a general topic necessarily indicates interest in a specific subpart of that topic.")

---

[2]    Moreover, even if open ended phrases such as "any and all" may be tolerable in the civil discovery setting, that does not establish their validity in FOIA practice. *Cf. Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) ("FOIA requests for all documents concerning a requester are too broad.").

Additionally, to demonstrate media interest Plaintiffs rely on articles from niche publications such as *The Daily Mail*, *The Sunday Telegraph*, *Express Online*, and *Cannabis News Today,* many of which are based in the United Kingdom.  Am. Compl. ¶¶ 44-45.  None of these publications are what Americans generally consider to be mainstream media.  Elisa Shearer et al., *Broad agreement in U.S. – even among partisans – on which news outlets are part of the 'mainstream media,'* Pew Research Center (May 7, 2021) https://www.pewresearch.org/short-reads/2021/05/07/broad-agreement-in-u-s-even-among-partisans-on-which-news-outlets-are-part-of-the-mainstream-media/.  This contrasts with the cases upon which Plaintiffs rely, which cite American mainstream media sources.  *See e.g. ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) (referencing articles from the *Washington Pos*t, the *Boston Globe*, and the *San Francisco Cornicle*); *Edmonds v. FBI*, Civ. A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, *10 (Dec. 3, 2002) (referencing articles from the *Associated Press*, the *Washington Post*, the *Chicago Tribune,* and broadcast television news stories).  Additionally, in many of these cases, the courts were convinced that widespread media interest existed, in part, because members of Congress has raised questions about the information in the requested records.  *See ACLU*, 321 F. Supp. 2d at 32; *Edmonds*, 2002 U.S. Dist. LEXIS 26578, at *10.  In contrast, Plaintiffs have presented no evidence that members of Congress are interested in information that could be responsive to any portions of their request or in Prince Harry generally.

Moreover, because the statute provides that "judicial review shall be based on the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), Plaintiffs cannot rely on articles about the FOIA request that is the subject of this lawsuit to show widespread media interest. The Department and its components were not required to accept Plaintiffs' subjective

view that its FOIA request was important as evidence meeting the requirements of 6 C.F.R. § 5.5(e)(1)(iv).

        3.      Plaintiffs Failed Demonstrate That The Sought After Records Raise Questions About The Government's Integrity That Affect Public <u>Confidence.</u>

"The primary way to determine whether such possible questions [about the government's integrity] exist is by examining the state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant as to reduce public confidence in governmental institutions." *Am. Oversight v. Dep't of Just.*, 292 F. Supp. 3d 501, 508 (D.D.C. 2018).  None of the articles that Plaintiffs quoted suggest that the government did something wrong; they simply speculate that Prince Harry's past drug use could put his visa or his ability to remain in the United States at risk.  Am. Compl. ¶¶ 44-45.  Even if Plaintiffs can obtain expedited processing without raising the possibility of "dishonesty or intentional wrongdoing" by the government, *Brennan Ctr.*, 498 F. Supp. 3d at 97, the plain text of the regulation still requires them to   show that the information would question   the government's "integrity," 6 C.F.R. § 5.5(e)(1)(iv), or "firm adherence to a code of especially moral . . . values."  Integrity, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/integrity (last visited May 18, 2023).

Plaintiffs' reliance on media speculation about whether Prince Harry's past drug use could prevent him from remaining in the United States contrasts with the sincere questions about the government's integrity that were raised in the cases that they rely on.  The *ACLU* requester obtained expedited processing for records regarding efforts to reauthorize Section 215 of the Patriot Act because the requester presented articles to suggest that the government was using Section 215 to violate Americans' constitutional rights.  321 F. Supp. 2d at 32.  The *Brennan*

*Center* requester obtained expedited processing for records regarding the 2020 census because the requester presented articles questioning whether the Census Bureau was calculating state population totals accurately, "given the challenges of the COVID-19 pandemic" and questioning whether the government's proposal to use citizenship data to determine apportionment was lawful. 498 F. Supp. 3d at 97-98.  The requester in *CREW* obtained expedited processing for records that were provided to Attorney General William Barr in advance of the release of the Mueller Report because the requester presented evidence of media interest in whether Barr's public comments "distorted the truth" about the report's conclusions.  436 F. Supp. 3d at 361.  Finally, the *Edmonds* requester presented media coverage about "security lapses in the FBI's translator program."  2002 U.S. Dist. LEXIS 26578, at *10.  In each of these cases, the requester had shown that mainstream media outlets were raising questions based on publicly available facts that the United States Government had done something wrong.

Citations to speculation about the status of Prince Harry's visa are not sufficient to meet the standard for expedited processing.  Ultimately, "the regulation does not ask whether possible questions exist that might or could—should they become known—affect public confidence in the government's integrity.  It asks whether there are possible questions as to the Government's integrity 'that affect public confidence,' full stop."  *Am. Oversight*, 292 F. Supp. 3d at 508.  Adopting Plaintiffs' approach would require courts to find that a requester is entitled to expedited processing anytime he or she can provide a list of articles from obscure sources speculating as to whether a celebrity who has admitted to some immoral conduct may be subject to some adverse action by the government.

**C.**     **The Public Interest and Balance of Equities Weigh Against a Preliminary Injunction.**

Along with alleged harm to the Plaintiffs, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiffs would be in the public interest or harm nonlitigants. *See Al-Fayed*, 254 F.3d at 303.  Here a preliminary injunction would not be in the public interest and would harm nonlitigants.

The primary effect of granting a preliminary injunction would be to disadvantage other FOIA requesters who would be pushed further back in the Department's FOIA processing queue. FOIA was intended to be available to all members of the public, not just those who are professional FOIA requesters or who have the resources to file a complaint in district court and move for preliminary injunctive relief.  It is unfair, particularly on this record, for Plaintiffs to jump ahead of other requesters who filed before Plaintiffs, and who are waiting patiently in line for their requests to be processed.  *See Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of the FOIA").

Plaintiffs point to no facts that would counterbalance this harm.  Plaintiffs argue that the public interest is "best served by the expedited release of the requested documents because it furthers FOIA's core purpose of shedding light on an agency's performance of its statutory duties." Open. Br. at 23 (quoting *Protect Democracy II*, 498 F. Supp. 3d at 144) (quotation marks omitted). That logic, however, "does nothing to distinguish plaintiffs' FOIA request from any other FOIA request." *Wadelton v. Dep't of State*, 941 F. Supp 2d 120, 124 (D.D.C. 2013) (rejecting plaintiffs' argument that the public interest element weighed in their favor where it was "based on little more than the core purpose of FOIA being to allow the public to be informed about 'what their

government is up to'") (citations omitted)).   Finally, Plaintiffs' argument that a preliminary injunction will further FOIA's purposes because Plaintiffs are statutorily entitled to expedited processing, Open. Br. at 24, is unavailing given Plaintiffs' failure to demonstrate a likelihood of success on the merits.  *See supra* § II.B.

In weighing Plaintiffs' interests against the harm to other requesters that would result from a preliminary injunction, granting Plaintiffs' motion would be contrary to the public interest, and contrary to the first-in/first-out basis on which agencies generally process FOIA requests. Accordingly, the motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary injunction.

Dated: May 26, 2023
         Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  *John J. Bardo*                              
       JOHN J.  BARDO
       D.C. Bar # 1655534
       Assistant United States Attorney
       601 D Street, NW
       Washington, DC 20530
       (202) 870-6770

*Attorneys for the United States of America*
