# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL, <br><br> Plaintiffs <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY <br><br> Defendant. | Case No. 23-cv-1198 (CJN) |

## DECLARATION OF SHARI SUZUKI

I, Shari Suzuki, declare as follows:

1. I am the Freedom of Information Act (FOIA) Appeals Officer, and Chief of the FOIA Appeals and Policy Branch (FAP), Regulations and Rulings, Office of Trade (OT), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS).  Since April 2, 2006, I have been the official charged with the following responsibilities: (1) giving guidance and instruction to CBP personnel regarding processing FOIA requests; (2) adjudicating administrative appeals that concern FOIA requests; and (3) overseeing all CBP activities related to information disclosure under FOIA.

2. I am familiar with the request dated March 8, 2023, submitted by Heritage Foundation and Mike Howell (hereinafter Plaintiffs) for information from DHS, CBP, and U.S. Citizenship and Immigration Services.

3. In furtherance of my responsibilities, I have access to records maintained in the ordinary course of business by CBP. All information contained herein is based upon information furnished to me in my official capacity, and the statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, and agency files reviewed in, the course of my official duties.

4. This declaration is filed in support of Defendant's opposition to Plaintiffs' Motion for a Preliminary Injunction, and provides background on CBP's processing of Plaintiffs' March 8, 2023 request.

5. Plaintiffs submitted a FOIA request to CBP dated March 8, 2023, seeking several categories of information regarding "Prince Henry Charles Albert David (Date of Birth 09/15/1984) of the British Royal Family *aka* Prince Harry *aka* His Royal Highness Prince Henry of Wales *aka* the Duke of Sussex" (hereinafter the Duke of Sussex). Plaintiffs' requested expedited processing for the request. See Exhibit 1 to the Complaint.

6. There was no indication in the March 8 request that the Duke of Sussex had authorized the release of his information to Plaintiffs.

7. On March 9, 2023, CBP's FOIA Division informed Plaintiffs that Plaintiffs' request had been closed as insufficient as Plaintiffs did not provide written authorization from the Duke of Sussex indicating that the Duke of Sussex

consented to his information being released to Plaintiffs. CBP also stated that "[d]ue to privacy concerns, CBP cannot confirm nor deny the existence of records on this individual or business." See Exhibit 10 to the Complaint. This closure ended the processing of Plaintiffs' request by CBP's FOIA Division.

8. A search for responsive records was not performed by CBP in response to Plaintiffs' request, as the request itself was insufficient given the failure to provide written authorization from the Duke of Sussex for his information to be released to Plaintiffs. According to DHS regulations, when records pertaining to a third party are requested pursuant to FOIA, CBP is permitted to "require a requester to supply additional information if necessary in order to verify that a particular individual has consented to disclosure." See 6 CFR 5.3(a)(4).

9. On March 15, 2023, Plaintiffs submitted an appeal letter to CBP in response to the March 9 letter from CBP's FOIA Division closing the Plaintiff's request. Plaintiffs' March 15 letter did not address expedited processing and did not include an authorization from the Duke of Sussex consenting to the release of his information to Plaintiffs. See Exhibit 11 to the Complaint.

10. On April 5, 2023, Plaintiffs submitted an additional letter to CBP to "supplement the record in support of my request for expedited processing for my FOIA Request/Appeal CBP-FO-2023-053731." See Exhibit 14 to the Complaint.

11. On April 13, CBP contacted Plaintiffs to ask Plaintiffs to re-provide two appendices of information that were included with Plaintiffs' April 5, 2023 letter. Plaintiffs responded on April 20, 2023. See Exhibit 16 to the Complaint.

12. CBP had not issued a determination responding to Plaintiffs' March 15, 2023 appeal, supplemented by the April 5, 2023 letter, prior to the date upon which Plaintiffs' filed their Complaint. On May 23, 2023, CBP issued a determination responding to Plaintiffs' appeal, affirming that CBP's FOIA Division appropriately closed Plaintiffs' request as insufficient and that CBP can neither confirm nor deny the existence of records related to the Duke of Sussex as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C). See Exhibit A.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this __25th__ day of May, 2023.

_____

Shari Suzuki, Branch Chief
FOIA Appeals and Policy
Office of Trade, Regulations and Rulings
U.S. Customs and Border Protection
U.S. Department of Homeland Security

4

# EXHIBIT A

U.S. Department of Homeland Security
Washington, DC 20229

**U.S. Customs and Border Protection**

DIS-3 OT:RR:RDL:FAP
CBP-AP-2023-000828 MMC

May 23, 2023

Mr. Mike Howell
Director of the Oversight Project
Investigative Columnist at *The Daily Signal*
The Heritage Foundation
214 Massachusetts Avenue
Washington DC 20002

RE:   Freedom of Information Act Appeal; Prince Henry Charles Albert David, Duke of Sussex; CBP-FO-2023-053731

Dear Mr. Howell:

This is in response to your March 15, 2023 request, indicating your intent to appeal the March 8, 2023 information letter from the Freedom of Information Act (hereinafter "FOIA") Division, Privacy and Diversity Office, U.S. Customs and Border Protection ("CBP").

**Your FOIA Request and Appeal**

In your initial request you sought, [a]ll records within the Alien File (A-File) of Prince Henry Charles Albert David (Date of Birth 09/15/1984) of the British Royal Family *aka* Prince Harry *aka* His Royal Highness Prince Henry of Wales *aka* the Duke of Sussex, including but not limited to:

• Any and all applications for immigration benefits filed, whether or not adjudicated;

• Any and all Forms I-213;

• Any and all Forms I-275; and

• Any and all Forms I-877.

Additionally, you sought [a]ll records pertaining to the Duke of Sussex in the following system of records maintained by CBP and DHS:

• Automated Targeting System (ATS, DHS/CBP-006);

• Advance Passenger Information System (APIS, DHS/CBP-005);

- Border Crossing Information System (BCIS, DHS/CBP-007);

- U.S. Customs and Border Protection TECS (DHS/CBP-011);

- Non-Federal Entity Data System (NEDS, DHS/CBP-008);

- DHS Use of the Terrorist Screening Database (TSDB) System of Records (DHS/ALL-030);

- CBP Intelligence Records System (CIRS, DHS/CBP-024);

- DHS Automated Biometric Identification System (IDENT, DHS/USVISIT-004;

- Electronic System for Travel Authorization (ESTA, DHS/CBP-009);

- Nonimmigrant Information System (NIIS, DHS/CBP-016);

- Arrival and Departure Information System (ADIS, DHS/CBP-021); and

- Electronic Visa Update System (EVUS, DHS/CBP-022).

Finally you seek, all records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act including, but not limited to, email communications within the DHS Office of the Secretary, the USCIS Office of the Director, the CBP Office of the Commissioner, or any subordinate office within those named departments or agency or a record of any communication between any of those named entities and the U.S. Department of State, the U.S. Embassy in London, the Federal Bureau of Investigation, or U.S. Immigration and Customs Enforcement.

The FOIA Division indicated that your FOIA request was reviewed as a third-party request and did not include authorization that information for the Duke of Sussex, could be released to you. The FOIA Division asserted that all third party FOIA requests must include a signed G-28 or G-639 form, or a signed statement from the subject individual verifying that his/her information may be released to you. Furthermore, they indicated that due to privacy concerns, CBP could neither confirm nor deny the existence of records concerning this individual.  Therefore, your FOIA request was closed as insufficient and no search for records was performed.

You are now appealing indicating amongst other things that there was:

- a violation of §5.6(e)(2), because there were no descriptions of the FOIA exemptions applied by CBP in denying the request;
- a violation of §5.6(e)(3), because there was no estimate of the volume of the records withheld, or a statement that it was protected by an applicable exemption; and
- you are questioning the adequacy of the search as per §5.8 (a)(1).

Finally, you argue that a third-party release is not necessary for this request because there is an overwhelming countervailing public interest in the disclosure. You argue that public confidence in the government would undoubtedly suffer if DHS, CBP, and USCIS failed to properly vet such a high-profile case. Moreover, you argue that if the Duke of Sussex was granted preferential treatment that too would undermine public confidence in DHS, CBP, and USCIS's application of equal justice under the law.

2

**Appeal Determination**

The Freedom of Information Act was enacted to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed[1]." The law provides the public with the right to receive records and information from the government in order to further democratic principles and allow for independent evaluation of government action. This office reviewed your appeal with those tenets in mind.

At the outset, we observe that FOIA Division denied your request on two separate grounds, first that you failed to provide authorization from the Duke of Sussex allowing for the release of agency records concerning him to you, and second that even acknowledging the existence of records would infringe upon his privacy interests. We find that FOIA Division's interpretation of DHS Regulations was within the discretionary scope of the regulation and that the second applies to all CBP records you have requested concerning the Duke of Sussex.

**FOIA Division Used its Regulatory Discretion to Require the Requester Obtain Authorization from the Subject of the Request**

The FOIA specifies two requirements for a request: it must reasonably describe the records sought and it must be made in accordance with the agency's published FOIA regulations. See 5 U.S.C. §522(a)(3).

The FOIA Division rejected your request because you failed to provide authorization from the Duke of Sussex for the release of records relating to him. 6 C.F.R. §5.3(a)(4) states:

> [w]here a request for records pertains to a third party, a requester may receive greater access by submitting either a notarized authorization signed by that individual,… in compliance with the verification of identity provision set forth in subpart B of this part, or a declaration made in compliance with the requirements set forth in 28 U.S.C. 1746 by that individual, authorizing disclosure of the records to the requester, or by submitting proof that the individual is deceased (*e.g.,* a copy of a death certificate or an obituary). ***As an exercise of its administrative discretion, each component can require a requester to supply additional information if necessary in order to verify that a particular individual has consented to disclosure***.

In this instance we affirm the FOIA Division's request for authorization to release the Duke of Sussex's CBP records. Nothing in the submission you have provided indicates verification that the Duke of Sussex has consented to disclosure of his records to you. We therefore find that FOIA Division appropriately closed your request as insufficient on the basis that it used its administrative discretion to require additional information to verify that the Duke of Sussex has consented to disclosure of his CBP records.

**Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (7)(C)**

---

[1] *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

We affirm the FOIA Division's second grounds for denial that the agency can neither confirm nor deny the existence of records related to the Duke of Sussex as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C). Merely acknowledging the existence of those records "would itself cause harm cognizable.[2]" This stands as "an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific non-conclusory justifications for withholding that information.[3]"

Both exemptions relate to protecting personal privacy and have been invoked here only to protect personally identifying information of the Duke of Sussex who would be identified and mentioned in the CBP records if any exist. Exemption (b)(6) protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption (b)(7)(C) excludes records or information compiled for law enforcement purposes, but only to the extent that the production of such materials "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

To determine whether this information ought to be withheld under the exemption, an agency must first determine whether the exemption threshold has been met and, if it has, then must balance the privacy interests involved against the public interest in disclosure.[4] In this case, simply identifying whether records you seek exist confirms that the Duke of Sussex applied for entry into the United States and therefore was inspected by CBP. The records from the systems you request would provide any history of the Duke of Sussex's travel to and from the United States as well as any potential CBP violation he may have incurred. This, in and of itself, would be a violation of his privacy interests.

As a threshold requirement, Exemption (b)(6) can only be applied to "personnel and medical and similar files." 5 U.S.C. § 552(b)(6). However, the range of documents falling within these categories is interpreted broadly so as to include all government records "which can be identified as applying to that individual.[5]" We find that any travel or violation records that might exist easily meet this initial threshold.

Although courts have found that an individual's status as a public figure might in some circumstances factor into the privacy balance of Exemptions (b)(6) and (b)(7)(C),[6] a public

---

[2] *Roth v. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011).
[3] *Id.*
[4] *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

[5] *Dep't of State v. Washington Post*, 456 U.S. 595, 602 (1982) (quoting H. R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966)).
[6] See, e.g., *Rosenfeld v. DOJ*, No. 07-3240, 2012 WL 710186, at *4 (N.D. Cal. Mar. 5, 2012) (finding that privacy interest "is low because . . . the subject is a public figure") (Exemptions 6 and 7(C)); *Jud. Watch, Inc. v. DOJ*, No. 00-0745, 2001 U.S. Dist. LEXIS 25731, at *13 (D.D.C. Feb. 12, 2001) (noting that pardoned prisoners "arguably bec[a]me public figures through their well-publicized pleas for clemency and [given] the speeches some have made since their release" and that EOUSA had failed to demonstrate that their privacy interests outweighed the public interest in disclosure) (Exemption 7(C)).

figure does not, by virtue of their status, forfeit all rights of privacy.[7] Courts have endorsed responses that indicate the agency can neither confirm nor deny the existence of records, to requests seeking records that might reveal whether an individual was investigated, because even to acknowledge the existence of such records would typically cause an unwarranted invasion of personal privacy.[8]

As was established with your initial request, you have not provided authorization from the Duke of Sussex for the release of any potential CBP travel, inspection or violation records. Nevertheless, you argue that there is an overriding public interest in release of any records because public confidence in the government would undoubtedly suffer if CBP failed to properly vet such a high-profile case. Moreover, you argue that if the Duke of Sussex was granted

---

[7] See *Forest Serv. Emps. for Env't. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (noting that "while the privacy interests of public officials are 'somewhat reduced' when compared to those of private citizens, 'individuals do not waive all privacy interests . . . simply by taking an oath of public office'") (quoting *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001)); *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (stating that "although government officials, as we have stated before, may have a 'somewhat diminished' privacy interest, they 'do not surrender all rights to personal privacy when they accept a public appointment'") (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996)) (Exemption 7(C)); *Fund for Const. Gov't v. NARA*, 656 F.2d 856, 865 (D.C. Cir. 1981); *Jud. Watch, Inc. v. DOJ*, 394 F. Supp. 3d 111, 118 (D.D.C. 2019) (finding that subject's FBI-related notoriety certainly weakens their privacy interest but that their status as a "public figure with a well-known association with the FBI does not, to be sure, destroy his privacy interest in other communications he may have had with the FBI") (Exemptions 6 and 7(C)); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012) (observing that "'individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity'" and "this may be especially true for politicians who rely on the electorate to return them to public office") (quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F. Supp. 2d 63, 71 (D.D.C. 2012) (observing that "despite the fact that [a congressman's] privacy interest is 'somewhat diminished' by the office he holds, he nevertheless 'd[id] not surrender all rights to personal privacy when [he] accept[ed] a public appointment'") (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996)) (Exemption 7(C)); *Taitz v. Astrue*, 806 F. Supp. 2d 214, 219 (D.D.C. 2011) (noting that "an individual's status as a public official does not, as plaintiff contends, 'make exemption 6 irrelevant to him and his vital records'"), summary affirmance granted, No. 11-5304, 2012 WL 1930959 (D.C. Cir. May 25, 2012); *Nat'l Sec. News Serv. v. Dep't of the Navy*, 584 F. Supp. 2d 94, 96 (D.D.C. 2008) (finding that "[d]isclosure of the requested patient admission records only would reveal who was admitted to the Naval Medical Center; it would reveal nothing about the Navy's own conduct" and "[t]his is so irrespective of whether one of the persons then admitted to the hospital is now a public figure"); "do not forfeit all vestiges of privacy"); *Phillips v. ICE*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) (disregarding requester's unsupported claim that former foreign government officials have no "legitimate privacy interest[s]"); *Wolk v. United States*, No. 04-0832, 2005 WL 465382, at *5 (E.D. Pa. Feb. 28, 2005) ("[O]fficials do not surrender all of their rights to personal privacy when they accept a public appointment.") (Exemptions 6 and 7(C)); cf. *McNamera v. DOJ*, 974 F. Supp. 946, 959 (W.D. Tex. 1997) (stating that "[s]imply because an individual was once a public official does not mean that he retains that status throughout his life," and holding that three years after a disgraced sheriff resigned, he was "a private, not a public figure") (Exemption 7(C)).

[8] See, *Lewis v. DOJ*, 733 F. Supp. 2d 97, 112 (D.D.C. 2010) ("If an individual is the target of a FOIA request [for investigative records], the agency to which the FOIA request is submitted may provide a 'Glomar' response, that is, the agency may refuse to confirm or deny the existence of records or information responsive to the FOIA request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy.") (Exemptions 6 & 7(C)); *Smith v. FBI*, 663 F. Supp. 2d 1, 5 (D.D.C. 2009) ("Because . . . confirmation of records concerning '[a]ny adverse action or disciplinary reports on [named] Agent . . .' would necessarily reveal the precise information Exemption 6 shields, the Glomar response was proper.") (Exemptions 6 & 7(C)); *Cawthon v. DOJ*, No. 05-0567, 2006 WL 581250, at *4 (D.D.C. March 9, 2006) (holding that, with respect to a request for malpractice information, "defendant properly invoked exemption 6 with respect to . . . its Glomar response [as to information maintained in the National Practitioner Data Bank]") (Exemptions 6 & 7(C)).

preferential treatment that too would undermine public confidence in CBP's application of equal justice under the law.

Not all assertions of "public interest" under Exemptions 6 and 7(C) are legitimately entitled to any real weight in the balancing process[9]. A "bare suspicion" of agency misconduct is insufficient. A FOIA requester must produce evidence that would warrant a belief by a reasonable person that alleged Government impropriety might have occurred[10]. An allegation of "public interest" that is nothing more than a general public curiosity in the subject matter of requested records is legally insufficient[11]. You assert that public confidence in the government would undoubtedly suffer if CBP failed to properly vet such a high-profile case and/or if the Duke of Sussex was granted preferential treatment. You have submitted a significantly large number of articles concerning behavior that describe activities that could result in the Duke of Sussex facing heightened scrutiny at the border. You therefore argue the Duke of Sussex's travel and inspection records should be released to the public to determine if he was granted preferential treatment because such treatment would undermine public confidence in DHS, CBP, and USCIS's application of equal justice under the law.

All persons, baggage and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection by a CBP officer.[12] Unless exempt by diplomatic status, all persons entering the United States, including U.S. citizens, are subject to examination and search by CBP officers. CBP officers must determine the nationality of each applicant for admission and, if determined to be a noncitizen, whether or not the applicant meets the requirements of the Immigration and Nationality Act for admission to the United States.

CBP processed more than 179 million travelers at the ports of entry in FY2021, including more than 44 million travelers at airports[13]. CBP's information systems are constantly updated with timely and relevant information, such as a person's behavior and demeanor at subsequent interactions. Furthermore, information that may have subjected a traveler to additional scrutiny at one time has the possibility of being considered untimely and irrelevant at a later date. Given these facts, the results of one person's CBP inspections, even a famous person, is insufficient evidence to undermine public confidence in CBP and its application of equal justice under the law. As such we find that you have not provided sufficient public interest to outweigh the Duke of Sussex's right to privacy concerning any potential CBP records about him that may or may not exist.

Without an individual's consent or an overriding public interest, even to acknowledge the existence of potential CBP travel, inspection or violation records pertaining to an individual would constitute a clearly unwarranted invasion of personal privacy pursuant to Exemption 6 and could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to Exemption 7(C).

---

[9] See, *Church of Scientology v. Department of the Army*, 611 F.2d 738, 747 (9th Cir. 1980) ("There could be no legitimate public purpose served by disclosure of this information.").
[10] Aguirre v. SEC, 551 F. Supp. 2d 33, 56 (D.D.C. 2008)
[11] *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 866 (D.C. Cir. 1981).
[12] 19 C.F.R. 162.6
[13] CBP Trade and Travel Report Fiscal Year 2021| April 2022 p.4

You have not provided consent from The Duke of Sussex.  You have not provided an overriding public interest in any potential Duke of Sussex's CBP records.  Therefore, CBP can neither confirm nor deny the existence of the requested records.

The Freedom of Information Act, particularly Title 5 U.S.C. § 552 (a)(4)(B), provides you with the opportunity to seek judicial review of this administrative appeal.  You may institute judicial review in the United States District Court in the district in which you reside, have a principal place of business, where the agency records are located, or in the United States District Court for the District of Columbia.

As part of the 2007 FOIA amendments, the Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.

You may contact OGIS in any of the following ways: Office of Government Information Services, National Archives and Records Administration, Room 2510,
8601 Adelphi Road, College Park, MD 20740-6001
E-mail: ogis@nara.gov Telephone: 301-837-1996: Toll-free: 1-877-684-6448
Facsimile: 301-837-0348

Please note that U.S. Customs and Border Protection (CBP) ended its participation in FOIAonline on September 30, 2022. Requesters can now use the DHS Portal at https://www.securerelease.us/ to send requests and appeals to CBP.  Appeals filed in FOIAOnline prior to October 1, 2022, will be processed.  Please be patient as we work through the transition process.

                                              Sincerely,

                                              *Shari Suzuki*

                                              Shari Suzuki, Chief
                                              FOIA Appeals, Policy, and Litigation
                                              Regulations and Rulings Directorate
                                              Office of International Trade
                                              Customs and Border Protection