UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HERITAGE FOUNDATION, et. al,<br><br>          Plaintiffs,<br><br>          v.<br><br>DEPARTMENT OF HOMELAND SECURITY<br><br>          Defendant. | Civil Action No. 23-1198 (CJN) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Authorities. ………………………………………………………...……………………………ii

Introduction. ………………………………………………………………...……………………1

Relevant Factual Background. …………………………………………………………...……1

Legal Standard. ……………………………………….…………………………………………..…4

Argument. …………………………………….…………………………………………………...5

    I.   The Relevant Department Components Performed a Reasonable Search. ……………...…5

    II.  The Records Plaintiffs Seek were Compiled for Law Enforcement Purposes. ……………...8

    III. The Records That Plaintiffs Seek Were Appropriately Withheld Under Exemptions 6 and 7(C), the Personal Privacy Exemptions. …………………………………………………...9

        A.  Defendant lawfully withheld the identified records regarding Prince Harry in order to protect his privacy. …………………………………………………………..…12

        B.  Defendant appropriately issued a partial Glomar response to protect Prince Harry's privacy interest in his immigration status. ………………….………………………….…14

        C.  Prince Harry's privacy interests undercut any public interest in these records. …....…17

        D.  Personal identifying information of CBP and USCIS employees is exempt from disclosure. ………………………………………………………………….…...……19

    IV. Defendant Lawfully Withheld Information that Would Reveal Law Enforcement Techniques and Procedures under Exemption 7(E). ………….…………….……….21

    V.  Defendant Has No Reasonably Segregable Records to Release. ………..……………….23

Conclusion. ………………………………………………….…………………………..…24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdeljabbar v. ATF*,
  74 F. Supp. 3d 158 (D.D.C. 2014) ........................................................................ 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 4

*Armstrong v. Exec. Off. of the President*,
  97 F.3d 575 (D.C. Cir. 1996) ............................................................................... 23

*Associated Press v. Dep't of*,
  *Def.*, 549 F.3d 62 (2d Cir. 2008) ......................................................................... 17

*Bales v. United States Dep't of State*, Civil A.,
  No. 18-2779 (RC) 2020 U.S. Dist. LEXIS 39217 (D.D.C.  Mar. 6, 2020) ............. 12

*Beck v. Dep't of Just.*,
  997 F.2d 1489 (D.C. Cir. 1993) ........................................................................... 17

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ................................................................... 18, 21, 22

*Brayton v. Off. of U.S. Trade*,
  *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ..................................................................... 4

*Burton v. Wolf*,
  803 F. App'x. 120 (9th Cir. 2020) ........................................................................ 12

*Campbell v. Dep't of Just.*,
  164 F.3d 20 (D.C. Cir. 1998) ................................................................................ 8

*Canning v. Dep't of Just.*,
  567 F. Supp. 2d 104 (D.D.C. 2008) ..................................................................... 23

*Carter v. Dep't of*,
  *Com.*, 830 F.2d 388 (D.C. Cir. 1987) ................................................................... 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................... 4

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) ........................................................................... 5, 8

*Comm. for Freedom of the Press v. FBI*,
  3 F. 4th 350 (D.C. Cir. 2021) ............................................................................... 23

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,
  554 F.3d 1046 (D.C. Cir. 2009) ........................................................................... 10

*Defenders of Wildlife v. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................... 6

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ..................................................................... 4, 6

*Dent v. Exec. Off. for U.S. Attorneys*,
  926 F. Supp. 2d 257 (D.D.C. 2013) ..................................................................... 21

*Dep't of Just. v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ............................................................................. 10, 11, 18

*Dep't of State v. Ray*,

502 U.S. 164 (1991) ............................................................................................. 13, 18

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) .................................................................................. 10, 12, 13

*Elec. Privacy Info. Ctr. ("EPIC") v. NSA*,
678 F.3d 926 (D.C. Cir. 2012) ................................................................................ 15

*Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
740 F.3d 195 (D.C. Cir. 2014) .................................................................................. 8

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ........................................................................................... 19

*Gardels v. CIA*,
689 F.2d 1100 (D.C. Cir. 1982) .............................................................................. 15

*Greenberg v. Dep't of Treasury*,
10 F. Supp. 2d 3 (D.D.C. 1998) ................................................................................ 6

*Ground Saucer Watch, Inc. v. CIA*,
692 F.2d 770 (D.C. Cir. 1981) .................................................................................. 5

*Hemenway v. Hughes*,
601 F. Supp. 1002 (D.D.C. 1985) ..................................................................... 12, 13

*Jefferson v. Dep't of Just.*,
284 F.3d 172 (D.C. Cir. 2002) .................................................................................. 8

*Jud. Watch, Inc. v. Dep't of,*
Com., 337 F. Supp. 2d 146 (D.D.C. 2004) ............................................................. 22

*Jud. Watch, Inc. v. FDA*,
449 F.3d 141 (D.C. Cir. 2006) ................................................................................ 21

*Jud. Watch, Inc. v. Rossotti*,
285 F. Supp. 2d 17 (D.D.C. 2003) ............................................................................ 6

*Kowalczyk v. Dep't of Just.*,
73 F.3d 386 (D.C. Cir. 1996) .................................................................................... 6

*Lamb v. Millennium Challenge Corp.*,
334 F. Supp. 3d 204 (D.D.C. 2018) .......................................................................... 9

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) .................................................................................. 5

*Lepelletier v. FDIC*,
164 F.3d 37 (D.C. Cir. 1999) .................................................................................. 10

*Levinthal v. FEC*,
219 F. Supp. 3d 1 (D.D.C. 2016) .............................................................................. 8

*Marks v. Dep't of Just.*,
578 F.2d 261 (9th Cir. 1978) .................................................................................... 6

*McGehee v. CIA*,
697 F.2d 1095 (D.C. Cir. 1983) ................................................................................ 4

*Mead Data Cent. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ................................................................................ 23

*Media Rsch. Ctr. v. Dep't of Just.*,
818 F. Supp. 2d 131 (D.D.C. 2011) ...................................................................... 4, 5

*Military Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981) .................................................................................. 5

*Mobley v. CIA*,

iii

806 F.3d 568 (D.C. Cir. 2015) ............................................................................ 14

*Multi Ag Media LLC v. Dep't of Agric.*,
515 F.3d 1224 (D.C. Cir. 2008) .......................................................................... 10

*Nat'l Archives & Records Admin. v. Favish*,
541 U.S. 157 (2004) ...................................................................................... 17, 18

*Nat'l Ass'n of Home Bldgs v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) ......................................................................... 10, 18

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) ............................................................................ 10

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ................................................................................ 6

*Oguaju v. United States*,
288 F.3d 448 (D.C. Cir. 2002) ............................................................................ 17

*People for the Ethical Treatment of Animals v. NIH*,
745 F.3d 535 (D.C. Cir. 2014) .............................................................................. 8

*Performance Coal Co. v. Dep't of Labor*,
847 F. Supp. 2d 6 (D.D.C. 2012) ........................................................................ 14

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982) .............................................................................. 5

*Phillips v. ICE*,
385 F. Supp. 2d 296 (S.D.N.Y. 2005) ................................................................ 14

*Prop of the People v. Dep't of Just.*,
310 F. Supp. 3d 57 (D.D.C. 2018) ...................................................................... 14

*Rosenberg v. Immigr. & Customs,
Enf't*, 959 F. Supp. 2d 61 (D.D.C. 2013) ........................................................... 20

*Roth v. Dep't of Justice*,
642 F.3d 1161 (D.C. Cir. 2011) ............................................................... 11, 15, 16

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ........................................................... 5, 6, 11, 12

*Salas v. Off. of Inspector Gen.*,
577 F. Supp. 2d 105 (D.D.C. 2008) ............................................................... 17, 19

*Sea Shepherd Conservation Soc'y v. IRS*,
208 F. Supp. 3d 58 (D.D.C. 2016) ........................................................................ 8

*Seife v. Dep't of State*,
366 F. Supp. 3d 592 (S.D.N.Y. 2019) ................................................................. 21

*Shapiro v. Dep't of Just.*,
507 F. Supp. 3d 283 (D.D.C. 2020) ..................................................................... 22

*Showing Animals Respect and Kindness v. Dep't of Interior*,
730 F. Supp. 2d 180 (D.D.C. 2010) .................................................................... 14

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) .......................................................................... 23

*Tax Analyst v. IRS*,
294 F.3d 71 (D.C. Cir. 2002) ................................................................................ 8

*Truitt v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) .............................................................................. 6

*Valencia-Lucena v. U.S. Coast Guard*,

180 F.3d 321 (D.C. Cir. 1999) ........................................................................................... 6

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) .................................................................................. 15

**Statutes**

5 U.S.C. § 552(b) ............................................................................................................ 23
5 U.S.C. § 552(b)(6) .................................................................................................... 1, 9
5 U.S.C. § 552(b)(7) ........................................................................................................ 8
5 U.S.C. § 552(b)(7)(C) ............................................................................................. 1, 10
5 U.S.C. § 552(b)(7)(E) ........................................................................................ 1, 2, 21
8 U.S.C. § 1103 ............................................................................................................... 9
8 U.S.C. § 1182(d)(3) .................................................................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 4

Defendant the U.S. Department of Homeland Security respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

## INTRODUCTION

Plaintiffs the Heritage Foundation and Mike Howell (collectively "Plaintiffs") filed a three-part Freedom of Information Act ("FOIA") request with Defendant the U.S. Department of Homeland Security ("Defendant" or "the Department") that broadly sought records related to Henry Charles Albert David, a British National, otherwise known as "Prince Harry," or the "Duke of Sussex." *See* Heritage Request (ECF No. 7-2).  Not satisfied with the Department's response, Plaintiffs brought this lawsuit seeking full disclosure of the records.

After considering Plaintiffs' request, Defendant determined that it cannot release any responsive records without undermining FOIA exemptions.   Defendant acknowledged the existence of some of the records that Plaintiff is seeking, but cannot release those records because each record is exempt from disclosure under 5 U.S.C. § 552(b)(6) ("Exemption 6") and 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), the personal privacy exemptions, and 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), the law enforcement techniques and procedures exemption.   Defendant cannot confirm or deny whether any other records that Plaintiffs are seeking exist because the mere acknowledgment of these records would constitute an unwarranted invasion of Prince Harry's privacy, implicating Exemptions 6 and 7(C).  And there is no reasonably segregable information.

## RELEVANT FACTUAL BACKGROUND

On March 8, 2023, Plaintiffs the Heritage Foundation and Mike Howell submitted a FOIA request to the U.S. Department of Homeland security for various records regarding Prince Harry's status in the United States.  *See* Pl. Request (ECF No. 7-2).  The request sought three categories of records: (1) all records within Prince Harry's Alien Registration file including but not limited

to any applications for immigration benefits, and any Forms I-213, I-275, and I-877, (2) all records pertaining to Prince Harry within twelve different databases, and (3) "all records relating to any requests for waiver by Prince Harry pursuant to Section 212(d)(3) of the Immigration and Nationality Act." *Id.* Plaintiffs' request did not include any documents showing that Prince Harry had authorized release of this information to Plaintiffs. Ex. 1, Panter Decl. ¶ 20; Ex. 2, Suzuki Decl. ¶ 9.

The Department's Privacy Office reviewed the request and determined that Department components U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and the Office of Biometric Identity Management ("Biometric Identity Office") were the components that would have custody of any records that were responsive to parts 1 and 2 of Plaintiffs' request. Ex. 3, Pavlik-Keenan Decl. ¶¶ 10, 12. The Privacy Office then forwarded the request to USCIS, CBP, and the Biometric Identity Office[1] and notified Plaintiffs of the referral. *Id.* ¶ 10.

USCIS determined that it had records responsive to part 1 of Plaintiffs' request and that those records would be in Person Centric Identity Services and Person Centric Query System. Ex. 1, Panter Decl. ¶¶ 13-14. Person Centric Identity Services is an application that allows a search through a repository of identity information that includes biographical and biometric information on immigration history and status, and Person Centric Query System is a USCIS system that allows a single query for all transactions across the Department of Homeland Security, the Justice Department, and State Department systems and includes biographic and biometric information. *Id.* USCIS located the responsive records, reviewed them, and determined that all the responsive

---

[1]     In practice, the Privacy Office processes FOIA requests for the Biometric Identity Office. Ex. 3, Pavlik-Keenan Decl. ¶ 3.

records are categorically exempt from disclosure pursuant to FOIA Exemption 6 and in part based on Exemptions 7(C) and 7(E).  *Id.* ¶¶ 15-16.

Part 2 of Plaintiffs' request sought records regarding Prince Harry in twelve different databases.[2]  Pl's Request (ECF No. 7-2).  CBP maintains each of the databases that Plaintiff listed, excluding the Automated Biometric Identification System, which the Biometric Identity Office maintains.  Ex. 3, Pavlik-Keenan Decl. ¶¶ 12, 17; Ex. 1, Panter Decl. ¶ 14 n. 1; Ex. 2, Suzuki Decl. ¶ 31.  CBP searched its TECS system[3] for entry and exit records regarding Prince Harry using the names and date of birth that the requester submitted as well as passport numbers found during the search.  Ex. 2, Suzuki Decl. ¶ 14.  The TECS system includes border crossing information for travelers entering and exiting the United States.  *Id.* ¶ 16.  CBP located Person Encounter Lists and Person Encounter Detail Records regarding Prince Harry within the TECS system, but is withholding them pursuant to exemptions 6, 7(C) and 7(E).  *Id.* ¶ 17.  CBP did not conduct a search for any other records requested in part 2 of Plaintiff's request and issued a *Glomar* response, neither confirming nor denying the existence of those records because acknowledging whether those records exist would itself effect an unwarranted invasion of Prince Harry's personal privacy.  *Id.* ¶ 18.  For the same reason, the Biometric Identity Office issued a *Glomar* response to Plaintiffs'

---

[2]    The databases that Plaintiffs identified were the Automated Targeting System, the Advance Passenger Information System, the Border Crossing Information System, the U.S. Customs and Border Protection TECS, the Non-Federal Entity Data System, the Terrorist Screening Database, Intelligence Records System, the Automated Biometric Identification System, the Electronic System for Travel Authorization, the Nonimmigrant Information System, the Arrival and Departure Information System, and the Electric Visa Update System.

[3]    TECS is "not an acronym" and "is the updated and modified version of the former Treasury Enforcement Communications System."  *See* Dep't of Homeland Sec., *Privacy Impact Assessment Update for the TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative*, at 2, *available at*  https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-sar-update_0.pdf (last visited August 27, 2023).

request for records in the Automated Biometric Identification System . Ex. 3, Pavlik-Keenan Decl. ¶ 24.

As for part 3 of the request, namely "all records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act," the Department and each relevant component issued a *Glomar* response, neither confirming nor denying the existence of responsive records. Ex. 1, Panter Decl. ¶ 13; Ex. 2, Suzuki Decl. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 25.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See id.* at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMEMT

### I.    The Relevant Department Components Performed a Reasonable Search.

Defendant searched the only places that its Privacy Office, given its familiarity with the records held by various parts of the Department, determined were reasonably likely to contain responsive records—USCIS, CBP, the Biometric Identity Office, and Department Headquarters. Ex. 3, Pavlik-Keenan Decl. ¶¶ 10, 12. Each of those entities fulfilled its obligation to search for records responsive to Plaintiff's FOIA request. An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to

produce information requested." *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (*quoting Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive records are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Applying these principles, the Department is entitled to summary judgment with respect to the adequacy of its search.

USCIS was the custodian of records responsive to part 1 of Plaintiffs' request, which sought all records within Prince Harry's Alien File, including but not limited to any of Prince

Harry's applications for immigration benefits, and forms I-213, I-275, I-877.  Ex. 1, Panter Decl. ¶ 13; Pl. Request (ECF No. 7-2).  USCIS determined that any responsive records would be stored in the Person Centric Identity Services and Person Centric Query System databases and searched those databases.  Ex. 1, Panter Decl. ¶ 14.  USCIS located responsive records within those databases but determined that all the responsive records are categorically exempt from disclosure pursuant to FOIA Exemption 6 and in part based on Exemptions 7(C) and 7(E).  *Id*. ¶ 16.

In response to part 2 of Plaintiff's request, which sought records regarding Prince Harry in twelve different databases, CBP searched its TECS system for entry and exit records regarding Prince Harry using the names and date of birth that the requester submitted as well as passport numbers found during the search.  Ex. 2, Suzuki Decl. ¶ 14.  CBP located Person Encounter Lists and Person Encounter Detail Records regarding Prince Harry within the TECS system, but is withholding them pursuant to exemptions 6, 7(C) and 7(E).  Ex. 2, Suzuki Decl.¶ 17.

CBP could neither confirm nor deny whether it had records regarding Prince Harry in any of the other CBP databases listed in part 2 of the request, and thus issued a *Glomar* response as to any other records.  *Id*. ¶ 37.  The Automated Biometric Identification System , which is a Biometric Identity Office system, was the only database listed in part 2 of the request that was not a CBP system.  Ex. 3, Pavlik-Keenan Decl. ¶ 12.  But like CBP, the Biometric Identity Office determined that it needed to issue a *Glomar* response to Plaintiffs' request for Automated Biometric Identification System records.  *Id*. ¶ 17.

Finally, all relevant Department components issued a Glomar response to part 3 of the request, which sought communications about a request for a visa waiver.  Ex. 1, Panter Decl. ¶ 13; Ex, 2 Suzuki Decl. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 25.  As explained more fully in section II, part B below, acknowledging whether these records exist would reveal Prince Harry's visa or

immigration status which would amount to an unwarranted invasion of Prince Harry's privacy. Because Defendant justifiably issued a *Glomar* response to these portions of the request, Defendant "need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014).

Thus, the Department Headquarters, USCIS, CBP, and the Biometric Identity Office "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente*, 867 F.3d at 117. Accordingly, Defendant is entitled to summary judgment with respect to the adequacy of its search.

## II.     The Records Plaintiffs Seek were Compiled for Law Enforcement Purposes.

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where, as here, "the agency's principal function is law enforcement, courts are 'more deferential' to the agency's claimed purpose for the particular records." *Pub. Emps. for Env't Resp. v. U.S.*

*Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014)

(quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)).

The records at issue in this case meet this threshold.  The Department of Homeland Security

is charged with the administration and enforcement of laws relating to the immigration and

naturalization of aliens, subject to certain exceptions.  *See* 8 U.S.C. § 1103.  This is part of the

Department's mission to "ensure public safety against threats foreign and domestic."  Ex. 3,

Pavlik-Keenan ¶ 21.  USCIS has responsibility to enforce federal immigration law pursuant to the

Immigration and Nationality Act through its adjudications of applications and petitions submitted

by individuals seeking immigration benefits from the United States government, and the USCIS

records were compiled as part of this mission. Ex. 1, Panter Decl. ¶ 27.  Similarly, CBP's mission

is to secure the border of the United States, and records regarding Prince Harry's interactions with

CBP would have been generated as part of that mission.  Ex. 2, Suzuki Decl. ¶ 23.  Finally, the

Automated Biometric Identification System records maintained by the Biometric Identity Office

contain biometric and biographic information that CBP collects as part of its law enforcement

mission to secure the border.  Ex. 3, Pavlik-Keenan ¶ 24.

## III.    The Records That Plaintiffs Seek Were Appropriately Withheld Under Exemptions 6 and 7(C), the Personal Privacy Exemptions.

Exemption 6 exempts from disclosure "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C.

§ 552(b)(6).[4]  It "requires a court to 'pursue two lines of inquiry,' first determining whether the

---

[4]    Unlike Exemption 7(C), Exemption 6 applies regardless of whether the records were compiled for law enforcement purposes.  *Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 216 (D.D.C. 2018) ("In one respect, however, Exemption 7(C) sweeps less broadly than Exemption 6: it applies only to records 'compiled for law enforcement purposes.'").  Thus, to the extent that any of these records were not compiled for law enforcement purposes, the records would remain exempt under Exemption 6.  See, Ex. 1, Panter Decl. ¶ 19.

records at issues are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). "The term 'similar files' is to be construed broadly and includes any 'disclosure of information which applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).

If the threshold requirement of ''personnel and medical files and similar files'' is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). If a requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Similarly, Exemption 7(C) exempts "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)). Where the information in question, if any, "was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C)," courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth*, 642 F.3d at 1173.

In appropriate cases, FOIA exemptions can be applied categorically. The Supreme Court has explained that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Reps. Comm.*, 489 U.S. 749 at 776. For example, in *Reporters Committee*, plaintiff "sought disclosure of any arrests, indictments, acquittals, convictions, and sentences" of four individuals with organized-crime associations. *Id.* at 757. The Court held that such "rap sheet" information was categorically protected by Exemption 7(C). *See id.* at 780 ("[W]e hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy[.]").

The D.C. Circuit further clarified the scope of the third-party categorical exemption in *SafeCard Services*, 926 F.2d 1197. The plaintiff in *SafeCard* sought documents related to an SEC investigation, and, pursuant to Exemption 7(C), the agency "deleted the names and addresses of third parties mentioned in witness interviews, of customers listed in stock transaction records . . . , and of persons in correspondence with the SEC." *Id.* at 1205. The Circuit affirmed these

redactions, holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id.* at 1206.

### A. Defendant Lawfully Withheld the Identified Records Regarding Prince Harry in Order to Protect His Privacy.

The entry and exit records that CBP located via TECS, and the Person Centric Identity Services and the Person Centric Query System that USCIS located, are exempt from disclosure under Exemptions 6 and 7(C). Beyond the myriad personally identifiable information that the Person Centric Identity Services, Person Centric Query System, and TECS records contain, the records are particularly sensitive because releasing them, even in part, would reveal Prince Harry's status in the United States, which Prince Harry has not disclosed. Ex. 1, Panter Decl. ¶ 20. Specifically, the records would reveal the types of documents that Prince Harry used to travel to the United States, his admission status, and any immigration, or non-immigration, benefits that he may have sought. *Id.*; Ex. 2, Suzuki Decl. ¶ 21.

Courts consistently hold that a person's visa or immigration status is private, personal information exempt from disclosure under Exemption 6. *Burton v. Wolf*, 803 F. App'x. 120, 121 (9th Cir. 2020) (allowing government to categorically withhold a third-party Alien file under Exemption 6 because the subject has a privacy interest in her immigration information); *Bales v. Dep't of State*, Civ. A. No. 18-2779 (RC), 2020 U.S. Dist. LEXIS 39217, at *10-11 (D.D.C. Mar. 6, 2020) (upholding refusal to disclose whether visa records exist under Exemption 6 because any acknowledgment "would disclose information 'applying to' each Afghan witness"); *see also Wash. Post*, 456 U.S. at 602 (holding that "citizenship information" regarding third parties can be withheld under Exemption 6 "upon a showing by the Government that release of the information

would constitute a clearly unwarranted invasion of personal privacy"); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1006 (D.D.C. 1985) (allowing the State Department to withhold citizenship status of foreign correspondents under Exemption 6). Indeed, USCIS even determined that it could not provide a more thorough description of the records that it maintains regarding Prince Harry because doing so would allow someone to determine Prince Harry' status in the United States. Ex. 1, Panter Decl. ¶ 16.

USCIS maintains records on individuals who have lawfully entered the United States and uses these records to process immigrant and nonimmigrant benefit requests. Ex. 1, Panter Decl. ¶ 18. The records Plaintiffs seek include a significant amount of private, personally identifiable information regarding beneficiaries and their family members such as names, aliases, physical and mailing addresses, unique identifying numbers, responses to questions on immigration benefit forms, and copies of government issued identification, receipt notices, requests for evidence, proofs of benefits extended, and benefit specific eligibility information about the benefit requester. *Id*. Further, the records may include unique identifying numbers issued by the State Department or other federal agencies, arrival and departure information, immigration history, family relationships, personal background information, records regarding organization memberships or affiliations, health information, travel history, education and employment history, professional accreditation information, and financial information. Ex. 1, Panter Decl. ¶ 18. The entry and exit records within CBP's TECS system contain similar information. Ex. 2, Suzuki Decl. ¶ 21.

The type of personal information that the CBP and USCIS declarants describe is of the variety that courts consistently hold is exempt under both FOIA personal privacy exemptions. *See e.g., Dep't of State v. Ray,* 502 U.S. 164, 175-76 (1991) (disclosure of personal information such as "marital and employment status, children, living conditions and attempts to enter the United

States" is a significant invasion of privacy when "linked" to specific people); *Wash. Post*, 456 U.S. at 600 ("[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"); *Performance Coal Co. v. Dep't of Lab.*, 847 F. Supp. 2d 6, 17-18 (D.D.C. 2012) (concluding that defendants properly withheld "miners' names, cell phone numbers, and home phone numbers; inspectors' names and email addresses; inspectors' initials; MSHA employees' government issued cell phone numbers, home addresses, and home telephone numbers; third party home addresses, dates of birth, last four digits of social security numbers; and miners' job titles and ethnicities" contained in law enforcement records).

Even though he is a public figure, Prince Harry still maintains a privacy interest in these types of records and in his immigration or visa status generally.  Ex. 1, Panter Decl. ¶ 20.  Even if public figures may have a diminished expectation of privacy, they do not surrender their privacy interests entirely.   "Were this not the case, a requester could go on a fishing expedition for [government] records for any celebrity at all."  *Prop of the People v. Dep't of Just.*, 310 F. Supp. 3d 57, 69-70 (D.D.C. 2018) (concluding that President Trump "retained a privacy interest in whether his name appears in investigative records from 1946 to 2015"); *see also Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 193 n.14 (D.D.C. 2010) (declining to weigh a country musician's "celebrity as a factor in considering his privacy interests in the videos"); *Phillips v. ICE*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) (disregarding requester's unsupported claim that former foreign government officials have no "legitimate privacy interest[s]").  Thus, to protect Prince Harry's privacy, and given the identification of no overriding

public interest, Defendant properly withheld Person Centric Identity Services, Person Centric Query System, and TECS records in full.

**B.      Defendant Appropriately Issued a Partial *Glomar* Response to Protect Prince Harry's Privacy Interest in His Immigration Status.**

"An agency asserts a *Glomar* response when it refuses to confirm or deny the very existence of responsive records." *Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015). In the context of a FOIA exemption, "an agency may issue a *Glomar* response . . . if the particular FOIA exemption at issue would itself preclude the acknowledgment of such documents." *Elec. Privacy Info. Ctr.* ("*EPIC*") *v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). "In *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than mere conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Id.* (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Ultimately, an agency's justification for invoking a FOIA exemption, whether directly or in the form of a *Glomar* response, "is sufficient if it appears logical or plausible." *Roth*, 642 F.3d at 1178. "In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374.

As explained in section II(a) above, the Department must withhold any information regarding Prince Harry's visa or immigration status under the personal privacy exemptions because Prince Harry has a privacy interest in that information. For that same reason, all Department components issued a *Glomar* response to part 3 of Plaintiffs' request, which sought "all records relating to any requests for waiver by Prince Harry pursuant to Section 212(d)(3) of the Immigration and Nationality Act." Ex. 1, Panter Decl. ¶ 33; Ex. 2, Suzuki Decl. ¶¶ 31-38;

Ex. 3, Pavlik-Keenan Decl. ¶ 25.  The Immigration and Nationality Act provision that Plaintiffs cite gives the Attorney General and the Secretary of State discretion, under certain circumstances, to temporarily admit a foreign national who is otherwise ineligible for entry.   8 U.S.C. § 1182(d)(3).   All components appropriately refused to confirm or deny whether they had communications regarding any request for a waiver by Prince Harry because the mere acknowledgment of whether responsive records exist would reveal whether Prince Harry sought a waiver, which in turn would provide insight into Prince Harry's immigration status.  Ex. 1, Panter Decl. ¶ 33; Ex. 2, Suzuki Decl. ¶ 37.

Although CBP acknowledged that it possesses Prince Harry's entry and exit records in its TECS system, CBP and the Biometric Identity Office will not confirm or deny whether they have records about Prince Harry in any of the other databases Plaintiffs identified in part 2 of their request.[5]  Ex. 2, Suzuki Decl. ¶ 31; Ex. 3, Pavlik-Keenan Decl. ¶ 17.  CBP found that a *Glomar* response is proper, as CBP is a law enforcement agency, and acknowledging whether Prince Harry appears in the databases Plaintiffs identify would carry a stigma and cast him in an unfavorable or negative light.  Ex. 2, Suzuki Decl. ¶ 35.  Additionally, acknowledging whether there are any records pertaining to Prince Harry in any of the databases would convey information about Prince Harry's status in the United States.  *Id*. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 24.  Specifically, the existence or non-existence of responsive records within any of these databases would reveal whether Prince Harry applied for particular immigration benefits or whether he was the subject to any adverse actions.  Ex. 2, Suzuki Decl. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 24.  Thus, a *Glomar* response is necessary to ensure that this information remains private.  *Bales*, 2020 U.S. Dist.

---

[5]      CBP acknowledged that is has entry and exit records pertaining to Prince Harry because it is widely known that Prince Harry has traveled to and from the United States, and thus admitting that records of his entry and exit would not invade his privacy interests. Ex. 2, Suzuki Decl. ¶ 37.

LEXIS 39217, at *10-11 (upholding government's privacy-based *Glomar* in response to a request for visa records about third parties to protect "their privacy interest in [their] own immigration status[es], including whether [they have] applied for or been granted a visa.").

In short, Defendant determined that "the existence or nonexistence of the requested records is itself" exempt from disclosure.  *Roth*, 642 F.3d at 1178.  Privacy-based *Glomar* responses are upheld in situations, like here, where a request seeks information about a third-party's interactions with the government.  *CREW v. Dep't of Just.*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) ("If a FOIA request is made for [an agency's] investigative records regarding a particular individual, the [agency]'s mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity and therefore a Glomar response may be appropriate."); *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated & remanded*, 541 U.S. 970, *on remand*, 378 F.3d 1115 (D.C. Cir. 2004) (reaffirming prior decision) (allowing Marshals Service to assert *Glomar* to protect the privacy interests of an informant whose testimony the requester believed helped convict him); *Beck v. Dep't of Just.*, 997 F.2d 1489 (D.C. Cir. 1993) (affirming privacy-based *Glomar* response to request for records concerning misconduct by two DEA agents).  Thus, Defendant appropriately refused to confirm or deny the existence of any remaining records responsive to Plaintiffs' request.

### C.      Prince Harry's Privacy Interests Undercut Any Public Interest in These Records.

Plaintiffs have the burden to establish that disclosure of this information would otherwise sufficiently serve the public interest so as to overcome Prince Harry's privacy interests.  *See, e.g.*, *Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to

outweigh an individual's privacy interest, and the public interest must be significant.") (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  The requester must both show that (1) the "public interest to be advanced is a significant one" that is "more specific than having the information for its own sake" and (2) that the information sought "is likely to advance that interest."  *Favish*, 541 U.S. at 172.  Importantly, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders*, 309 F.3d at 34 (quoting *Reps. Comm.*, 489 U.S. at 773).

Plaintiffs have not articulated a public interest in these records that is significant enough to overcome Prince Harry's interest in keeping his immigration information private.  Plaintiffs appear to believe that the records they seek would reveal whether the Department and its components are affording Prince Harry preferential treatment. Am. Compl. ¶ 1. Plaintiffs wonder if the Department complied with the law, namely whether the Government admitted Prince Harry into the United States without a waiver or an interview with CBP.  Ex. 3, Pavlik-Keenan Decl. ¶ 26.  To assert a public interest, Plaintiffs would need to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Favish*, 541 U.S. at 174.  But here, Plaintiffs "recounted a litany of allegedly suspicious circumstances [that] lacked any substantiation."  *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011).  Courts afford government records and official conduct a presumption of legitimacy, *Ray*, 502 U.S. at 179, and Plaintiffs' speculation that the Government admitted Prince Harry into the United States without following the procedures laid out in statutes and regulations simply amounts to a "bare suspicion" of government misconduct that does not undermine the presumption of legitimacy. *Favish*, 541 U.S. at 174.  Plaintiffs list eleven prominent foreign nationals that they contend were afforded less favorable treatment than Prince Harry when they sought to enter the United States.

Am. Compl. ¶ 24.  But the full facts behind those individuals' cases are not publicly known, and those cases may have occurred under different policies and procedures.  Ex. 1, Panter Decl. ¶ 23.  Indeed, only three of the eleven instances Plaintiff recounts occurred in the last ten years.  Am. Compl. ¶ 24.

Further, Prince Harry is but one foreign national who obtained admission into the United States, and Courts have recognized that there is a minimal amount of information of interest to the public in a single incident or investigation, and any such marginal public interest does not overcome an individual's privacy interests.  *See e.g., Burton*, 803 F. App'x. at, 122 (finding that "disclosure of personal information in an isolated case" involving requester's estranged wife's immigration petition would not advance FOIA public interest); *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (upholding redactions of personally identifying information about Border Patrol employees mentioned in investigative records, concluding that "[t]his one incident, . . . , is not one of such magnitude that it outweighs the agency employees' substantial privacy interest").

Prince Harry has not revealed his immigration status, Ex. 1, Panter Decl. ¶ 20, and if the Department were to undermine Prince Harry's privacy interest and release information that would reveal it, the information would not shed meaningful light on the Department or its components' performance of their statutory duties.  *Id.* ¶ 19; Ex. 2, Suzuki Decl. ¶ 37.  Thus, to preserve Prince Harry's privacy in his visa or immigration status, all Department components appropriately declined to produce any records responsive to Plaintiffs' request.  If Plaintiffs should maintain that FOIA is primarily a disclosure statute and that the government and courts should, in close cases, err in favor of releasing information, that is not the law, and agencies and this Court have an obligation to protect privacy interests unless a plaintiff bears its burden to show that a meaningful

19

public interest outweighs a person's privacy interests, and here there has been no such showing. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (FOIA exemptions serve "important interests," are "as much a part of FOIA's purposes and policies as the statute's disclosure requirement," and may not be "constrict[ed]" in favor of disclosure (cleaned up)).

**D.      Personal Identifying Information of CBP and USCIS Employees is Exempt From Disclosure.**

In addition to Prince Harry's identifying information, the responsive records in CBP's TRECS system and USCIS's Person Centric Identity Services and Person Centric Query System contain CBP and USCIS employees' personal identifying information.   Ex. 2, Suzuki Decl. ¶¶ 22, 27; Ex. 1, Panter Decl. ¶ 29.   This information likewise is exempt under both personal privacy exemptions.   It is well-established that law enforcement personnel, witnesses, and sources have "an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were [part] of a law enforcement investigation."   *Nation Magazine*, 71 F.3d at 894.

Releasing these employees' personally identifying information could subject them to unwarranted harassment and publicity, which could limit their effectiveness in handling their respective functions and duties.   Ex. 1, Panter Decl. ¶ 29; Ex. 2, Suzuki Decl. ¶ 22.   Identifying an individual in association with their duties at a law enforcement agency creates a safety threat and could subject these individuals to harassment.   Ex. 1, Panter Decl. ¶ 29; Ex. 2, Suzuki Decl. ¶ 27. Notably, all CBP employees, not just those who perform front-line law enforcement duties, are exempt from the Office of Personnel Management's salary information disclosure policy.   Ex. 2, Suzuki Decl. ¶ 27; *see also Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 179 (D.D.C. 2014) (finding disclosure of ATF's personnel may hinder the agency's ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and be an invasion of privacy as contemplated by the exemption).   Any public interest in these employees' identifying

information is dwarfed by their privacy interests, because releasing the information, would not shed light on the entities' performance of their statutory duties, whereas such release could significantly harm the individuals.  Ex. 2, Suzuki Decl. ¶¶ 22, 27; *see also McGehee v. Dep't of Just.*, 800 F. Supp. 2d 200, 233 (D.D.C. 2011) (disclosure of the names of FBI agents involved in the Jonestown Massacre would not "shed light on the FBI's performance of its statutory duties").

Courts routinely uphold the withholding of law enforcement agency employees' identifying information under the personal privacy exemptions.  *See, e.g., Rosenberg v. Immigr. & Customs Enf't*, 959 F. Supp. 2d 61, 75 (D.D.C. 2013) (FBI was entitled to summary judgment with respect to use of Exemptions 6 and 7(C) to withhold names and other identifying information of FBI Special Agents and support staff); *Dent v. Exec. Off. for U.S. Attorneys,* 926 F. Supp. 2d 257, 269–70 (D.D.C. 2013) (FBI correctly withheld "'names of and/or identifying information of FBI [Special Agents . . .] and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents responsive to plaintiff's request'").  On occasion, the rule has even been applied to withhold names of agency employees who do not perform a law enforcement function.  *See, e.g., Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (HHS employees named in records concerning abortion drug testing were properly protected pursuant to Exemption 6 to ensure employees' safety); *Seife v. Dep't of State*, 366 F. Supp. 3d 592, 610-11 (S.D.N.Y. 2019) (disclosure of the names of three Department of State briefers could impact their personal safety).  Thus, the names and other identifying information regarding CBP and USCIS employees within TECS, Person Centric Identity Services, and Person Centric Query System are exempt from disclosure under Exemptions 6 and 7(C).

IV.    **Defendant Lawfully Withheld Information that Would Reveal Law Enforcement Techniques and Procedures under Exemption 7(E).**

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E); *Blackwell*, 646 F.3d at 42 (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).   Generally, techniques and procedures not well-known to the public have been found to be exempt from disclosure under Exemption 7(E).   *See, e.g., Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (recognizing exemption's protection for techniques "not well known to the public").   Even records containing commonly known procedures have been protected from disclosure "if the disclosure could reduce or nullify their effectiveness."   *CREW v. Dep't of Just.*, 870 F. Supp. 2d 70, 85 (D.D.C. 2012).

The USCIS records include law enforcement systems checks and law enforcement database codes.   Ex. 1, Panter Decl. ¶ 31.   If information about these databases were released, a person seeking improper access to law enforcement sensitive data or seeking to sabotage USCIS's operations generally could more easily navigate these databases and compromise the integrity of the data by deleting or altering information.   *Id.*   Similarly, CBP withheld the fields of data in the Person Encounter Lists and the Person Encounter Detail records because they contain otherwise unknown, specific law enforcement techniques, procedures, and guidelines that CBP personnel follow when carrying out CBP's law enforcement mandate to secure the nation's borders.   Ex. 2, Suzuki Decl. ¶ 30.   If disclosed, the information would reveal the circumstances that might trigger additional CBP scrutiny while processing international travelers for entry into or departure from

the United States, and would reveal the instructions provided to CBP personnel on which law enforcement techniques ought to be practiced in those circumstances. *Id*. Releasing this information would risk circumvention of the law by enabling illicit actors to alter their patterns of conduct, adopt new methods of operation, or take other countermeasures. *Id*.

Thus, USCIS and CBP properly invoked Exemption 7(E) to protect the information in their respective databases containing law enforcement sensitive information. *See, e.g., Blackwell*, 646 F.3d at 42 (finding that "methods of data collection" and "manner in which the data is searched, organized and reported" was properly withheld under Exemption 7(E)); *Shapiro v. Dep't of Just*., 507 F. Supp. 3d 283, 333 (D.D.C. 2020) ("[A]ccess to information about FBI databases could give criminals and adversaries information about the FBI's programs that, in turn, could aid them in avoiding detection or gaining access to the FBI's systems.").

## V.   Defendant Has No Reasonably Segregable Records to Release.

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just*., 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv*., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Both USCIS and CBP—the two entities that released records pursuant to Plaintiffs' request— reviewed the records that each of them processed and determined that no segregation of meaningful information in the withheld documents would be possible without disclosing information that warrants protection under the law.  Ex. 1, Panter Decl. ¶ 34; Ex. 2, Suzuki Decl. ¶ 39.  Thus, any further release of information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).

\* \* \*

## CONCLUSION

For these reasons, the Department is entitled to an order granting summary judgment in its favor.

Dated:  August 28, 2023
           Washington, DC

                                   Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: *John J. Bardo*
     JOHN J. BARDO
     D.C. Bar # 1655534
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 870-6770

*Attorneys for the United States of America*