UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, et. al, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY <br><br> *Defendant*. | Civil Action No. 23-1198 (CJN) |

**DEFENDANT'S LOCAL RULE 7(H) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

1. On March 8, 2023, Plaintiffs the Heritage Foundation and Mike Howell submitted a Freedom of Information Act ("FOIA") request to the U.S. Department of Homeland Security ("the Department") for various records regarding Prince Harry's status in the United States. *See* Pl. Request (ECF No. 7-2).

2. The request sought three categories of records: (1) all records within Prince Harry's Alien Registration file, including but not limited to any applications for immigration benefits, and any Forms I-213, I-275, and I-877, (2) all records pertaining to Prince Harry within twelve different databases, and (3) "all records relating to any requests for waiver by Prince Harry pursuant to Section 212(d)(3) of the Immigration and Nationality Act." Pl. Request (ECF No. 7-2).

3. Plaintiffs' request did not include any documents showing that Prince Harry had authorized release of this information to Plaintiffs. Ex. 1, Panter Decl. ¶ 20; Ex. 2, Suzuki Decl. ¶ 9; Ex. 3, Pavlik-Keenan Decl. ¶ 13

4. The Department's Privacy Office reviewed the request and determined that Department components U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and

Border Protection ("CBP"), and the Office of Biometric Identity Management ("Biometric Identity Office") were the only components that would have custody of any records that were responsive to parts 1 and 2 of Plaintiffs' request. Ex. 3, Pavlik-Keenan Decl. ¶¶ 10, 12.

5. The Privacy Office then forwarded the request to USCIS, CBP, and the Biometric Identity Office and notified Plaintiffs of the referral. Ex. 3, Pavlik-Keenan Decl. ¶ 10.

6. USCIS determined that it had records responsive to part 1 of Plaintiffs' request and that those records would be in Person Centric Identity Services ("PCIS") and Person Centric Query System ("PCQS"). Ex. 1, Panter Decl. ¶ 14.

7. PCIS is an application that allows a search through a repository of identity information that includes biographical and biometric information on immigration history and status. Ex. 1, Panter Decl. ¶ 14.

8. PCQS is a USCIS system that allows a single query for all transactions maintained by Department of Homeland Security, the Justice Department, and the State Department systems and includes biographic and biometric information. Ex. 1, Panter Decl. ¶ 14

9. USCIS located the responsive records, reviewed them, and determined that all of the responsive records are categorically exempt from disclosure pursuant to FOIA Exemption 6 and in part based on Exemptions (b)(7)(C) and (b)(7)(E). Ex. 1, Panter Decl. ¶¶ 15-16.

10. Part 2 of Plaintiffs' request sought records regarding Prince Harry in twelve different databases. Pl's Request (ECF No. 7-2).

11. Any records in the IDENT system would have been in the Biometric Identity Office's custody. Ex. 3, Pavlik-Keenan Decl. ¶ 17.

12. Any records in the other databases listed in part 2 of the request would have been CBP records. Ex. 3, Pavlik-Keenan Decl. ¶ 12; Ex. 1, Panter Decl. ¶ 14 n. 1; Ex. 2, Suzuki Decl. ¶ 31.

13. CBP searched its TECS system for entry and exit records regarding Prince Harry using the names and date of birth submitted by the requester as well as passport numbers found during the search. Ex. 2, Suzuki Decl. ¶ 14.

14. The TECS system includes border crossing information for travelers entering and exiting the United States. Ex. 2, Suzuki Decl. ¶ 16.

15. CBP located Person Encounter Lists and Person Encounter Detail Records regarding Prince Harry within the TECS system, but is withholding them pursuant to exemptions 6, 7(C) and 7(E). Ex. 2, Suzuki Decl. ¶ 17.

16. CBP did not conduct a search for any other records requested in part 2 of Plaintiff's request and issued a *Glomar* response, neither confirming nor denying the existence of those records because acknowledging the existence of those records would itself cause an unwarranted invasion of Prince Harry's personal privacy. Ex. 2, Suzuki Decl. ¶ 18.

17. Both USCIS and CBP reviewed the records that they respectively processed and determined that no segregation of meaningful information in the withheld documents would be possible without disclosing information that warrants protection under the law. Ex. 1, Panter Decl. ¶ 34; Ex. 2, Suzuki Decl. ¶ 39.

18. The Biometric Identity Office issued a *Glomar* response to Plaintiffs' request for records in the IDENT system. Ex. 3, Pavlik-Keenan Decl. ¶ 24.

19. With respect to part 3 of the request, namely "all records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act," the Department

and each of the relevant components issued a *Glomar* response, neither confirming nor denying the existence of any responsive records. Ex. 1, Panter Decl. ¶ 13; Ex. 2, Suzuki Decl. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 25.


Dated: August 28, 2023
       Washington, DC

          Respectfully submitted,

          MATTHEW M. GRAVES, D.C. Bar #481052
          United States Attorney

          BRIAN P. HUDAK
          Chief, Civil Division

          By: *John J. Bardo*
              JOHN J. BARDO
              D.C. Bar # 1655534
              Assistant United States Attorney
              601 D Street, NW
              Washington, DC 20530
              (202) 870-6770

          *Attorneys for the United States of America*