UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HERITAGE FOUNDATION, | ) | |
| | ) | |
| MIKE HOWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-cv-1198 (CJN) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JARROD PANTER**

I, Jarrod Panter, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Acting Associate Center Director and Chief FOIA Officer in the Freedom of

Information and Privacy Act ("FOIA/PA") Unit, National Records Center ("NRC"), United

States Citizenship and Immigration Services (USCIS), within the United States Department of

Homeland Security ("DHS"), in Lee's Summit, Missouri. I have held the position of Acting

Associate Center Director since August 12, 2023. I received my Masters of Public

Administration in 2008 from the University of Kansas.  I joined USCIS in 2009, as a

Government Information Specialist at the National Records Center, and in 2012 began serving as

a Supervisory Government Information Specialist.  In 2013, I was promoted to Section Chief of

the Significant Interest Group prior to serving in my current position as Acting Associate Center

Director.

2.      As the FOIA Officer for USCIS, I work with over 200 information access professionals

at USCIS who are responsible for the orderly processing of all public, congressional, judicial,

and inter-/intra-agency requests or demands for access to USCIS records and information

pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations, and compulsory legal process.

3.      Through the exercise of my official duties as the Acting Associate Center Director, I am familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records.

4.      The statements contained in this declaration are based on my personal knowledge and upon information provided to me by other USCIS employees in the course of my official duties. This declaration is submitted in support of Defendant's Motion for Summary Judgement in the above-captioned case.  My declaration describes, generally, agency procedures for searching for records responsive to FOIA requests for access to agency records and, more specifically, agency action taken in response to the FOIA request that USCIS received from Heritage Foundation and Mike Howell ("Plaintiffs") that is at issue in this case.

## USCIS'S STANDARD FOIA OPERATING PROCEDURES

5.      USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and DHS Management Directive No. 262.111, Freedom of Information Act Compliance.   DHS requirements for submitting a FOIA request for an individual's records include the following:

> 1. If the requester seeks records about him/herself, the requester must verify identity by providing their full name, current address, date of birth and place of birth, and country of citizenship or  residency.  This statement must be signed, and the signature must either be notarized or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature).  This signature must be submitted along with the FOIA request.  6 C.F.R. §§ 5.3(a), 5.21 (e).
> 3. The FOIA request must describe the records that are being sought in sufficient detail to enable  DHS personnel to locate them with a reasonable amount of effort. 6 C.F.R. § 5.3(b).
> 4.  When a request for records pertains to a third party, the requester may receive greater access to records by submitting a notarized authorization or declaration by that individual

authorizing disclosure of the records to the requester, or by submitting proof that the individual is deceased.  6 C.F.R. § 5.3(a)(4).

6.    When USCIS receives a FOIA request for USCIS information or documents, the

agency's standard procedure includes the following:

    a. after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

    b. because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

    c. an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by the requester;

    d. if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) for that office or agency;

    e.  during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

    f.  the NRC sends its response to the requester, granting or denying, in whole or in part, access to the requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

## USCIS'S BACKLOG OF FOIA REQUESTS

7.    USCIS has received and processed an ever-increasing amount of FOIA requests from

year-to-year.  USCIS, a component of DHS, receives almost 30% of the total requests received

across the federal government.  *See* http://www.foia.gov.  Moreover, in recent years USCIS has

experienced a significant increase in FOIA requests.  For example, during fiscal year ("FY")

2020, USCIS received 195,930 FOIA requests.  *Id.*  That number increased by approximately

20% in FY 2021, to 235,210 FOIA requests.  During FY 2022, USCIS received 302,698 FOIA

requests in FY2022--an increase of nearly 29%--while DHS received 539,807 requests and the

entire government received 928,353 requests. *Id.*  Thus, USCIS represents over half of the total requests received by DHS and close to one-third of all requests to the entire federal government in FY 2022.  *Id.*

8.      Given the significant number of FOIA requests received by USCIS and in an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing such requests on a first-in/first-out basis.  This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits the USCIS to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records.  USCIS's first-in/first-out and multi-track processing is consistent with the requirements set forth in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) and the Electronic FOIA Amendments of 1996, Pub.L. No. 104-231, § 7(a), 110 Stat. 3048, and codified at 5 U.S.C. § 552(a)(6)(D)(i).

## PLAINTIFFS' FOIA REQUEST

### COW2023001566

9.      On March 8, 2023, USCIS received Plaintiffs' digital FOIA request via its on-line portal. The request specifically sought:

> 1-All records within the Alien File (A-file) of Prince Henry Charles Albert David (date of birth 9/15/1984) of the British Royal Family aka Prince Harry aka His Royal Highness Prince Henry of Wales aka Duke of Sussex in including but not limited to:
> Any and all applications for immigration benefits filed, whether or not adjudicated;
> - Any and all Forms 1-213;
> - Any and all Forms I-275; and
> - Any and all Forms I-877.
> 2-All records pertaining to the Duke of Sussex in the following system of records maintained by CBP.
>
> - Automated Targeting System (ATS, DHS/CBP-006);

- Advance Passenger Information System (APIS, DHS/CBP-005);
- Border Crossing Information System (BCIS, DHS/CBP-007);
- U.S. Customs and Border Protection TECS (DHS/CBP-011);
- Non-Federal Entity Data System (NEDS, DHS/CBP-008);
- DHS Use of the Terrorist Screening Database (TSDB) System of Records (DHS/ALL-030);
- CBP Intelligence Records System (CIRS, DHS/CBP-024);
- DHS Automated Biometric Identification System (IDENT, DHS/USVISIT-004);
- Electronic System for Travel Authorization (ESTA, DHS/CBP-009);
- Nonimmigrant Information System (NIIS, DHS/CBP-021); and
- Arrival and Departure Information System (ADIS, DHS/CBP-021); and
- Electric Visa Update System (EVUS, DHS/CBP-022).

3-All records relating to any requests for waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act including, but not limited to, email communications within the DHS Office of the Secretary, the USCIS Office of the Director, the CBP Office of the Commissioner, or any subordinate office within those named departments or agency or a record of any communication between any of those named entities and the U.S. Department of State, the U.S. Embassy in London, the Federal Bureau of Investigation, or U.S. Immigration and Customs Enforcement.

*See* Plaintiffs' complaint, ECF Document 7-2.  Plaintiffs' request also included a fee waiver request and a request for expedited processing.  *See* Id.

10.     On March 13, 2023, USCIS's Public Liaison contacted Plaintiff Howell seeking additional information in order to determine if USCIS had responsive records.  Plaintiff Howell provided additional information to assist in USCIS's search for records.

11.     By letter dated March 15, 2023, USCIS acknowledged receipt of Plaintiffs' request, assigning the request control number COW2020001566.  *See* Plaintiffs' complaint, ECF Document 7-13.  The letter advised Plaintiff Howell that USCIS responds to requests on a first-in, first-out basis and a multi-track basis.  The letter also explained that based on the information Plaintiff Howell provided, USCIS determined that expedited processing of the request was not warranted.    Further, the letter explained that, "Although USCIS's goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances.  Due to the increasing number of FOIA requests received by this

office, we may encounter some delay in processing your request."  The letter stated that USCIS

was invoking a 10-day extension.  The letter provided instructions as to how Plaintiff Howell

may check the status of his request on-line or may contact the National Customer Service Center

by telephone.

12.     Plaintiffs filed the instant complaint on May 1, 2023.  An amended complaint was filed

on May 5, 2023.

13.     Defendant USCIS issued a response to Plaintiffs' request on May 30, 2023.  *See* Exhibit

A.  USCIS explained in its letter that it had completed a review of records responsive to the

request and determined that all pages were exempt from disclosure pursuant to Exemptions

(b)(6), (b)(7)(C), and (b)(7)(E).  5 U.S.C. §552(b)(6), (b)(7)(C) and (b)(7)(E).  USCIS is

clarifying that the responsive records are with regard to item 1 of Plaintiffs' request.  With regard

to item 3 of the request, USCIS is neither confirming nor denying the existence of records.[1]

## USCIS'S SEARCH FOR RECORDS

14.     In response to Plaintiffs' requests, USCIS's NRC personnel conducted a search of Person

Centric Identity Services ("PCIS") and the Person Centric Query System ("PCQS") based on the

information provided by Plaintiffs.  PCIS is an application that allows a search through a

repository of identity information that includes biographical and biometric information on

immigration history and status.  PCQS is a USCIS system which allows a single query for all

transactions across a number of systems maintained by Department of Homeland Security,

Department of Justice and Department of State.  This system includes biographic and biometric

information.  Using these systems, NRC personnel located records responsive to Plaintiffs'

request.

---

[1] Part 2 of the request was directed to the U.S. Customs and Border Protection Agency.

15.    NRC personnel scanned the records into the NRC's FOIA Immigration Records System (FIRST).  FIRST is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically.  Based on a review of the located records, USCIS through NRC determined that the search was reasonably calculated to locate responsive documents subject to the FOIA that are in USCIS's control.

## DESCRIPTION OF FREEDOM OF INFORMATION ACT EXEMPTIONS

16.    USCIS acknowledges that it does maintain documents related to Prince Harry, but has determined that all of the responsive records are categorically exempt from disclosure pursuant to FOIA Exemption 6 and in part based on Exemptions (b)(7)(C) and (b)(7)(E).  As a result, all documents are being withheld in full because to publicly reveal these documents or any portion of these documents would violate the privacy rights of Prince Harry.  USCIS has determined that beyond the general description below as to the types of information that USCIS maintains, no additional information can be provided because to provide specific details regarding each record would provide or would allow someone to determine the type of status for Prince Harry in the United Status, which is the very information that is protected pursuant to Exemption 6.  USCIS has determined that it also cannot provide a page count as that would potentially reveal Prince Harry's status given that certain immigration/non-immigration benefits require a certain volume of records.

## Exemption 6

17.    Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6).

18.      USCIS is categorically invoking Exemption (6) to withhold the records in full.  As

USCIS cannot provide an exact description of the records withheld as to do so would undermine

the application of Exemption 6, USCIS is providing a general description of the types and

categories of records that USCIS routinely maintains.  USCIS maintains records with regard to

lawful immigration to the United States, including certain records regarding employment

verification and records regarding certain visa applications.  The records relate to case processing

and assist the USCIS in the processing of immigrant and nonimmigrant benefit requests pursuant

to U.S. immigration laws, policies, guidelines and case precedents.  In accordance with these

laws and regulations, USCIS collects applicable information and such information is recorded in

its files and electronic data systems.  Information about benefit requesters, beneficiaries and

family members may include name, alias(es), physical and mailing addresses, unique identifying

numbers, personally identifying information, responses to questions on immigration benefit

forms (if applicable) and copies of government issued identification, receipt notices, request for

evidence, proofs of benefit extended, benefit specific eligibility information about the benefit

requester.  Further, the records may include unique identifying numbers issued by Department of

State or other federal agencies, arrival and departure information, immigration history, family

relationships, personal background information, records regarding organization memberships or

affiliation, health information, travel history, education and employment history, professional

accreditation information, and financial information if required.  The records may also include

information about benefit sponsors such as name, citizenship, employment information, and

financial information.  Thus, the records contain a significant amount of private and personal

information.

19.     With a third party FOIA request, after identifying the substantial privacy interests involved, USCIS balances those interests against the public interest in disclosure and evaluates -- on a case-by-case basis - whether there is a significant public interest which would result from the disclosure of the requested records.  In most cases, there is no discernable public interest in disclosure of such information because disclosure of private information in USCIS files regarding specific third-parties does not shed light on the activities of USCIS, and as a result disclosure would constitute a clearly unwarranted and unwarranted invasion of their personal privacy.  In order to justify disclosure a requester must make a clear demonstration that the public interest in disclosure outweighs the third party's personal privacy interest and that a significant public benefit would result from the disclosure of the requested third-party records.  Moreover, a requester who asserts a government misconduct public interest must produce evidence that would be deemed believable by a "reasonable person" for there to exist a counterweight on the FOIA scale to allow USCIS to balance against the cognizable privacy interests in the requested records.  When government misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary to confirm or refute that evidence.

20.     In this case, there is no privacy waiver as Prince Harry has not consented to the release of records related to or reflecting information about him.  Despite the public role that Prince Harry has played in the UK and despite information that he has disclosed regarding his personal life, he still maintains a strong privacy interest in his immigration status and information about him reflected in USCIS records.  Prince Harry has not publicly or officially disclosed his status in the United States and has not surrendered all rights to personal privacy.  USCIS has conducted

internet searches and has not located any official acknowledgment by Prince Harry disclosing his status and there is no official acknowledgment sanctioned by and released by DHS.  Newspaper articles and other media accounts which speculate to Prince Harry's status are not sufficient to overcome the privacy interests in the responsive records.

21.     Plaintiffs, in their FOIA request of March 8, 2023, did not articulate public interest, as defined by the FOIA, in the release of the information.  Public interest as defined by the FOIA is information that sheds light on an agency's performance of its statutory duties.  In its complaint, Plaintiffs asserts a claim that the records should be disclosed because "…public confidence in the government would undoubtedly suffer if the DHS, CBP and USCIS failed to properly vet a high profile case.  Moreover, if Prince Harry was granted preferential treatment that would undermine public confidence in DHS, CBP, and USCIS's application of equal justice under the law."  *See* Plaintiffs' complaint, ECF 7-1, page 43.  Beyond this speculative statement, Plaintiffs do not point to any evidence of government misconduct.

22.     Plaintiffs point to newspaper articles that speculate about Prince Harry's status in the US and speculate about why he should not be admitted into the US based on statements of drug use in his published book.  While some of the media articles speculate on his inadmissibility, they also speculate on why he would *not* be inadmissible based on the statements in the book. [2] Nonetheless, none of this points to any wrongdoing by the USCIS that would overcome the premise that the agency performed its duties in good faith and in accordance with applicable rules and procedures.

---

[2] For example, Plaintiffs include an article in which a Professor at George Washington University speculates that if Prince Harry was truthful in his answers, he would have been denied.  But in the same article, an immigration attorney speculates that without any kind of drug conviction, Prince Harry's past drug use is unlikely to cause a problem with his visa.  *See* Plaintiffs' ECF Document 7-7.

23.     Plaintiffs also reference other cases in an attempt to make a direct comparison to Prince

Harry's case.  These examples of other cases, presumably under different policies and

procedures, and where the full facts are not known, have no relevancy to this case and do not

establish a basis for public interest as defined by the FOIA.

24.     Plaintiffs also reference the Department of State form DS-160 which contain a question

regarding whether an individual is a "drug abuser or addict."  Plaintiffs' ECF Document 7-3,

page 35.  This is a form that if completed would be within the records of the State Department.

State Department records regarding visas are confidential per Section 222(f) of the Immigration

and Nationality Act ("INA"), 8 U.S.C. § 1202(f), which states in pertinent part:

> The records of the Department of State and of diplomatic and consular offices of the
> United States pertaining to the issuance or refusal of visas or permits to enter the United
> States shall be considered confidential and shall be used only for the formulation,
> amendment, administration, or enforcement of the immigration, nationality, and other
> laws of the United States, except that - (1) in the discretion of the Secretary of State
> certified copies of such records may be made available to a court which certifies that the
> information contained in such records is needed by the court in the interest of the ends of
> justice in a case pending before the court.

25.     In sum, Plaintiffs fail to provide any evidence to demonstrate how the records it seeks

would inform the public about the operations of the USCIS; how public interest is significant; or

how the information is likely to advance the public interest.  USCIS took into account that a

third-party's privacy interest is not extinguished merely because there has been public and media

speculation.

### Additional Exemptions Asserted

### Exemption 7

26.     Exemption 7 establishes a threshold requirement, which must be met in order for certain

information in the records subject to this litigation to be withheld on the basis of subparts

(b)(7)(C) and (b)(7)(E).  Specifically, the redactions at issue must be contained within a record compiled for a law enforcement purpose.

27.     The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement.  Pursuant to the Immigration and Nationality Act (INA), codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions.  *See* 8 U.S.C. § 1103.  USCIS has responsibility to enforce federal immigration law pursuant to the INA through its adjudications of applications and petitions submitted to USCIS by individuals seeking immigration benefits from the United States government.  Thus, these records were compiled for law enforcement purposes.

### Exemption 7(C)

28.     Exemption 7(C) of the FOIA protects personal information in law enforcement records the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(7)(C).

29.     USCIS invoked Exemption 7(C) to protect personal information pertaining to USCIS and DHS employees in the documents responsive to the Plaintiffs' FOIA request.  The release of these individuals' personal identifying information could reasonably be expected to constitute an unwarranted invasion of these employees' personal privacy.  The names, contact information and other personal information about these employees does not shed light on how the government is performing its mission as to the immigration laws.  Additionally, disclosure of this information could unnecessarily subject the employees to harassment or harm by individuals who disagree with DHS's mission or activities.  Thus, there is no public interest in this information that outweighs the privacy interests of these individuals.

**Exemption 7(E)**

30.     Exemption 7(E) protects law enforcement information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. *See* 5 U.S.C. § 552(b)(7)(E).

31.     USCIS withheld portions of information on documents pursuant to Exemption 7(E) that contain law enforcement information which would disclose techniques and procedures where such disclosure could reasonably be expected to risk circumvention of the law.  The types of documents and/or information withheld includes law enforcement systems checks and law enforcement database codes.  Even if the law enforcement procedure or technique was generally known, its specific use was withheld as disclosure of its specific use may reduce or nullify its existence.  Moreover, this information, which points to or contains information about systems that law enforcement use to store, index, and communicate information, could be used by persons seeking improper access to law enforcement sensitive data to navigate these databases and compromise the integrity of the data either by deleting or altering information.  The release of this information could also reasonably be expected to allow a person to breach sensitive legal/ law enforcement sensitive systems and potentially circumvent detection or manipulate law enforcement sensitive information, in an attempt to sabotage DHS operational activities.  The disclosure of this information, which is not readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities.

**GLOMAR**

32.     USCIS is asserting a Glomar response pursuant to Exemption 6 regarding item 3 of Plaintiffs' request seeking any information related to a waiver under Section 212(d)(3) of the INA.  Specifically, USCIS is neither confirming nor denying the existence of records responsive to item 3 of Plaintiffs' request.

33.  As pointed out, Plaintiffs have not provided a consent form signed by Prince Harry authorizing release of records related to or reflecting information about him and have not established significant public interest, as defined by the FOIA, which outweighs the privacy interests in the records.  Without receipt of a consent form, proof of death, or a showing of significant public interest in the disclosure of the materials sought, USCIS can neither confirm nor deny the existence of records responsive to item 3 pursuant to 5 U.S.C. Sections 552(b)(6). Such a response is necessary because to reveal whether such a waiver has been sought would reveal privacy protected information.  It is necessary to take a consistent position whenever a request for specific records such as these are sought in order to protect the privacy in the information in instances where such records actually exist.

## FORESEEABLE HARM AND SEGREGABILITY

34.     When reviewing the redactions applied, USCIS conducted a foreseeable harm analysis on the withheld information. USCIS considered whether any information could be segregated and released without causing a foreseeable harm.  Based on this review of the processed records, the agency determined that no segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law.

        I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Lees Summit, Missouri, on this _____ day of August 2023.


_____
Jarrod Panter
Acting Associate Center Director
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center