**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL,  )<br><br>Plaintiffs  )<br><br>v.  )<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY  )<br><br>Defendant.  ) | Case No. 23-cv-1198 (CJN) |

## DECLARATION OF SHARI SUZUKI

I, Shari Suzuki, declare as follows:

1. I am the Freedom of Information Act (FOIA) Appeals Officer, and Chief of the FOIA Appeals and Policy Branch (FAP), Regulations and Rulings, Office of Trade (OT), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). Since April 2, 2006, I have been the official charged with the following responsibilities: (1) giving guidance and instruction to CBP personnel regarding processing FOIA requests; (2) adjudicating administrative appeals that concern FOIA requests; and (3) overseeing all CBP activities related to information disclosure under FOIA.

2. I am familiar with the request dated March 8, 2023, submitted by Heritage Foundation and Mike Howell (hereinafter Plaintiffs) for information from DHS, CBP, and U.S. Citizenship and Immigration Services.

3. In furtherance of my responsibilities, I have access to records maintained in the ordinary course of business by CBP.  All information contained herein is based upon information furnished to me in my official capacity, and the statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, and agency files reviewed in, the course of my official duties.

4. This declaration is filed in support of Defendant's Motion for Summary Judgment, and provides background on CBP's processing of Plaintiffs' March 8, 2023, request.

5. Plaintiffs submitted a FOIA request to CBP dated March 8, 2023, seeking several categories of information regarding "Prince Henry Charles Albert David (Date of Birth 09/15/1984) of the British Royal Family *aka* Prince Harry *aka* His Royal Highness Prince Henry of Wales *aka* the Duke of Sussex" (hereinafter the Duke of Sussex).  Plaintiffs requested expedited processing for the request.  *See* Exhibit 1 to the Complaint.

6. There was no indication in the March 8, 2023, request that the Duke of Sussex had authorized the release of his information to Plaintiffs.

7. On March 9, 2023, CBP's FOIA Division informed Plaintiffs by email that Plaintiffs' request had been closed as insufficient as Plaintiffs did not provide written authorization from the Duke of Sussex indicating that the Duke of

Sussex consented to his information being released to Plaintiffs. CBP also stated that "[d]ue to privacy concerns, CBP cannot confirm nor deny the existence of records on this individual or business." *See* Exhibit 10 to the Complaint. This closure ended the processing of Plaintiffs' request by CBP's FOIA Division.

8. A search for responsive records was not performed by CBP in response to Plaintiffs' request, as the request itself was insufficient given the failure to provide written authorization from the Duke of Sussex for his information to be released to Plaintiffs. According to DHS regulations, when records pertaining to a third party are requested pursuant to FOIA, CBP is permitted to "require a requester to supply additional information if necessary in order to verify that a particular individual has consented to disclosure." *See* 6 CFR 5.3(a)(4).

9. On March 15, 2023, Plaintiffs submitted an appeal letter to CBP in response to the March 9 letter from CBP's FOIA Division closing the Plaintiffs' request. Plaintiffs' March 15 letter did not address expedited processing and did not include an authorization from the Duke of Sussex consenting to the release of his information to Plaintiffs. *See* Exhibit 11 to the Complaint.

10. On April 5, 2023, Plaintiffs submitted an additional letter to CBP to "supplement the record in support of my request for expedited processing for my FOIA Request/Appeal CBP-FO-2023-053731." *See* Exhibit 14 to the Complaint.

11. On April 13, 2023, CBP contacted Plaintiffs to ask Plaintiffs to re-provide two appendices of information that were included with Plaintiffs' April 5, 2023

letter because the appeals team was unable to open the attachments in the electronic FOIA system. Plaintiffs responded on April 20, 2023. *See* Exhibit 16 to the Complaint.

12. CBP had not issued a determination responding to Plaintiffs' March 15, 2023 appeal, supplemented by the April 5, 2023 letter, prior to the date upon which Plaintiffs' filed their Complaint. On May 23, 2023, CBP issued a determination responding to Plaintiffs' appeal, affirming that CBP's FOIA Division appropriately closed Plaintiffs' request as insufficient and that CBP can neither confirm nor deny the existence of records related to the Duke of Sussex as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C). *See* Exhibit A hereto.

13. On July 5, 2023, CBP issued an amendment to the May 23, 2023, determination. In that amendment, CBP acknowledged that certain entry and exit records exist for the Duke of Sussex and continued to neither confirm nor deny the existence of any other requested records regarding the Duke of Sussex, consistent with its explanation in the May 23, 2023 decision. The entry and exit records acknowledged by CBP were withheld in full pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). *See* Exhibit B.

## SEARCH FOR RESPONSIVE RECORDS

14. On or about June 12, 2023, CBP conducted a search of CBP's TECS system for entry and exit records regarding the Duke of Sussex by using the names and date of birth submitted by the requester as well as passport numbers found during the search.

15. TECS is an overarching law enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database. This environment is comprised of several modules designed to collect, maintain, and screen data as well as conduct analysis, screening, and information sharing. Additional information regarding what the TECS system of records contains is available in the TECS system of records notice (SORN) at 73 Fed. Reg. 77778 (December 19, 2008). TECS includes border crossing information on travelers entering and departing the United States. Additional information regarding border crossing information is available at 81 Fed. Reg. 89957 (December 13, 2016).

16. CBP located two types of entry and exit records by searching TECS: Person Encounter Lists and Person Encounter Detail records. A Person Encounter List is a list that indicates when a person has entered or exited the United States through U.S. federal air, land, and sea inspection sites and may include information regarding multiple encounters. A Person Encounter Detail record includes additional travel, manifest and carrier information for an individual encounter with a person.

17. In the July 5, 2023 amendment to the May 23, 2023 decision, CBP withheld the located entry and exist records in full pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

18. CBP has not conducted a search for any other requested records, including for any other CBP records addressed in Section 2 and Section 3 of Plaintiffs'

request not addressed above, regarding the Duke of Sussex, as CBP neither confirms nor denies the existence of any other records.

**JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA**

19. The justifications described in this declaration support CBP's withholdings of the records requested by Plaintiffs.

### Exemption (b)(6)

20. Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure certain records and information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." This exemption requires balancing the public's right to disclosure against an individual's right to privacy, with the public's interest in the disclosure of the information being limited to information which would shed light on CBP's performance of its mission to secure the border of the United States. In this case, the information CBP withheld pursuant to Exemption (b)(6) is exempted from disclosure because the privacy interests in that information outweigh the public interest in its disclosure.

21. Exemption (b)(6) was applied to the entry and exit records to protect personal information of the Duke of Sussex (the Duke). The Duke's personal information includes, but is not limited to, the type of document the Duke used to travel, that document's number, document country, the date and time the Duke arrived in or left the United States, the duration of his lawful admission, the port at which he arrived or from which he left, and his class of admission. Release of the Duke's personal information to a third party without the Duke's authorization would

constitute a clearly unwarranted invasion of privacy. In making this determination, CBP weighed the Duke's privacy interests against the public interest in disclosure. As stated in CBP's July 5, 2023 amendment to the May 23, 2023 decision, the general allegations made regarding the existence of public interest in the Duke's personal information do not outweigh the Duke's privacy interests, as "one person's CBP entry and exit records, even a famous person's, is insufficient evidence to undermine public confidence in CBP and its application of equal justice under the law." *See* Exhibit B.

22. Exemption (b)(6) was also applied to the names and identifying information of CBP employees. Government employees have a protectable privacy interest in their identities that would be threatened by disclosure. The release of this information could subject government employees to unwarranted harassment and publicity, which could limit their effectiveness in handling their respective functions and duties. Additionally, release of this information would not shed light on the actions of CBP and there is no public interest in the disclosure of this information. Accordingly, the government employees' right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

## **Exemption (b)(7)**

23. Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that are "compiled for law enforcement purposes." The records at issue in this case were compiled for law enforcement purposes in that

the information is created and used by CBP in its law enforcement mission to secure the border of the United States.

### Exemption (b)(7)(C)

24. Section 552(b)(7)(C) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This exemption extends to CBP as a law enforcement agency. Exemption (b)(7)(C) is designed to protect, among other things, law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identity. This exemption requires that the privacy interest in the information of an individual in the document be balanced against any public interest in disclosure of that information, with the public's interest in the disclosure of the information being limited to information which would shed light on CBP's performance of its mission to secure the border of the United States.

25. Exemption (b)(7)(C) has been applied to the same records and types of information to which Exemption (b)(6) was applied, when the information was compiled for law enforcement purposes and could reasonably be expected to constitute an unwarranted invasion of personal privacy.

26. Exemption (b)(7)(C) was applied to protect the personal information of the Duke of Sussex and the names and identifying information of CBP employees responsible for creating the records in question and conducting the law

enforcement activities for the same reasons noted for applying Exemption (b)(6) to the same information.

27. In addition, with respect to the withheld identifying information of CBP employees, Exemption (b)(7)(C) was applied to protect these individuals from unwanted contact, annoyance, or harassment in their personal and/or private lives, as well as to prevent the release of this information from prejudicing the effectiveness of personnel in executing their law enforcement functions.  The identification of an individual in association with the performance of their duties at a law enforcement agency creates a safety threat.  For this reason, the Office of Personnel Management (OPM) designated CBP a "Security Agency" exempting all CBP employees, not just front-line law enforcement, from OPM's salary information disclosure policy.  *See* https://www.opm.gov/policy-data-oversight/data-analysis-documentation/data-policy-guidance/data-standards/data-release-policy-august-2020.pdf.  As OPM recognized, disclosing a non-public facing CBP employee's name (and related information), absent a compelling public interest to do so, risks unnecessarily exposing that individual employee to potential safety threats.  Release of this specific information would not shed light on the actions of CBP, and the privacy interest in this information outweighs any conceivable public interest in the disclosure of the information.

**Exemption (b)(7)(E)**

28. Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

29. The effectiveness of CBP's mission is dependent, to a large extent, on the use of sensitive investigative techniques and methods that are not known to the general public. These law enforcement techniques and procedures are critical tools used by CBP officers to efficiently and effectively carry out CBP's mission to secure the border and to prevent threats, including terrorists, their weapons, and other dangerous items, from entering the United States, and to enforce customs, immigration, agriculture, and other federal laws at the border. The disclosure of these techniques and methods would seriously compromise CBP's ability to perform its law enforcement mission at the border.

30. The fields of data withheld pursuant to Exemption (b)(7)(E) in the Person Encounter Lists and Person Encounter Detail records, which uniformly appear in such records for all travelers, are routinely withheld by CBP, as they contain otherwise unknown, specific law enforcement techniques, procedures, and guidelines followed by CBP personnel when carrying out CBP's law enforcement mandate to secure the nation's borders. This information has been withheld because it indicates what circumstances might trigger additional CBP scrutiny while processing international travelers for entry into or departure from the country, and provides instructions to CBP personnel related to which law enforcement techniques ought to be practiced in those circumstances. Disclosure of this information would risk circumvention of the law, as disclosure of the law enforcement procedures and techniques would decrease

their effectiveness by enabling illicit actors to alter their patterns of conduct, adopt new methods of operation, or take other countermeasures, thereby undermining CBP's law enforcement efforts to secure the borders of the United States.

## "GLOMAR" RESPONSE:
## DISCLOSURE OF THE EXISTENCE OR NON-EXISTENCE
## OF RESPONSIVE RECORDS WOULD CAUSE HARM
## UNDER FOIA EXEMPTIONS 6 AND 7(C)

31. As noted above and as explained in CBP's May 23, 2023 decision and the July 5, 2023 amendment, with the exception of the withheld entry and exit records addressed above, CBP neither confirms nor denies the existence of any other requested records regarding the Duke of Sussex as the Duke has not consented to disclosure of his records to Plaintiffs and Plaintiffs have not provided sufficient public interest to outweigh the Duke's right to privacy concerning any other potential CBP records about him that may or may not exist.

32. CBP can neither confirm nor deny the existence of the remaining requested records as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C) and would itself cause harm.  Public figures do not forfeit all privacy rights by virtue of being public figures, and the general public interest claimed by Plaintiffs in their assertions regarding the Duke's admission to the United States are insufficient to outweigh the Duke's privacy interests in any additional CBP records about him that may or may not exist.

33. CBP is a law enforcement agency charged with the statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel. CBP

comprises over 60,000 employees charged with enforcing over 400 federal statutes on behalf of over 40 different federal agencies. CBP's mission is to protect the borders of the United States against terrorists and instruments of terror, enforce the customs and immigration laws of the United States, and foster our nation's economy by facilitating lawful international trade and travel. Plaintiff seeks records for the Duke of Sussex held in CBP systems of records. Therefore, CBP can state that the additional requested records, should any exist, would have, in part, been collected and maintained by the CBP as part of its law enforcement mission such that Exemption 7 may be applied to CBP's records.

34. As explained previously, FOIA Exemptions 6 and 7(C) exempt from disclosure records related to third parties if release of the information could be expected to constitute an unwarranted invasion of personal privacy.

35. A *Glomar* response is warranted pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C) when members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency such as CBP, as this may cast the individual in an unfavorable or negative light. Moreover, release of information about third parties could cause unsolicited and unnecessary attention or harassment to be focused on them. As the law enforcement agency charged with protecting the U.S. border, CBP maintains sensitive personal information regarding the individuals encountered by CBP, and even acknowledging the existence of records related to third parties, such as acknowledging the type or number of records that CBP maintains, could lead to adverse inferences and harassment. The individuals addressed in records

maintained by CBP as a law enforcement agency have strong privacy interests in not having their personal information disclosed.

36. When records of third parties are requested from CBP pursuant to FOIA, CBP balances the substantial privacy interests of third parties against the public interest in disclosure and evaluates on a case-by-case basis whether there is significant public interest in disclosure of the requested records sufficient to outweigh those substantial privacy interests. The relevant public interest under FOIA is whether the requested records, if they were to exist, shed light on the activities of CBP and would open agency action to the light of public scrutiny. If a significant public interest outweighs the substantial privacy interests of the subject(s) of the request, or if certain information about a third party has already been officially acknowledged, CBP would typically acknowledge the existence of responsive files.

37. CBP carefully evaluated Plaintiffs' FOIA request and determined that the existence of CBP entry and exit records could be acknowledged since it has been widely publicly acknowledged that the Duke of Sussex has traveled to and from the United States such that acknowledging the existence of the entry and exit records does not invade his privacy interests. There are also no adverse inferences to be drawn regarding the Duke of Sussex by merely acknowledging the existence of the entry and exit records given the broad public acknowledgment that the Duke of Sussex has traveled to and from the United States. However, the remainder of the FOIA request is so narrowly targeted that by its very terms it is limited to privacy-sensitive information pertaining to the

Duke of Sussex. Acknowledging and withholding or otherwise redacting any additional responsive CBP records, to the extent they exist, would not be adequate to protect the personal privacy interests at risk and, thus, CBP invoked the *Glomar* response. Any other response would acknowledge the existence of records and reveal, for example, whether the Duke of Sussex applied for particular immigration benefits, was the subject of any adverse actions, or requested a waiver under the Immigration and Nationality Act. Immigration status implicates significant privacy interests. Confirmation of any adverse action or immigration applications would necessarily reveal the precise information that Exemptions 6 and 7(C) shield. The minimal amount of information of interest to the public revealed by the treatment of one individual does not shed enough light on CBP's conduct to overcome the Duke of Sussex's privacy interest in his encounters with CBP or in any information in CBP's records related to his immigration status.

38. Given that Plaintiffs failed to provide a privacy waiver appropriately signed by the Duke of Sussex, CBP refused to acknowledge the existence of records responsive to Plaintiffs' request for records, beyond entry and exit records, concerning the Duke of Sussex. CBP determined that confirming or denying the existence or nonexistence of any other CBP law enforcement records concerning the Duke of Sussex, including those regarding his processing by CBP or immigration status, would constitute a clearly unwarranted invasion of his personal privacy pursuant to FOIA Exemption (b)(6) and could reasonably

be expected to constitute an unwarranted invasion of his personal privacy pursuant to FOIA Exemption (b)(7)(C).

## SEGREGABILITY

39. All responsive records that were identified in CBP's search for records that may be acknowledged in response to Plaintiffs' FOIA request have been appropriately withheld in full as the information contained therein is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material.  CBP personnel have reviewed the documents determined to be responsive, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and no reasonably segregable portions of the relevant records have been located.  In my determination, any further release of the exempted materials could reasonably lead to the identification of the individuals or other items that are properly protected by the exemptions asserted.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this __24th__ day of August, 2023.

_____
Shari Suzuki, Branch Chief
FOIA Appeals and Policy
Office of Trade, Regulations and Rulings

                        U.S. Customs and Border Protection
                        U.S. Department of Homeland Security