**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| HERITAGE FOUNDATION & ) | |
| MIKE HOWELL ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 23-cv-1198 (CJN) |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY ) | |
| *Defendant*. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE THE
DECLARATION OF SHARI SUZUKI OR, IN THE ALTERNATIVE, TO TAKE
LIMITED DISCOVERY
(ORAL ARGUMENT REQUESTED)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ................................................................................................................... 11

   I.   THE DECLARATION OF SHARI SUZUKI IS INFECTED BY CBP'S PRIOR BAD
       FAITH AND MERELY REGURGITATES STATUTORY AND REGULATORY
       LANGUAGE ......................................................................................................... 11

   II. IN THE ALTERNATIVE, DISCOVERY IS WARRANTED BY DEFENDANT'S BAD
       FAITH........................................................................................................................ 15

CONCLUSION................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Ascom Hasler Mailing Sys., Inc. v. USPS*, 815 F. Supp. 2d 148 (D.D.C. 2011) .......................... 11

*Cabezas v. Fed Bureau of Prisons*, No. 1:20-cv-02484 (CJN), 2023 WL 6312349, at *3 (D.D.C. Sept. 28, 2023) ...................................................................................... 12

*Carney v. DOJ*, 19 F.3d 807, 812 (2d Cr. 1994)......................................................... 15

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 05-cv-2078, 2006 WL 1518964 (D.D.C. June 1, 2006) ............................................................. 16

*Citizens for Responsibility & Ethics in Washington v. Dept't of Veterans Affs.*, 828 F. Supp. 2d 325, 334 (D.D.C. 2011) ............................................................................... 16

*Ecological Rights Found. v. EPA*, 541 F.Supp.3d 34 (D.D.C. 2021) ........................................... 11

*Gonzalez & Gonzales Bonds & Ins. Agency v. DHS*, 913 F.Supp.2d 865 (N.D. Cal. 2012).......... 6

*Judicial Watch Inc. v. Export-Import Bank*, 108 F,Supp.2d 19 (D.D.C. 2000)........................... 15

*Judicial Watch, Inc. v. U.S. Dep't of Comm.*, 224 F.R.D. 261 (D.D.C. 2004) ............................ 11

*Landmark Legal Found. v. E.P.A.*, 959 F.Supp.2d 175 (D.D.C. 2013)................................. 15, 16

*Milton v. DOJ*, 842 F. Supp. 2d 257 (D.D.C. 2012) .................................................................... 12

*Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872 (D.D.C. 1991)......................................................... 12

*Neese v. DOJ*, No. 19-cv-1098 (CJN), 2022 WL 898827 (D.D.C. Mar. 28, 2022)..................... 12
**Statutes**

5 U.S.C. § 552a(b)(2)....................................................................................................................... 5
**Other Authorities**

*Freedom of Information Act Regulations*, 80 FR 45,101 (July 29, 2015) ...................................... 6
**Rules**

Federal Rule of Civil Procedure 12(f) ...................................................................................... 3, 11
**Regulations**

6 C.F.R § 5.10(c)................................................................................................................ 5

6 C.F.R. § 5.3(a)(4)........................................................................................................... 5

Plaintiffs Mike Howell and The Heritage Foundation believe that Defendant's Motion for Summary Judgement (ECF No. 23) is capable of resolution entirely on the present record in this case and as is detailed in Plaintiffs' contemporaneously filed Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgement and in Opposition to Defendant's Motion for Summary Judgement.  For the purposes of that Cross-Motion, Plaintiffs submit they prevail even according to Defendant U.S. Department of Homeland Security ("DHS") component Customs and Border Protection ("CBP") the usual presumption of good faith.  This Motion is filed protectively in the event that the Court disagrees or has doubts that Plaintiffs prevail on the face of the cross-summary judgement motion record.[1]

CBP has acted in bad faith in this matter.  Why?  CBP *Glomar'ed* whether or not the Duke of Sussex has ever applied for entry to the United States.  Declaration of Shari Suzuki ¶ 12 (May 26, 2023) (ECF. 14-1); *id.* at Ex. at 4 (ECF No. 14-1) ("In this case, simply identifying whether records you seek exist confirms that the Duke of Sussex applied for entry into the United States and therefore was inspected by CBP.").[2]  Put differently, CBP took the position that revealing whether the Duke of Sussex had entered the United States would violate his privacy interests (presumably) in keeping the fact that he had at any time in his life sought entry into the United States.  That position is utterly indefensible.

Curious when Prince Harry took residence in the United States?  Watch the *Harry & Meghan* Netflix series, Episode 6 opening, and see a selfie-video of the Duke of Sussex, his family, and his dogs flying via private jet to take up residence in Los Angeles on March 14,

---

[1]  Plaintiffs wish to make clear that they do not ascribe bad faith to Counsel for Defendant.
[2]  There are two Suzuki Declarations.  The May 26, 2023 Declaration and the August 24, 2023 Declaration.  Only the August 24 Declaration is at issue here and is short cited as the "Suzuki Decl.".

2020, at around 6:00 a.m.  Or read *Spare*, pages 388–89.  Read any news surrounding HM the King's recent Coronation; you can't miss detailed coverage of the specifics of Duke of Sussex's travel arrangements.  Read publications such as the *NY Post* or the *Daily Mail*, and you will see pictures of the Duke of Sussex traveling.  That alone is extraordinary.  But there is more.

CBP took that absurd position on May 23, 2023.  On May 26, 2023 CBP used it for litigation advantage, arguing their *Glomar* mooted out Plaintiffs' Motion for a Preliminary Injunction (ECF No. 10).  On May 31, 2023 Plaintiffs put CBP on notice they considered the position frivolous.  Plaintiffs implored CBP to change course on June 1, 2023.  On June 2, Plaintiffs filed their Reply on the Preliminary Injunction (ECF No. 16) that minced no words in describing CBP's indefensible conduct.  On or about June 4, 2023 Plaintiffs again implored a change of course.  But CBP again did not change course and used its *Glomar* of facts blasted to every corner of the world *by the Duke of Sussex himself* to moot out Plaintiffs' Motion for a Preliminary Injunction.  Even *after* mooting out the Preliminary Injunction Motion, Defendant persisted in its position over Plaintiffs' stark objection.  Only when Plaintiffs made clear on three sperate occasions they would put CBP's frivolity before the Court in language acrid with the threat of Rule 11 did CBP change position.  And that is not all.  CBP took an absurd construction of its own regulations, used that construction for tactical advantage, rejected Plaintiffs pleads to change course on five different occasions, and only changed course when backed into the proverbial corner.

This is not a case of an agency doing the responsible thing and reconsidering a flawed position; this was the maintenance of a frivolous position for tactical gain until that position became untenable.  CBP's bad faith infects its Declaration here, and, more to the point, CBP's discretionary decision to withhold acknowledged responsive records categorically and to *Glomar*

other portions of the FOIA Request (ECF No. 7-2) ("Request").  CBP's action infects its

Declarant's Declaration.  *See* Declaration of Shari Suzuki (ECF No. 23-5) ("Suzuki Decl.").

There are two alternate remedies to CBP's egregious course of conduct.  First, pursuant

to Federal Rule of Civil Procedure 12(f), Plaintiffs move to strike the Declaration of Shari

Suzuki for the omission of critical facts and as infected by CBP's continuing bad faith.  In the

alternative, Plaintiffs move, pursuant to Federal Rule of Civil Procedure 56(d), to seek limited

discovery to resolve material questions of fact related to CBP's good faith in asserting the

*Glomar* doctrine to both moot Plaintiffs' Motion for Preliminary Injunction as it applied to CBP

and as it relates to CBP's current withholding of responsive records.  Pursuant to Local Rule

7(m), counsel for Plaintiffs have conferred with counsel for Defendant about this Motion.

Counsel for Defendant intends to oppose this Motion.

In the event that the Court rejects CBP's *Glomar* and categorical withholding on the cross

motions for summary judgement, this Motion is moot.  However, should the Court not be

persuaded, the relief sought in this Motion will aid in developing an appropriate factual basis on

which the Court can assess CBP's current categorical withholdings and *Glomar* position.

## BACKGROUND

Plaintiffs submitted their Request on March 9, 2023.  The Request sought three

categories of records: (1) all records within the Duke of Sussex's Alien Registration File; (2) all

records pertaining to the Duke of Sussex within twelve different databases; (3) "all records

relating to any requests for waiver by Prince Harry pursuant to Section 212(d)(3) of the

Immigration and Nationality Act." *Id* at 1–2*.* The Request also sought expedited processing.  *Id*

at 5–8*.*  CBP responded the same day with what appears to be a "form" response.  Amended

Complaint at ¶ 57 (ECF No. 7) ("Am. Compl.").  The response stated:

Your FOIA request was reviewed as a third-party request and did not include authorization that information on this individual, or business, can be released to you.  All third party FOIA requests must include a signed G-28 or G-639 form, or a signed statement from the individual verifying that his/her information may be released to you. Or, if requesting records pertaining to a business or company, a signed statement on company letterhead.  Due to privacy concerns, CBP cannot confirm nor deny the existence of records on this individual or business.  Your FOIA request has been closed as insufficient.  Please resubmit your FOIA request, along with the required Information, by logging into your existing SecureRelease account.

*Id.*

Plaintiffs appealed the denial on March 15, 2023. *Id.* at ¶ 58.  CBP had not issued a determination on the appeal prior to Plaintiffs filing this action.  Suzuki Decl. ¶ 12.  Plaintiffs filed a Motion for Preliminary Injunction on May 10, 2023, seeking, in part, to compel CBP to grant expedited processing.  *See* ECF No. 10.

On **May 23, 2023**, CBP issued an Appeal Determination that affirmed the prior denial on two separate grounds.  Plaintiffs' Status Report ¶ 4 (ECF No. 21).  The Appeal Determination held first that the "FOIA Division Used its Regulatory Discretion to Require the Requester Obtain Authorization from the Subject of the Request." *Id.*  Second, it "affirmed" a previously unstated denial rationale:  CBP could "neither confirm nor deny the existence of records related to the Duke of Sussex as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C)." *Id.*  CBP *did not* assert Exemption (b)(7)(E) at this time.

Counsel for Plaintiffs spoke with counsel for Defendant on that same day and expressed concern with CBP's position.  Counsel for Plaintiffs indicated that an Amended Complaint seeking structural relief would be considered if CPB maintained its atextual construction of the DHS FOIA regulations.  Counsel for Plaintiffs implored counsel for Defendant to determine if DOJ intended to defend CBP's position.  Second Declaration of Samuel Everett Dewey at ¶ 4 (ECF No. 16-1) ("2d Dewey Decl.").

On **May 26, 2023**, Defendant filed its Opposition to the Preliminary Injunction Motion.

(ECF No. 14) ("Opposition").  The Opposition not only reiterated the Appeal Denial's reasoning,

it affirmatively defended it.  *Id.* at 14–15.  As to the first "holding" of the Appeal Denial, the

Opposition wrote:

> When CBP receives a FOIA request for information regarding a third party "the
> information will not be disclosed without that person's prior written consent that provides
> the same verification information that the person would have been required to submit for
> information about him or herself[.]"  6 C.F.R. § 5.10(c).  Because Plaintiffs did not
> submit a privacy waiver, CBP denied their request.  Ex. 1, Suzuki Decl. ¶ 12.

*Id.* at 14.  But note the bracketed period (and the lack of ellipses)—6 C.F.R § 5.10(c) says

nothing of the sort.  It relates to the Privacy Act request, and says in complete relevant part:

> ***Conditions for release of Privacy Act information to third parties in response to a
> FOIA request***.  If a requester submits a FOIA request for Privacy Act information about
> another individual, the information will not be disclosed without that person's prior
> written consent that provides the same verification information that the person would
> have been required to submit for information about him or herself, unless—
> **(1)  The information is required to be released under the FOIA, as provided by 5 U.S.C.
> 552a (b)(2); . . .**

*Id.* (second emphasis added).[3]  The Opposition also defended the categorial *Glomar* as to *any*

CBP records concerning the Duke of Sussex.  *Id.* at 14.

---

[3] The omitted language makes clear that the cited provision supports *Plaintiffs*—not Defendant.
Defendant conflated the Privacy Act and FOIA despite the fact that the two statutes are designed
to work together and (on the record here) FOIA acts as an exception to the Privacy Act because
the Privacy Act does *not* bar the release of information "required" to be disclosed under FOIA.
5 U.S.C. § 552a(b)(2).

The Appeal Denial cited 6 C.F.R. § 5.3(a)(4)—not 6 C.F.R. § 5.10(c).  6 C.F.R. § 5.3(a)(4) is
inapplicable as *that* provision merely relates to agency discretion to obtain additional verification
of identity when verification of consent is at issue—it makes clear third-party verification is *not*
required.  *Compare* 6 C.F.R. § 5.3(a)(4) ("Where a request for records pertains to a third party, a
requester may receive *greater access* by submitting" forms of approved third-party verification
granting third party consent (emphasis added)), *with id.* ("As an exercise of its administrative
discretion, each component can require a requester to supply additional information if necessary
in order *to verify that a particular individual has consented to disclosure*." (emphasis added)).
Indeed, the current version of this regulation was promulgated to *remove* a prior requirement of
third-party consent (*Freedom of Information Act Regulations*, 80 FR 45,101, 45, 102 (July 29,

On **May 31, 2023**, counsel for Plaintiffs sought clarification on CBP's position, writing:

> Plaintiffs would like to discuss whether or not DOJ intends to maintain the CBP position in litigation re:  third party verification and *Glomar*.  That information may very well prove relevant to Plaintiffs' evaluation of your submission of mootness as to the PI as concerns CBP and FWIW we consider the CBP administrative position to be (at least in part) frivolous.  As you are aware, agencies often withdraw their *Glomars* in DDC once the issue is pressed.  In our view it is improper to make an initial determination, use that determination to attempt to moot out a valid expedition claim, and then turn around and come off that position in litigation.  I also would note on this issue that in our view the current submission of CBP as to mootness would estop CBP from opposing any sort of accelerated processing schedule on the grounds that this is not an expedited processing case.

2d. Dewey Decl. at ¶ 8.

Unambiguously, as of May 31, 2023, DHS and CPB were on notice that Plaintiffs

considered the third-party and *Glomar* positions to be frivolous. Plaintiffs did not mince words

and did not make that accusation lightly.

On **June 1, 2023**, Plaintiffs again implored CBP to reverse the *Glomar* or for the

Department of Justice ("DOJ") to overrule CBP.  Counsel for Defendant stated that neither CBP

nor DOJ intended to reverse the position at that time.  *Id*. at ¶ 9.

On **June 2, 2023**, Plaintiffs replied and summarized their extensive efforts to prevail

upon CBP to withdraw their frivolous *Glomar*:

>  Counsel for Plaintiffs have repeatedly urged DOJ to cause CBP to reverse this position as Plaintiffs believe it indefensible and it is in no one's interest for DOJ to maintain CBP's administrative position here only to reverse it in short order when Plaintiffs file subsequent motions.

Plaintiff's Reply Memorandum at 3 (ECF No. 16) ("Reply").

The Reply expanded on the argument counsel for Plaintiffs had repeatedly urged to

counsel for Defendant:

---

2015)) which had previously been enjoined as contrary to FOIA.  *See Gonzalez & Gonzales Bonds & Ins. Agency v. DHS*, 913 F.Supp.2d 865 (N.D. Cal. 2012).

CBP has taken a frivolous position possibly in an effort to moot out this Motion.  To take a regrettable example, CBP has *Glomar'd all* "records related to the Duke of Sussex as [not] doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C)."  *Id.* at 4. Specifically:

> [S]imply identifying whether records you seek exist confirms that the Duke of Sussex applied for entry into the United States and therefore was inspected by CBP. The records from the systems you request would provide any history of the Duke of Sussex's travel to and from the United States as well as any potential CBP violation he may have incurred.

*Id.*  It is frivolous to *Glomar* whether the Duke of Sussex has "applied for entry into the United States."  *Id.  Anyone* who is not living under a massive boulder knows that the Duke of Sussex has applied for entry to the United States.  His Netflix Series, *Harry & Meghan*, Episode 6, opens with a selfie video of HRH flying via private jet into the United States to take up extended residence in Los Angeles on March 14, 2020 at around 6:00 a.m.!  HRH's international travel is heavily reported by the press—witness his travel to and from HM The King's Coronation.  One cannot *possibly Glomar* such a fact.  Pointedly, United States Customs and Immigration Services did not *Glomar* the Request and conducted a search.  *See* 2d Dewey Decl. Ex. 3.  The only colorable justification for CBP's *Glomar* is if HRH is here illegally.  Is CBP really representing that the Duke of Sussex is or may be an illegal alien?

*Id*. at 21 (ECF No. 16).  Plaintiffs withdrew their Motion for Preliminary Injunction as it applied to CBP in their Reply. *Id.* at 21–22.

On or about **June 4, 2023**, counsel for Plaintiffs again spoke with counsel for Defendant and urged a reconsideration of the categorical *Glomar* position prior to the June 6, 2023 hearing on the Preliminary Injunction Motion.  Third Declaration of Samuel Everett Dewey at ¶ 3 (Oct. 9, 2023) ("3d Dewey Decl.").  At no time prior to or at the June 6, 2023 Preliminary Injunction Motion hearing did CBP alter its position.

Counsel for Plaintiffs continued to implore CBP to change course following the June 6, 2023 Preliminary Injunction Hearing.

On **June 7, 2023,** counsel for Plaintiffs conferred with counsel for Defendant regarding a potential separate briefing schedule for CBP's construction of its regulation and its *Glomar* position.  Plaintiffs wrote:

To our mind the issue of the lawfulness of CBP's construction of its regulation and their *Glomar* seems to be separate in terms of the narrow legal issues presented, from the merits of any Exemption 6 or 7(C) withholdings that involve a specific set of searched records. It also seems to us that these discrete legal issues could be briefed more quickly than issues that involve in some way a set of records and withholdings based on specific records. They are also in some way ancillary to the "merits" issues in that we fully expect Judge Nichols to rule against CBP and that ruling would then require a search by CBP prior to reaching the merits. That search would then take time.

In light of that it seems to us that we should proceed with expeditious briefing on those issues now rather than later.

3d Dewey Decl. at Ex. 6 at 3–4.

Counsel for Defendant responded:

Our office does not agree to piecemeal briefing schedules in FOIA matters. The Courts also frown upon them. Once all production is complete, the next step will be for my clients to share draft declarations and draft Vaughn Indices with your clients. After you have reviewed all of these items, then we will discuss a briefing schedule.

*Id.* at 2–3.

On **June 9, 2023**, counsel for Plaintiffs replied:

As I understand it, CBP did not conduct a search. (If we are mistaken please let us know as soon as possible). So as concerns CBP there is no *Vaughn* Index to be created. As to the CBP *Glomar* we do not need declarations to litigate it. The rationale for the *Glomar* is irrelevant; it plainly is overbroad and hence improper as we detailed in our Reply at 21–22. Those are the only issues we envision briefing and they are pure issues of law as framed. Two distinct questions of law seem to be the type of issues that could be briefed now while the other DHS components are working on *Vaughn* Indices and declarations so the case did not otherwise sit "idle." The legal issues are distinct so we wouldn't be briefing issues that would reoccur on the "merits." And to be clear, we are not suggesting we would want CBP to move; that is open to discussion. We are happy to move on the CBP's blatantly unlawful basis for refusing to conduct a search. Moreover, it seems to us more efficient to proceed this way in that if Judge Nichols rules in our favor as we fully expect, CBP will then be compelled to run a search which would further delay having a "completed" set of declarations and *Vaughan* Indices for "merits" resolution. It seems to us that this approach comports with that adopted in other matters where one component issues a *Glomar* ripe for immediate litigation and the other has on-going processing. *See, e.g.*, *Gov't Accountability Project v. CIA*, 548 F.Supp.3d 140, 147 (D.D.C. 2021) (deciding motion for partial summary judgement on CIA *Glomar* while other agencies were processing FOIA request). If we are missing something with the foregoing analysis, please tell us. As we have repeatedly said, Plaintiffs are amenable to any approach to move the matter along. That said, we do not find it helpful to invoke a

rote "policy" that everything always must wait as that seems to us to be both needlessly inflexible and correlate to taking the maximum time to litigate a FOIA case. It seemed fairly clear to us that Judge Nichols recognized the unusual nature of this case and the media and public interest in prompt resolution. Judge Nichols has ordered partial summary judgement briefing in a FOIA case where due to timing issues resolution of discrete questions in isolation was more efficient and allowed a measure of "parallel" tracking to expedite a matter. *See Inst. for Justice v. IRS*, 547 F.Supp.3d 1 (D.D.C. 2021).

*Id.* at 1–2.

For the sake of judicial economy, counsel for Plaintiffs continued their efforts to address CBP's *Glomar* position separately from the merits of the case as a decision adverse to CBP on *Glomar* would result in delays as CBP conducted a search and review of responsive records. *See* Plaintiffs' Status Report at ¶¶ 9–16.

On **June 14, 2023**, counsel for Plaintiffs again spoke with counsel for Defendant and reiterated their position that CBP's regulatory and *Glomar* positions were frivolous.

On **July 5, 2023**, CBP finally issued a revised determination. (ECF No. 21-1) ("Revised Determination"). In the Revised Determination, CBP withdrew its prior regulatory argument— that 6 C.F.R. § 5.10(c) categorically prevents the release of third-party records absent the written consent of the third party. CBP also withdrew its *Glomar* position as to certain entry and exit records, though it continued to withhold those records in full pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). As Plaintiffs noted in their Status Report, CBP reversed the position taken to moot the Motion for Preliminary Injunction (successfully), after months of delay and under threat of a filing, asking the Court to pass on the frivolity of CBP's position. Plaintiffs' Status Report at ¶ 18.

### THE SUZUKI DECLARATION'S OMISSIONS

The procedural history of CBP's bad faith is conveniently omitted from the Suzuki Declaration. In its telling, CBP closed the Request the day after receiving it for failure to

provide written authorization from the Duke of Sussex consenting to release and for "privacy concerns." Suzuki Decl. at ¶ 7.  CBP did not conduct a search.  *Id.* at ¶ 8.  Plaintiffs appealed this decision on March 15, 2023.  Am. Compl. at ¶ 58; Suzuki Decl. at ¶ 9.  CBP affirmed the administrative closure of the Request in its May 23, 2023 determination.  Suzuki Decl. at ¶ 12. This Appeal Determination was modified on July 5, 2023.  In it, CBP acknowledged entry and exit records exist for the Duke of Sussex and CBP maintained its *Glomar* position as to other records.  *Id.* at ¶ 13.  The entry and exit records were withheld in full pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  *Id.*

The Suzuki Declaration fails to include the back-and-forth between the parties regarding both the CBP's *Glomar* position and regulatory argument that a request for a third party's information be accompanied by a written authorization for release.  It does not acknowledge Plaintiffs' position that CBP's regulatory and *Glomar* responses were frivolous.  It does not address Plaintiffs' *repeated* entreaties that CBP withdraw its position to avoid mooting out the Preliminary Injunction Motion with an indefensible withholding justification or Plaintiffs' subsequent attempts to place those untenable *Glomar* and regulatory arguments before the Court. Instead, the Suzuki Declaration presents the narrative that CBP changed its position of its own accord months later.  As this Court often notes charging a jury, such a blatant and glaring omission is probative of intent CBP's.

10

## ARGUMENT

I.   **THE DECLARATION OF SHARI SUZUKI IS INFECTED BY CBP'S PRIOR BAD FAITH AND MERELY REGURGITATES STATUTORY AND REGULATORY LANGUAGE.**

Pursuant to Federal Rule of Civil Procedure 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[4]  It is in the court's discretion to grant or deny a motion to strike, with the moving party bearing a heavy burden given that motions to strike are generally disfavored.  *Ecological Rights Found. v. EPA*, 541 F.Supp.3d 34, 45 (D.D.C. 2021).  In the summary judgment context, a motion to strike is permissible when a declaration fails to comply with Federal Rule of Civil Procedure 56(c)(4), which states:  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  A court may strike all improper portions of an affidavit used to support or to oppose a motion for summary judgment, but in resolving a motion to strike a "court uses a scalpel, not a butcher knife."  *Ascom Hasler Mailing Sys., Inc. v. USPS*, 815 F. Supp. 2d 148, 162–63 (D.D.C. 2011) (quoting *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176 180 (D.D.C. 2005)).

Moreover, this Court has recognized that there is substantial discretion given to the District Court in balancing competing interests of personal privacy *vis-à-vis* the public's interest in an agency's performance of its duties under Exemption 7(C). The precision and thoroughness of agency Declarations on this point are critical to resolving this balancing; they reflect the agencies' judgment on that discretionary fact-bound question.  *See e.g.*, *Cabezas v. Fed Bureau*

---

[4]  "Pleading" for the purposes of Rule 12 includes affidavits and declarations.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Comm.*, 224 F.R.D. 261, n.1 (D.D.C. 2004).

*of Prisons*, No. 1:20-cv-02484 (CJN), 2023 WL 6312349, at *3 (D.D.C. Sept. 28, 2023); *Neese v. DOJ*, No. 19-cv-1098 (CJN), 2022 WL 898827, at *11 (D.D.C. Mar. 28, 2022).   In the FOIA context, agencies cannot rely on declarations executed in bad faith to meet their evidentiary burden. *See e.g.*, *Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 878 (D.D.C. 1991) ("[C]ourts must presume that a reasonably specific affidavit is accurate and truthful, unless the plaintiff presents evidence of inconsistences in the affidavits or other evidence that the agency has acted in bad faith."); *Milton v. DOJ*, 842 F. Supp. 2d 257, 260–61 (D.D.C. 2012) ("Where, as here, an agency declaration 'contain[s] reasonable specificity of detail rather than mere conclusory statements,' the plaintiff must point either to 'contradictory evidence in the record' or provide 'evidence of agency bad faith' in order to refute the agency's assertions." (citation omitted)).

With these guideposts front of mind, Plaintiffs seek to strike the following portions of the Suzuki Declaration, or, in the alternative, request that the Court disregard the following portions in assessing the Defendant's Motion for Summary Judgment.  The following paragraphs reflect the pervasive character of CBP's bad faith in asserting its regulatory and *Glomar* positions.

- ¶ 21:  "Exemption (b)(6) was applied to the entry and exit records to protect personal information of the Duke of Sussex (the Duke).  The Duke's personal information includes, but is not limited to, the type of document the Duke used to travel, that document's number, document country, the date and time the Duke arrived in or left the United states, the duration of his lawful admission, the port at which he arrived or from which he left, and his class of admission.  Release of the Duke's personal information to a third party without the Duke's authorization would constitute a clearly unwarranted invasion of privacy.  In making this determination, CBP weighed the Duke's privacy interests against the public interest in disclosure.  As stated in CBP's July 5, 2023

amendment to the May 23, 2023 decision, the general allegations made regarding the existence of public interest in the Duke's personal information do not outweigh the Duke's privacy interests, as 'one person's CBP entry and exit records, even a famous person's, is insufficient evidence to undermine public confidence in CBP and its application of equal justice under the law.'"

- ¶ 26: "Exemption (b)(7)(C) was applied to protect the personal information of the Duke of Sussex and the names and identifying information of CBP employees responsible for creating the records in question and conducting the law enforcement activities for the same reasons noted for applying Exemption (b)(6) to the same information."

- ¶ 30: "The fields of data withheld pursuant to Exemption (b)(7)(E) in the Person Encounter Lists and Person Encounter Detail records, which uniformly appear in such records for all travelers, are routinely withheld by CBP, as they contain otherwise unknown, specific law enforcement techniques, procedures, and guidelines followed by CBP personnel when carrying out CBP's law enforcement mandate to secure the nation's borders. This information has been withheld because it indicates what circumstances might trigger additional CBP scrutiny while processing international travelers for entry into or departure from the country, and provides instructions to CBP personnel related to which law enforcement techniques ought to be practiced in those circumstances. Disclosure of this information would risk circumvention of the law, as disclosure of the law enforcement procedures and techniques would decrease their effectiveness by enabling illicit actors to alter their patterns of conduct, adopt new methods of operation, or take other countermeasures, thereby undermining CBP's law enforcement efforts to secure the borders of the United States.

- ¶ 32:  "CBP can neither confirm nor deny the existence of the remaining requested records as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C) and would itself cause harm.   Public figures do not forfeit all privacy rights by virtue of being public figures, and the general public interest claim by Plaintiffs in their assertions regarding the Duke's admission to the United States are insufficient to outweigh the Duke's privacy interests in any additional CBP records about him that may or may not exist.

- ¶ 37:  "CBP carefully evaluated Plaintiffs' FOIA request and determined that the existence of CBP entry and exit records could be acknowledged since it has been widely publicly acknowledged that the Duke of Sussex has traveled to and from the United states such that acknowledging the existence of the entry and exit records does not invade his privacy interests.  There are also no adverse inferences to be drawn regarding the Duke of Sussex by merely acknowledging the existence of the entry and exit records given the broad public acknowledgement that the Duke of Sussex has travelled to and from the United states.  However, the remainder of the FOIA request is so narrowly tailored that by its very terms it is limited to privacy sensitive information pertaining to the Duke of Sussex. Acknowledging and withholding or otherwise redacting any additional responsive CBP records, to the extent they exist, would not be adequate to protect the personal privacy interest at risk and, thus, CBP invoked the *Glomar* response.  Any other response would acknowledge the existence of records and reveal, for example, whether the Duke of Sussex applied for particular immigration benefits, was the subject of any adverse actions, or requested a waiver under the Immigration and Nationality Act. Immigration status implicates significant privacy interests. Confirmation of any adverse

action or immigration applications would necessarily reveal the precise information that Exemptions 6 and  (7)(C) shield.  The minimal amount of information of interest to the public revealed by the treatment of one individual does not shed enough light on CBP's conduct to overcome the Duke of Sussex's privacy interest in his encounters with CBP or in any information in CBP's records related to this immigration status.

The above paragraphs should be stricken as they are conclusions on key points at issue in this case and are infected by CBP's prior bad faith.  In the event the Court chooses not to strike the enumerated paragraphs, Plaintiffs request that the Court disregard the paragraphs as it considers the Parties' cross motions for summary judgment in regards to CBP.

## II.   IN THE ALTERNATIVE, DISCOVERY IS WARRANTED BY DEFENDANT'S BAD FAITH.

To be sure, discovery is the exception, not the rule, in FOIA cases.  *See, e.g.*, *Landmark Legal Found. v. E.P.A.*, 959 F.Supp.2d 175, 183 (D.D.C. 2013).  But discovery *is* appropriate when a plaintiff has made a sufficient showing that an agency has acted in bad faith (*Carney v. DOJ*, 19 F.3d 807, 812 (2d Cr. 1994)) or raised a sufficient question as to the agency's good faith (*Judicial Watch Inc. v. Export-Import Bank*, 108 F,Supp.2d 19, 25 (D.D.C. 2000)).

That is the case here.  CBP has acted in bad faith or, at a minimum, acted in a manner that raises sufficient questions as to whether they acted in good faith.

Plaintiffs seek discovery here for the limited purpose of understanding how CBP reached its conclusion to reverse its total categorical *Glomar* position and seek a better understanding of the factual basis for the continued *Glomar* position and withholding given the reversal.  To reiterate, until July 5, 2023, CBP refused to confirm or deny whether the Duke of Sussex had *ever* legally entered the United States.  That the Duke has entered and exited the Country is common knowledge worldwide.  Plaintiffs repeatedly noted the frivolity of CBP's position and

implored CBP to change course.  Yet, CBP continued to assert that position for tactical advantage to moot out Plaintiff's Preliminary Injunction Motion and CBP reversed course only under threat of being forced to defend that position to this Court.

This extreme and (thankfully) unusual posture is of the kind that Courts have found to warrant discovery. *See e.g.*, *Landmark*, 959 F. Supp. 2d at 184 (failure of agency to search personal email accounts and exclusion of top EPA officials from search); *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 05-cv-2078, 2006 WL 1518964 (D.D.C. June 1, 2006) (finding discovery warranted in a FOIA action where the government has engaged in extreme delay); *Citizens for Responsibility & Ethics in Washington v. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 334 (D.D.C. 2011) (discovery for the purpose of determining whether the explanation for missing records was document destruction, incompetence, or something in between).  Discovery would help resolve why CBP reversed its prior bad faith invocation of *Glomar* as to records that were plainly not subject to *Glomar* as well as determine the factual basis for its continued *Glomar* position.

## CONCLUSION

CBP has not acted in good faith.  The Declaration of Shari Suzuki is infected by CBP's prior bad faith.  As such, the above identified paragraphs should be stricken.  In the event that the Court does not strike the Declaration or deems it appropriate, the Court should permit Plaintiffs to conduct limited discovery as to the reversal of CBP's prior *Glomar* position and the basis of its current *Glomar* position.

Dated:  October 9, 2023                         Respectfully submitted,

/s/ Samuel Everett Dewey

16

SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
 The Heritage Foundation
 Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*