UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, et. al,

    Plaintiffs,

    v.

DEPARTMENT OF HOMELAND SECURITY

    Defendant.

Civil Action No. 23-1198 (CJN)

**COMBINED REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO <u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

Table of Authorities …………………………………………………………………………….ii

Introduction ……………………………………..…………………………………….…………..1

Argument ……………………………………………………………………………………….…2

    I.   Prince Harry Maintains a Privacy Interest in His Immigration Status and Plaintiffs Have Not Articulated a Public Interest Overriding His Privacy Interests …………….………..2

        A.  Prince Harry's Disclosure of His Drug Use Does Not Undermine His Privacy Interests in the Records Sought ……………………………………………………………….2

        B.  Plaintiffs Presented No Evidence of Possible Government Impropriety That Would Overcome Prince Harry's Privacy Interest in his Immigration Status …………………5

        C.  Prince Harry's Privacy Interests Override any Public Interest in Insights Into How the Department Performs its Statutory Duties that Could be Gained from these Records ...8

    II.  The Categorical Withholdings and Partial Glomar Response was Appropriate ………….10

        A.  The Identified USCIS and CBP records contain no reasonably segregable portions ………………………………………………………………………………………11

        B.  Defendant adequately justified its partial Glomar response ………………...……11

    III. An In Camera Review is not Warranted ……………………………………………………13

Conclusion …………………………………………………………………………………….16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. Dep't of,*
  *Def.*, 628 F.3d 612 (D.C. Cir. 2011) .................................................................................. 14
*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*,
  830 F.3d 667 (D.C. Cir. 2016) ............................................................................................ 2
*Bartko v. Dep't of Just.*,
  898 F.3d 51 (D.C. Cir. 2018) ............................................................................................ 12
*Boyd v. Dep't of Just.*,
  475 F.3d 381 (D.C. Cir. 2007) ............................................................................................ 7
*Cabezas v. Fed. Bureau of Prisons*, Civ. A.,
  No. 20-2484 (CJN), 2023 U.S. Dist. LEXIS 174512 (D.D.C. Sept. 28, 2023) .................. 12
*Ctr. for Auto Safety v. EPA*,
  731 F.2d 16 (D.C. Cir. 1984) ............................................................................................ 13
*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ....................................................................................................... 2, 3
*Elec. Privacy Info. Ctr. v. NSA*,
  678 F.3d 926 (D.C. Cir. 2012) .......................................................................................... 11
*Frontier Found. v. Dep't of Just.*,
  826 F. Supp. 2d 157 (D.D.C. 2011) .................................................................................. 15
*Hayden v. Nat'l Sec. Agency*,
  608 F.2d 1381 (D.C. Cir. 1979) ........................................................................................ 14
*James Madison Project v. DOJ*,
  208 F. Supp. 3d 265 (D.D.C. 2016) .................................................................................... 2
*Jud. Watch, Inc. v. Dep't of Just.*,
  616 F. Supp. 3d 13 (D.D.C. 2022) .................................................................................... 15
*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) .......................................................................................... 14
*Medina-Hincapie v. Dep't of State*,
  700 F.2d 737 (D.C. Cir. 1983) ............................................................................................ 4
*Muchnick v. DHS*,
  225 F. Supp. 3d 1069 (N.D. Cal. 2016) .............................................................................. 7
*Nat'l Archives and Records Admin. v. Favish*,
  541 U.S. 157 (2003) .................................................................................................. 5, 6, 8
*People for the Ethical Treatment of Animals v. NIH, HHS*,
  745 F.3d 535 (D.C. Cir. 2014) ............................................................................................ 9
*Perlman v. Dep't of Just*,
  312 F.3d 100 (2d. Cir. 2002) .............................................................................................. 3
*Phillips v. Immigration & Customs Enforcement*,
  385 F. Supp. 2d 296 (S.D.N.Y. 2005) ............................................................................. 3, 4
*Prop of the People v. Dep't of Just*,
  310 F. Supp. 3d 57 (D.D.C. 2018) ................................................................................. 9, 10
*Ray v. Turner*,

    587 F.2d 1187 (D.C. Cir. 1978) ............................................................................................. 13

*Rojas v. Fed. Aviation Admin.*,
    941 F.3d 392 (9th Cir. 2019) ................................................................................................... 8

*Union Leader Corp. v. U.S. Dep't of Homeland Sec.*,
    749 F.3d 45 (1st Cir. 2014) ...................................................................................................... 6

*United States Dep't of Defense v. Federal Labor Relations Auth.*,
    510 U.S. 487 (1994) ................................................................................................................. 2

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ............................................................................................... 15

**Statutes**

8 U.S.C. § 1202(f) ........................................................................................................................... 4

Defendant the U.S. Department of Homeland Security respectfully submits this combined reply in further support of its motion for summary judgment and memorandum in opposition to Plaintiffs the Heritage Foundation and Mike Howell's cross-motion for summary judgment.

## INTRODUCTION

The arguments that Plaintiffs advance in their combined opposition to Defendant's motion for summary judgment and cross-motion for summary judgment (ECF No. 25-26) ("Cross-Mot.") are not persuasive. Plaintiffs' opposition and cross-motion challenge Defendant's categorical withholdings and partial *Glomar* response to their request for information regarding Prince Harry under Exemptions 6 and 7(C).[1] Cross-Mot. at 13-16.[2]

Plaintiffs have not demonstrated possible government misconduct or any other public interest that would overcome Prince Harry's privacy interest in these records. Moreover, Defendant has provided the maximum amount of information that it can provide regarding the records it possesses without revealing Prince Harry's immigration status, including any benefits that he sought or adverse actions he was subject to. Thus, a partial *Glomar* response was necessary to preserve this privacy interest. Finally, because Defendant's declarations adequately justified its response to Plaintiffs' request, an *in camera* review of the records is not necessary.

---

[1] Plaintiffs do not challenge Defendant's withholdings of names and personally identifiable information of Department employees or Defendant's withholdings of law enforcement techniques and procedures under Exemption 7(E). Cross-Mot at 13-15.

[2] When citing to court filings, Defendant references the page numbers generated through the Court's ECF headings.

**ARGUMENT**

I. **Prince Harry Maintains a Privacy Interest in His Immigration Status and Plaintiffs Have Not Articulated a Public Interest Overriding His Privacy Interests.**

The question of whether to apply Exemptions 6 and 7(C), the personal privacy exemptions, is determined through a balancing test. Once it is determined that disclosure would compromise more than a *di minimus* privacy interest, the court weighs the privacy interest at stake against the public interest in disclosure. *Am. Immigr. Lawyers Ass'n v. Exec. Office for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016). "It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest. To satisfy, the public interest must be significant." *James Madison Project v. Dep't of Just.*, 208 F. Supp. 3d 265, 283-84 (D.D.C. 2016); *see also Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 502 (1994) (finding federal employees' privacy interests in their home addresses outweighed the negligible public interest).

    A. **Prince Harry's Disclosure of His Drug Use Does Not Undermine His Privacy Interests in the Records Sought.**

Even though Prince Harry is a public figure who has disclosed many intimate details about his personal life—including his past drug use—Prince Harry has never publicly disclosed his status in the United States, including what, if any, immigration or non-immigration benefits he has received or adverse actions to which he was subject. Ex. 1, Panter Decl. ¶ 20; Ex. 3, Pavlik-Keenan Decl. ¶ 20. Much like health, financial, or employment information, a person's immigration information is private personal information and thus typically found to be exempt under the personal privacy exemptions. *See, e.g.*, *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). If the Court accepts Plaintiffs' arguments, the Government would need to reveal confidential immigration information about Prince Harry, a result the Court should not adopt.

2

Plaintiffs argue Prince Harry's status as a "public official" diminishes his privacy interests. Cross-Mot. 21-22. Although Price Harry may be a public official in the United Kingdom, unlike the public officials in the cases that Plaintiffs cite, *id.* (citing cases considering the privacy interests of Members of Congress and members of the President's Cabinet), Prince Harry is not a public official in the United States. A public official's diminished privacy interests stem from "the countervailing interest of the public 'to be informed about what their government is up to,'" but this rationale is "inapplicable to a foreign government official" like Prince Harry. *Phillips v. Immigr. & Customs Enf't*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) (quoting *Perlman v. Dep't of Just*, 312 F.3d 100, 107 (2d. Cir. 2002)).

Plaintiffs appear to argue that in admitting to drug use, Prince Harry forfeited his privacy interests in whether he received a waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act. Cross-Mot. At 20-21. Plaintiffs submit two declarations from immigration lawyers who opine that unless he lied about his drug use on his form DS-160,[3] Prince Harry would not be eligible for admission to the United States without such a waiver. Cross-Mot. At 20-21. But this is not accurate. Plaintiffs' assertion that Prince Harry used drugs is based on passages in Prince Harry's autobiography. *Id*. 20 (citing Prince Harry, *Spare* (2023)). Nothing in Plaintiffs' filings, or any publicly available information, shows that Prince Harry was ever convicted for a drug-related offense.

Section 212(a)(2)(A)(i)(II) of the Immigration Nationality Act also provides for an ineligibility finding, in the absence of a conviction, if the individual has made a legally valid admission to violating a law related to a controlled substance. That alternative is noted in the State Department Foreign Affairs Manual, which states that, "an applicant may be found ineligible if

---

[3] The State Department is the custodian of DS-160 forms. Ex. 1, Panter Decl. ¶ 24.

3

they admit to committing the essential elements of a drug violation in lieu of a conviction under INA 212(a)(2)(A)(i)(II)."  9 Foreign Aff. Manual 302.4-2(B)(4).  For that basis for ineligibility to apply, the consular officer must follow a series of steps to elicit a legally valid admission.  *Id.* 302.3-2(B)(4).  If the consular officer did not secure an admission, in accordance with the established procedures, then the statutory ineligibility standard would not have been met and Prince Harry would not need a waiver.

Even one of Plaintiffs' declarants, Andrew Arthur, admits that a foreign national who has admitted to drug use can be lawfully admitted into the United States without a Section 212(d)(3) waiver if he or she has a category A visa, or diplomatic visa. Arthur Decl. ¶ 14 n.1.  Arthur doubts that Prince Harry has a diplomatic visa, but his conclusion is based on publicly available information.  *Id*.  Neither the Department nor Prince Harry have disclosed whether Prince Harry has a diplomatic visa.  *See* Ex. 1, Panter Decl. ¶ 20.  Importantly, Plaintiffs submitted their Freedom of Information Act ("FOIA") request to the Department of Homeland Security, not the Department of State, and their request does not appear to seek any Visa information.  *See* Heritage Found. FOIA Request (ECF No. 7-2).  But even if Plaintiffs were to seek this information through a FOIA request, the information would be protected from disclosure pursuant to FOIA Exemption 3 and 8 U.S.C. § 1202(f), which provides that "[t]he records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential."  *See also, Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 739 (D.C. Cir. 1983) (applying FOIA Exemption 3 finding that 8 U.S.C. § 1202(f) prohibits disclosure of "information pertaining to the denial of [a] visa application," even to the applicant himself).  Newspaper articles and other media accounts which speculate as to Prince Harry's status do not overcome the statutory visa record confidentiality, nor

are they sufficient to overcome the privacy interests in the responsive records. Ex. 1, Panter Decl. ¶ 20.

### B. Plaintiffs Presented No Evidence of Possible Government Impropriety That Would Overcome Prince Harry's Privacy Interest in his Immigration Status.

Plaintiffs arguments for why they have established a public interest that would overcome Prince Harry's privacy interest can be distilled to a syllogism: (1) Prince Harry is a foreign national living in the United States who publicly admitted to using drugs; (2) foreign nationals who admit to using drugs face difficulty obtaining admission into the United States; thus, (3) Prince Harry's presence in the United States suggests that "government impropriety" is afoot. Cross-Mot at 25 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2003)). But this syllogism is flawed, especially considering that even Plaintiffs own declarants admit that Prince Harry's admitted drug use does not make him ineligible for admission. Arthur Decl. ¶ 14.

Plaintiffs recount publicly reported details about Prince Harry's life that they believe would make it difficult for him to gain admission into the United States, but they do not know all the facts and circumstances behind Prince Harry's application. Ex. 1, Panter Decl. ¶ 23 (noting that the examples of other high-profile individuals who had difficulty entering the United States were "presumably under different policies and procedures, and where the full facts are not known."). Indeed, the declarations and other materials that Plaintiffs submit reveal that there are ways in which Prince Harry could have gained admission, including with a diplomatic visa, or a Section 212(d)(3) waiver. Arthur Decl. ¶ 14 n.1. Additionally, even if Prince Harry did receive a Section 2(d)(3) waiver, the fact that he received a waiver could not establish government impropriety. "There are no set written standards governing waivers under section 212(d)(3)(A) of the INA." Arthur Decl. ¶ 21; Saunders Decl. ¶ 16. In near identical declarations, Arthur and Saunders opine that obtaining a waiver is an "extremely difficult and lengthy process," and "any

5

waiver would likely require a lengthy processing time and a number of affirmative steps to examine his drug use." Arthur Decl. ¶¶ 21-22; Saunders Decl. ¶¶ 16-17. Plaintiffs contend that Prince Harry entered the United States "with ease" but cite no facts to support this statement. Cross-Mot. at 27. The date in which Prince Harry first sought admission is not publicly known and thus Plaintiffs have no basis to contend that Prince Harry did not undergo the process that their declarants described or some other lawful process.

To support their arguments that they satisfied their burden under *Favish*, 541 U.S. at 174 to demonstrate possible government impropriety, Plaintiffs compare this case primarily to two cases from outside of this jurisdiction. Cross-Mot. at 25-27. But in both cases, the requester provided more than media speculation to show possible impropriety. For example, *Union Leader Corp. v. Department of Homeland Security*, 749 F.3d 45, 48 (1st Cir. 2014), determined that the requester articulated a public interest in the names of six undocumented immigrants who had been arrested by Immigration and Customs Enforcement ("ICE") as part of a nationwide enforcement operation, which ICE had touted in a press release, to apprehend undocumented individuals who had prior criminal convictions and arrests. These individuals had, "prior arrests and convictions dating as far back as 1993, including, . . . prior notice to appear arrests and prior convictions for entry without inspection." *Id*. at 49. The requester showed possible negligence, or impropriety, by citing "the redacted I-213 forms ICE has already produced, which document the apprehension of [noncitizens] who had been convicted of crimes and/or ordered removed from the United States as long as 23 years before their 2011 arrests," and the Court determined that releasing the names would enable the requester "to investigate public records pertaining to the arrestees' prior convictions and arrests, potentially bringing to light the reasons for ICE's apparent torpor in removing these [noncitizens]." *Id.* at 56.

In other words, the *Union Leader* requester had all relevant information regarding the apprehended individuals' prior criminal convictions and presented concrete evidence that ICE delayed performing a statutory duty by more than two decades.  In contrast, Plaintiffs in this case have statements in a book where Prince Harry admitted to drug use and from that, extrapolate that something untoward must have occurred in admitting him into the country.  *Cf. Boyd v. Dep't of Just.*, 475 F.3d 381, 388 (D.C. Cir. 2007) (finding that the existence of a federal agent's work file that was not turned over during criminal discovery does not suggest government wrongdoing sufficient to abrogate personal privacy because the requester presented no evidence that the file contained exculpatory material).

*Muchnick v. Department of Homeland Security*, 225 F. Supp. 3d 1069 (N.D. Cal. 2016), does not help Plaintiffs either.  The *Muchnick* requester sought immigration records for George Gibney, an Irish National living in the United States since the early 1990s who was previously criminally charged in Ireland with multiple counts of sexual assault for sexually abusing young women on multiple occasions over the previous thirty years.  *Id.* at 1073.  The allegations against Gibney were revealed no later than 1993, and Gibney only escaped accountability because in 1994 "the Irish Supreme Court ruled that the statute of limitations had run."  *Id*.  The *Muchnick* Court held that the requester had satisfied the *Favish* standard overcoming Gibney's privacy interest in his immigration records because "the public has a strong interest in understanding how and why their government allowed a man with a far-worse-than-checkered past (and perhaps present) to stay here for more than two decades."  *Id*. at 1077.  In contrast to Gibney, a credibly accused sexually violent predator, Prince Harry simply admitted to abusing illegal substances.  Additionally, Gibney faced criminal charges in his home country for his conduct, which Prince Harry did not.  *Id*.  Common sense dictates that the public's interest in knowing how a credibly

accused sexual predator, with allegations that spanned decades, came to be living in the United States for twenty-five years is at a significantly higher ebb than how someone who wrote a book admitting to using drugs came to be living in the United States.[4]

Importantly, Courts afford official Government conduct a "presumption of legitimacy," and "clear evidence is usually required to replace it." *Favish,* 541 U.S. at 174. Plaintiffs' own declarants admit that there are lawful ways in which Prince Harry could have gained admission despite the fact that he publicly admitted to using drugs. Arthur Decl. ¶ 14; Saunders Decl. ¶ 11. To preserve Prince Harry's privacy interest in his immigration status, Defendant cannot reveal which of these or other pathways Prince Harry used to obtain admission into the United States. Nonetheless, the existence of multiple pathways demonstrates that Plaintiffs' allegations of government impropriety are purely speculative.

### C. Prince Harry's Privacy Interests Override any Public Interest in Insights Into How the Department Performs its Statutory Duties that Could be Gained from these Records.

In the alternative, Plaintiffs argue that releasing this information would reveal how the Government exercises its discretion in a high-profile immigration matters. Cross-Mot at 31-32. But the fact Plaintiffs are seeking records regarding a high-profile individual is not sufficient to establish a public interest that outweighs Prince Harry's privacy interests. Ex. 2, Suzuki Decl. ¶ 21. Plaintiffs' request seeks more than a dozen categories of immigration records regarding

---

[4] *Rojas v. Fed. Aviation Admin.,* 941 F.3d 392, 406 (9th Cir. 2019) is inapposite because the requester sought email addresses for Federal Aviation Administration employees, not a private individual. Moreover, Plaintiffs selectively quote *Roth v. Dep't of Just.* 642 F.3d 1161 (D.C. Cir. 2011). Cross-Mot. at 27. *Roth* only found that "the fact that the FBI withheld . . . information [favorable to criminal defendant] until 2001, approximately seventeen years after Bower's trial," warranted abrogating a third party's privacy because "the public has an interest in knowing whether the FBI is withholding information that could corroborate a death-row inmate's claim of innocence." *Roth,* 642 F.3d at 1181. Prince Harry's presence in the United States is not a threat to a potentially innocent person's life.

Prince Harry, and their request is not entirely focused on a specific investigation, transaction, or matter. Pls' Request (ECF No. 7-2). Plaintiffs frame their argument similarly to the requester in *Property of the People v. Department of Just* 310 F. Supp. 3d 57, 69 (D.D.C. 2018). The requester in *Property of the People* sought to establish a public interest in records regarding Federal Bureau of Investigation interactions with President Donald Trump from his birth until 2015 arguing that the "FBI's past interactions with Trump will reveal how the FBI performed its substantive law enforcement obligations." *Id*. But the Court rejected this argument because the requester was seeking information about a particular individual, not an investigation, which the Court determined was the type of request where "the public interest in understanding the agency's investigatory processes" ordinarily "fails to outweigh the [subject's] substantial interest in nondisclosure." *Id.* (quoting *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 543 (D.C. Cir. 2014)).

Moreover, the fact that a single investigation or matter is high profile does not, itself abrogate the personal privacy exemption. *See Bast v. Dep't of Just.,* 665 F.2d 125l, 1255 D.C. Cir (1981) (withholding records regarding a high-profile investigation of a federal judge under Exemption 7(C)). Plaintiffs rely on *Citizens for Responsibility & Ethics in Washington ("CREW") v. Department of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("*CREW III*") to argue that there is a public interest in how the government conducts itself in high profile matters sufficient to override a privacy interest. Cross-Mot. at 31. The *CREW*, 746 F.3d at 1087, requester sought records regarding an FBI investigation into former House Majority Leader Tom DeLay, "a wide-ranging public corruption investigation as part of the FBI's ongoing efforts to root out systemic corruption within the highest levels of government." *CREW,* 746 F.3d at 1087 (quoting Decl. of David Hardy, the FBI *Glomar* declaration). To be sure, the Court noted that the requester did not

9

allege that the FBI engaged in any impropriety, and that its actions in the DeLay case may reflect only one data point regarding the performance of its statutory duties, *id.* at 1094, but the requester articulated a public interest in how "the FBI and Department of Justice handle the investigation and prosecution of crimes that undermine the very foundation of our government." *Id.* at 1093; *see also CREW v. Dep't of Just.*, 978 F. Supp. 2d 1, 13 (D.D.C. 2013) (finding a public interest in how the Justice Department exercised its discretion regarding a high ranking and high profile elected official who resigned following accusations of significant public corruption, against a backdrop of substantial credible evidence). Plaintiffs here seek information about how the Government handled a particular foreign national's admission into the United States, not an investigation into corruption by a high-ranking government official.

Further, to the extent that Plaintiffs are relying on an assertion that the government may have "pulled its punches" in taking any adverse action against Prince Harry, Cross-Mot at 31, that analysis is part of the *Favish* inquiry, *CREW v. Dep't of Just.*, 854 F.3d 675, 683 (D.C. Cir. 2017); *Prop. of the People*, 310 F. Supp. 3d at 70 (citing *CREW*, 746 F.3d at 1093), but as explained above, Plaintiffs failed to produce more than a bare suspicion of government impropriety to satisfy their burden under *Favish*. The records sought would not shed light on how the Department performs its statutory duties to a degree that would override Prince Harry's privacy interests.

**II.      The Categorical Withholdings and Partial *Glomar* Response was Appropriate.**

Any responsive records would be exempt, in full, from disclosure under Exemption 6 or Exemption 7(C) and thus Defendant lawfully declined to release any responsive records. As demonstrated below, each of the relevant Department components independently weighed Prince Harry's privacy interests against the public interest in disclosure and determined that they had provided the maximum amount of information about the records that they could provide without

undermining Prince Harry's privacy interest in his immigration status. *See generally*, Ex. 1 Panter Decl.; Ex. 2, Suzuki Decl.; Ex. 3, Pavlik-Keenan Decl.

### A. The Identified USCIS and CBP Records Contain no Reasonably Segregable Portions.

U.S. Citizenship and Immigration Services ("USCIS") located records regarding Prince Harry in Person Centric Identity Services system and Person Centric Query System, Ex. 1, Panter Decl. ¶ 14, and Customs and Border Protection ("CBP") located Prince Harry's entry and exit records, Ex. 2, Suzuki Decl. ¶ 17. Both USCIS and CBP conducted line by line reviews of the records in their respective custody and determined that the records contained no reasonably segregable portions. Ex. 1, Panter Decl. ¶ 34; Ex. 2, Suzuki Decl. ¶ 39. Moreover, neither agency could provide additional information about the records located, including a *Vaughn* index itemizing each record, because doing so would reveal Prince Harry's immigration status and any immigration benefits that he sought. Ex. 1, Panter Decl. ¶ 16; Ex. 2, Suzuki Decl. ¶ 39. Although Plaintiffs disagree that Prince Harry should be able to maintain his privacy interests in his immigration status, Plaintiffs provide no arguments for why any response other than a categorical withholding of these records could be made without revealing Prince Harry's immigration status. Cross-Mot at 32-33.

### B. Defendant Appropriately Justified its Partial *Glomar* Response.

Defendant adequately justified its *Glomar* response to Plaintiffs' request for records regarding any requests for a waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act. Prince Harry has a privacy interest in whether he sought a waiver, and Defendant asserted *Glomar* to protect that privacy interest. Ex. 1, Panter Decl. ¶ 33; Ex. 3, Pavlik-Keenan Decl. ¶ 25. Here, a Glomar response was warranted because "the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Elec. Privacy Info. Ctr. v.*

*Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012). Knowing whether Prince Harry sought or obtained a waiver would provide the public with another data point for what immigration benefits he sought, which is the type of information that Defendant seeks to keep confidential. Ex. 2, Suzuki Decl. ¶ 37. Further, Defendant's *Glomar* response is not protecting information that is publicly known because, as explained above, Prince Harry could be admitted to the United States lawfully without a Section 212(b)(3) waiver. The same logic applies to Plaintiffs' requests for records regarding Prince Harry in the CBP and Office of Biometric Identity Management databases that Plaintiffs listed in Section 2 of their request. Heritage Request at 3 (ECF No. 7-2). Acknowledging whether records related to Prince Harry could be located in any of those databases would reveal whether he applied for particular immigration benefits or was subject to any adverse actions. Ex. 2, Suzuki Decl. ¶ 37; Ex. 3, Pavlik-Keenan Decl. ¶ 24.

Plaintiffs claim Defendant's declarations contain the same deficiencies as the *Glomar* declaration that this Court identified in *Cabezas v. Federal Bureau of Prisons*, Civ. A. No. 20-2484 (CJN), 2023 U.S. Dist. LEXIS 174512 (D.D.C. Sept. 28, 2023). Cross-Mot. at 35. But in making this claim, Plaintiffs overlook the substance of Defendant's declarations. *Id.* The Court in *Cabezas* criticized the Government's declaration for failing to "'measure' the public interest in disclosure and 'weigh' it against the privacy interests at stake.'" *Cabezas*, 2023 U.S. Dist. LEXIS 174512, at *5 (citing *Bartko v. Dep't of Just.*, 898 F.3d 51, 66 (D.C. Cir. 2018)). The *Cabezas* agency simply asserted that "disclosure of the files would not significantly contribute to the public's understanding of the operations or activities of the government," and did not identify the privacy interests at stake with specificity. *Cabezas*, 2023 U.S. Dist. LEXIS 174512, at *5. Unlike in *Cabezas,* the declarations in this case identified the specific public interest and weighed it against a specific privacy interest. Each Department component considered that Prince Harry is a public

12

figure who has voluntarily disclosed information about his personal life including his drug use and his residence in the United States. Ex. 1, Panter Decl. ¶¶ 21-25;[5] Ex. 2, Suzuki Decl. ¶¶ 31-32, 37; Ex. 3, Pavlik-Keenan Decl. ¶ 26.  The components determined that Plaintiffs' assertions of possible government impropriety were speculative and the way the Department handled one particular matter would not shed light on the components' performance of their statutory duties. Ex. 1, Panter Decl. ¶¶ 21, 25; Ex. 2, Suzuki Decl. ¶¶ 21, 37; Ex. 3, Pavlik-Keenan Decl. ¶ 26.  The components then determined that the asserted public interest did not outweigh Prince Harry's privacy interests, specifically in his immigration status, and any immigration benefits he sought or was granted including a Section 212(d)(3) waiver.  Ex. 1, Panter Decl. ¶ 33; Ex. 2, Suzuki Decl. ¶¶ 35, 37; Ex. 3, Pavlik-Keenan Decl. ¶¶ 25-26.

### III.     An *In Camera* Review is not Warranted.

Plaintiffs seek an *in camera* review of Defendant's withholdings arguing it is needed "given the discretionary nature of the court's inquiry as well as the case specific nature of balancing." Cross-Mot. at 45.  The district court has discretion on whether to conduct an *in camera* review of material withheld in response to a FOIA request. *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984).  Courts, however, generally rule on FOIA actions based on agency declarations without *in camera* review of documents unless there is a showing of bad faith. *Id.* at 23 ("This Circuit has repeatedly held that when the agency meets its burden [under the FOIA] by means of affidavits, in camera review is neither necessary nor appropriate."); *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (noting that although in camera inspection "would likely be

---

[5]     USCIS even explained its reasoning for why the news articles speculating on how Prince Harry's admitted drug use could affect his status in the United States that Plaintiffs attached to their complaint did not create a public interest sufficient to outweigh Prince Harry's privacy interests in his immigration status.  Ex. 1, Panter Decl. ¶ 22.

appropriate" when there is a showing of bad faith, "the government's burden does not mean that all assertions in a government affidavit must routinely be verified by audit"). "If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

In this case, an *in camera* review is not necessary because, as explained above, Defendant's declarations adequately explain why the information responsive to Plaintiffs' request is being withheld under Exemptions 6 and 7(C), and in their cross-motion for summary judgment, Plaintiffs' have not alleged bad faith. Considered collectively, these supporting materials amply shed light on the grounds for the withholdings in this case. *See ACLU v. Dep't of Def.*, 628 F.3d 612, 627 (D.C. Cir. 2011) (finding in camera review was "not necessary" where the agency's affidavit was "sufficiently detailed" and there was "no evidence of bad faith"); *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) ("If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." (internal quotation marks omitted)).

Moreover, the records Plaintiffs seek contain highly sensitive, personal information. *See generally*, Ex. 1, Panter Decl.; Ex. 2, Suzuki Decl. As this Court has noted, an *in camera* review involves "a risk that information could be disclosed—intentionally or unintentionally—by someone or by some process involved[; thus] when dealing with matters the government contends are highly sensitive, courts must carefully consider whether to conduct *in camera* review and do

so only when it would add value." *Jud. Watch, Inc. v. Dep't of Just.*, 616 F. Supp. 3d 13, 25 n.7 (D.D.C. 2022) (Nichols, J.). As stated above, there is sufficient detail in the declarations to justify Defendant's withholdings without running the risk of inadvertent disclosure. Accordingly, this Court should reject Plaintiffs' request for *in camera* review here.

In the alternative, should the Court find that Defendant has not sustained its burden, the Court should order submission of new declarations to address any shortcomings. Because *in camera* review is "necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure," the Court should use it sparingly. *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973). "The best approach is to direct the agency to revise their *Vaughn* submissions, taking into account the deficiencies identified by the Court." *Elec. Frontier Found. v. Dep't of Just.*, 826 F. Supp. 2d 157, 175 (D.D.C. 2011) (rejecting *in camera* review and requiring submission of revised *Vaughn* index). In this case, while Defendant contends that it has met its burden in establishing the applicability of Exemptions 6 and 7(C), if the Court were to disagree, in lieu of ordering the immediate release of records or *in camera* review, the Court should first order submission of new declarations to further justify the challenged withholdings. *See Am. for Prosperity v. Exp.-Imp. Bank*, Civ. A. No. 19-2948 (TJK) (D.D.C. Sept. 1, 2022), Min. Order ("Rather than order *in camera* review as Plaintiff requests, the Court will provide Defendants the opportunity to provide supplemental declarations to address these flaws and justify the withholdings.").

\* \* \*

## CONCLUSION

For these reasons, and the reasons stated in Defendant's underlying motion for summary judgment, the Court should grant summary judgment in Defendant's favor, and deny Plaintiffs' cross-motion for summary judgment.

Dated: November 13, 2023
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ *John J. Bardo*
JOHN J. BARDO
D.C. Bar # 1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*