IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL | ) ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) )  Case No. 23-cv-1198 (CJN) |
| U.S. DEPARTMENT OF HOMELAND SECURITY | ) ) ) ) |
| *Defendant*. | ) ) |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF SHARI SUZUKI OR, IN THE ALTERNATIVE, TO TAKE LIMITED DISCOVERY**
**(ORAL ARGUMENT REQUESTED)**

Plaintiffs The Heritage Foundation and Mike Howell (collectively "Plaintiffs") respectfully submit this Reply Memorandum to Defendant the U.S. Department of Homeland Security's ("the Department" or "Defendant") Memorandum in Opposition to Plaintiffs' Motion to Strike or, in the Alternative, to Take Limited Discovery (ECF No. 33) ("Def. Memo.").

**INTRODUCTION**

Plaintiffs move for an order partially striking the Declaration of Shari Suzuki or, in the alternative, for limited discovery. Defendant's component Customs and Border Protection ("CBP") maintained, from May 23, 2023 through July 5, 2023, that it could neither confirm nor deny that HRH Prince Henry Charles Albert David George, the Duke of Sussex, Earl of Dumbarton, and Baron Kikeel K.C.V.O. ("HRH" or "Duke of Sussex") had even entered the United States, and that agency regulations prevented it from releasing third-party records absent the written consent of the third-party. Rather than acknowledge that this position prejudiced

1

Plaintiffs, Defendant declares, "Plaintiffs, in essence, are seeking relief because they disagree with a legal argument that CBP no longer advances." Def. Memo. at 1. Defendant's argument is that it could adopt a frivolous position, use that position to moot out Plaintiffs' Motion for a Preliminary Injunction as it applied to CBP and delay processing Plaintiffs' request for months (a significant period of time in the modern media environment), reverse course and abandon that position later in litigation (after forcing Plaintiffs to spend considerable energy imploring Defendant to change course) and finally conclude "CBP's decision to modify its position is evidence of good faith, not bad faith." Def. Memo. at 4. Simply stating Defendant's case suffices to refute it.

## ARGUMENT

**I.      DEFENDANT DOES NOT DISPUTE THAT ITS *GLOMAR* WAS FRIVOLOUS.**

Incredibly, confronted with seven pages of detailed factual and *legal* argument demonstrating that CBP's *Glomar* was frivolous and reeking with the threat of Fed. R. Civ. Proc. 11 ("Rule 11"), sanctions Defendant says exactly—*nothing*. Memorandum in Support of Plaintiff's Motion to Strike the Declaration of Shari Suzuki or, in the Alternative, Take Limited Discovery at 3–10 (ECF No. 30-1) ("Plts. Mot."). Defendant cannot even bring itself to defend CBP's conduct against the accusation it was egregiously frivolous. This Court should treat the matter as conceded—CBP's *Glomar* was egregiously frivolous. *See Judicial Watch v. DOJ,* No. 19-cv-879 (CJN), 2022 WL 898825, at *8 (D.D.C. Mar. 28, 2022); *Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1, 9–10 (Sept. 22, 22, 2021); *Tobias v. U.S. Dep't of Interior*, No. 18-cv-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021)

## II.     CBP MAINTAINED A FRIVOLOUS *GLOMAR* POSITION OVER PLAINTIFFS' REPEATED OBJECTIONS FOR TACTICAL ADVANTAGE.

Defendant correctly notes that "Plaintiffs make much of the fact that CBP maintained the full *Glomar* response that it issued during the administrative phase while opposing Plaintiff's motion for a preliminary injunction to order expedited processing." Def. Memo. at 2.  That is because the *Glomar* position maintained during the administrative phase *did* prejudice Plaintiffs. It delayed proceedings without justifiable cause.  Rather than admit this inconvenient fact, Defendant argues that Plaintiffs were unharmed by the *Glomar* position, that Plaintiffs are engaged in a "sideshow of relitigating issues from their motion for preliminary injunction", and that Defendant's modification of its frivolous position after the fact (and Plaintiffs' repeated efforts to affect a change of course) evinces good faith.  *Id.* at 7–8.  These arguments are meritless.

### A.     Plaintiffs Were Prejudiced by CBP's *Glomar* Position.

Citing *Boyd v. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007), Defendant argues that Plaintiffs suffer no harm as CBP either categorically withheld records or issued a *Glomar* response under both its May 23 and July 5 determinations.  Def. Memo. at 3.  *Boyd* is inapposite here. The cited portion of *Boyd* held "any error, then, in invoking *Glomar* would not entitle Boyd to anything more under FOIA." *Id.* at 389.  The requester in *Boyd* failed to establish sufficient evidence to overcome the underlying Exemption 7(C) assertion. *Id.* at 387-88.  Accordingly, the court deemed the validity of the *Glomar* moot–either way the plaintiff lost.  *Id.* at 389.  But *Boyd* was a merits decision and is inapplicable here as to the question of whether Plaintiffs were prejudiced by CBP's *Glomar* position.  That holding has nothing to do with the question of whether Defendant acted in bad faith by maintaining a frivolous position for litigation advantage.

The simple fact is Plaintiffs were prejudiced by CBP's *Glomar* position. Plaintiffs implored Defendant to change its position on no fewer than five separate occasions over multiple months. (ECF No. 30-1 at 2). Only after Plaintiffs invoked Rule 11 did Defendant see fit to admit the self-evident fact that the Duke of Sussex had indeed entered the United States. It appears Defendant has asserted the categorical *Glomar* and accompanying categorical regulatory positions for no reason other than delay as Plaintiffs made clear to Defendant that they viewed both positions as frivolous and Defendant nevertheless took *months* to reverse itself. That decision necessarily delayed Defendant's subsequent search and processing by a matter of months. That Defendant did not release records after reversing is not harmless error as Defendant contends. Def. Memo. at 3. It is harmful; it delayed briefing on the matter and required effort that ultimately proved unnecessary. FOIA requires prompt production; timely responses are required and delaying compliance for baseless reasons is itself prejudicial. *See, e.g.*, *Judicial Watch v. DHS*, 895 F.3d 770, 780–81 (D.C. Cir. 2018) (requester may state plausible pattern-or-practice claim by alleging prolonged, unexplained delays in producing non-exempt records); *id.* at 789 (Pillard, J., concurring) (same); *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999) ("Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher."); *Payne Enter., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("stale information is of little value").

### B.  Plaintiffs Are Not Relitigating the Motion for Preliminary Injunction.

Defendant's "sideshow of relitigating issues" argument ignores the fact that Plaintiffs' Motion again and again cites to the Declaration of Shari Suzuki (ECF No. 23-5) ("Suzuki Decl."). The Suzuki Declaration was not executed until August 24, 2023, well after the

Preliminary Injunction matter was settled. And Defendant relies extensively on the Suzuki Declaration for a number of issues throughout its briefing.[1]

Defendant's reliance on *Bayala v. Dep't of Homeland Sec., Office of Gen. Counsel,* 827 F.3d 31 (D.C. Cir. 2016) is easily distinguished. In *Bayala*, the "entirely academic question" arose from the defendant making a voluntary decision to change course. By adopting a new position and *sua sponte* releasing documents, the government rendered its original decision and administrative challenges to it moot. *Id.* at 35. *Bayala* says nothing about a case involving bad faith and a change of course only *after* obtaining a litigation advantage from that position. That is the point at issue here. The application of the *Glomar* doctrine to the question of whether the Duke of Sussex had even entered the United States may be moot now, but the question of whether that position was adopted in bad faith for tactical advantage is not.

### C. Defendant's Reversal of Position Was Not in Good Faith.

To be sure, in the abstract, an agency discovering errors in its representations and reversing course does not displace the presumption of good faith. *Am. Oversight v. Dep't of Just.*, 401 F. Supp. 3d 16, 26–27 (collecting cases). And an agency's discovery of a mistake and subsequent prompt remedial measures can demonstrate good faith. *Fischer v. Dep't of Just.*, 723 F. Supp. 2d 104, 109 (D.D.C. 2010). But that is not the situation here.

---

[1] *See, e.g.*, Combined Reply in Further Support of Defendant's Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Cross-Motion for Summary Judgment at 8 (ECF No. 32) (relying on Suzuki on "the fact Plaintiffs are seeking records regarding a high-profile individual is not sufficient to establish a public interest that outweighs Prince Harry's privacy interests"); *id.* at 12 (relying on Suzuki "[a]cknowleding whether records related to Prince Harry could be located in any of those databases would reveal whether he applied for particular immigration benefits or was subject to any adverse actions."); Def. Memo. at 2 (relying on Suzuki "despite acknowledging that entry and exit records existed, CBP did not release any portion of them because it determined that they were categorically exempt under Exemptions 6 and 7(C)").

There is a clear distinction between an agency discovering a mistake due to its own diligence or that of a requester and promptly correcting the error and the case here where the agency maintained a clearly frivolous position over the repeated objections of a requester for litigation advantage.  In *Am. Oversight*, the bad-faith argument was based on a single error in an agency declaration.  The court noted:

> the very reason *Military Audit Project* held that an initial mistake could not doom an agency's declarations was because the Circuit wanted to encourage agencies to reflect and do better, not retreat into recalcitrance. . . .  A myopic focus on the reasonableness of the initial failures, divorced from the agency's remedial efforts to cure them, would erode that principle.

*Am. Oversight* at 28 (citation omitted).

Here, Defendant had already retreated into "recalcitrance."  Defendant did not engage in remedial efforts of its own accord.  It did so only after repeated entreaties by Plaintiffs to abandon its frivolous position. *See e.g.*, Plts. Mot. at 4–9.  CBP only acknowledged and corrected its mistake after an extended back and forth escalated to the threat of sanctions, after it mooted out the Motion for Preliminary Injunction, and after that process had delayed CBP's search and subsequent determination for months.  Engaging in these litigation tactics places the Department in the same category as the defendant in *CREW v. U.S. Dep't of Vet. Aff.*, 828 F. Supp. 2d 325 (D.D.C. 2011).  In *CREW*, the court found the submission of a declaration after the deposition of another declarant rendered the deposition "at best incomplete, and perhaps useless[]" and was indicative of agency bad faith sufficient to permit additional discovery.  *Id*. at 334.

## II. DEFENDANT MISSTATES THE LAW ON BAD FAITH AND DECLARATIONS.

Relying on *Mobley v. CIA*, 924 F. Supp.2d 24, 63 (D.D.C. 2013), Defendant asserts that absent a finding of significant inconsistencies or material misstatements, the presumption of good faith afforded to agency declarations may not be upset.  Def. Memo. at 4.  This misstates

6

the standard for bad faith. While glaring inconsistencies or misstatements in agency declarations may establish bad faith, they are not required. Bad faith may be proven in a number of ways, such as a significant and uncharacteristic delay (*CREW v. Dep't of Just.*, 05-cv-2078, 2006 WL 1518964 at *6 (D.D.C. June 1, 2006)) or repeated unreliable statements made to the court and requester (*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 185 F. Supp. 3d 26, 28–30 (D.D.C. 2016). There is no distinct formula for bad faith, the question is simply whether an agency engaged in a good faith processing of the request. *Id.* at 27 (citing Mem. and Order, *Judicial Watch v. Dep't of State*, No. 13–1363 (EGS), (ECF No. 73), at *9 (D.D.C. May 4, 2016)).

### III. DISCOVERY IS WARRANTED IN CASES TAINTED WITH AGENCY BAD FAITH

Finally, Defendant argues that discovery is unwarranted in this case as Plaintiffs have presented no evidence of bad faith, that discovery is limited to search and indexing, and the subjects proposed for limited discovery would be protected by attorney-client privilege and/or the work product doctrine. These arguments do not hold water.

**1.** CBP has engaged in bad faith. CBP delayed its searches and determination and forced Plaintiffs to expend considerable energy addressing a position CBP knew to be frivolous and maintained against repeated requests to reverse. Defendant cannot dispute this. Bad faith in a FOIA case is determined at an agency level, not at the level of the declaration. *See CREW*, 2006 WL 1518964 at *6 (discovery warranted by extreme delay); *Competitive Enter. Inst.*, 185 F. Supp. 3d at 28–30 (discovery warranted by inconsistencies in representations of the scope and completeness of searches). Plaintiffs presented ample evidence of bad faith. *See* Plts. Mot. at 3-10. That bad faith justifies discovery.

2.	Defendant next posits that discovery is generally limited to an agency's search and indexing procedures. But discovery in the FOIA context is flexible and may be granted in a number of situations. *See CREW v. Dep't of Just.*, 05-cv-2078, 2006 WL 1518964 at *6 (D.D.C. June 1, 2006) (allowing deposition of DOJ officials responsible for responding to a FOIA request regarding the prolonged delay to exhaust the two free hours of search time, the delay in adjudicating a fee waiver request and appeal, and the discrepancy between the average time of an agency response and the time taken to respond to Plaintiff's request.); Order, *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-1806 (APM) (May 24, 2016) (ECF No. 30) (allowing interrogatories on adequacy of search and deposition of consultant to determine applicability of the consultant corollary); *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 184 (D.D.C. 2013) (allowing limited discovery into whether and to what extent government officials utilized personal emails to conduct official business). The need to understand Defendant's conduct surrounding its frivolous position as well as the on-going implications of that conduct is an appropriate topic for discovery.

3.	Finally, Defendant states "most of the information that would be responsive to any hypothetical discovery requests regarding CBP's modification of its response would be protected by the attorney-client privilege or the work product doctrine." Def. Memo. at 8. Defendant's tepid endorsement of this position is clear from its use of the qualifier "most" as well as its failure to explain, even in passing, its rationale for this sweeping position. The above cited cases make it clear that discovery into the reasoning or cause of any particular bad faith rationale is permissible. That is the case even if the communication may be protected in other circumstances outside a showing of bad faith. Furthermore, it is established that a single sentence, perfunctory and undeveloped argument may be disregarded. *See Fling v. Martin*, No.

19-cv-693 (CJN), 2020 WL 4569335, at *2 n.5 (D.D.C. Aug. 8, 2020); *Rodriguez v. Penrod*, No. 18-cv-240 (CJN), 2020 WL 686012, at *9 n.5 (Feb, 11, 2020).

## CONCLUSION

For the foregoing reasons, the Court should strike the Declaration of Shari Suzuki or, in the alternative, plaintiffs to conduct limited discovery as to the reversal of CBP's prior *Glomar* position and the basis of its current *Glomar* position.

Dated:  December 4, 2023          Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*