**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

HERITAGE FOUNDATION &
MIKE HOWELL

        *Plaintiffs*,

v.                                                      Case No. 23-cv-1198 (CJN)

U.S. DEPARTMENT OF HOMELAND
SECURITY

        *Defendant*.

---

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGEMENT
(ORAL ARGUMENT REQUESTED)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 3

   I.   DEFENDANT DOES NOT ADDRESS THAT USCIS ONLY INVOKED EXEMPTION
      6. ........................................................................................................................ 3

   II.  THE DUKE OF SUSSEX'S PRIVACY INTERESTS ARE AT AN EBB...................... 4

   III. PLAINTIFFS HAVE DEMONSTRATED TWO WEIGHTY PUBLIC INTERESTS IN
       DISCLOSURE.................................................................................................... 7

      A.  The Record "would warrant a belief by a reasonable person that the alleged
           Government impropriety might have occurred." ......................................... 8

         1.  Defendant Badly Misconstrues *Favish*. ............................................. 8

         2.  Defendant Has No Coherent Answer to Plaintiffs' Showing Under *Favish*. ......... 9

      B.  Understanding the Exercise of Discretion in a High-Profile Case:  Did the
           Government Pull its Punches? ..................................................................... 14

   IV. THE PUBLIC INTEREST IN DISCLOSURE OUTWEIGHS THE DUKE OF
       SUSSEX'S PRIVACY INTERESTS. .............................................................. 19

      A.  Defendant Cannot Sustain its *Glomar* of Records Relating to Section 1182(d)(3).... 19

      B.  Defendant's Categorial Withholdings Cannot be Sustained...................................... 21

      C.  The Balance of Interests Favors Disclosure................................................... 22

   V.  THIS COURT SHOULD RESOLVE ANY DOUBTS VIA *IN CAMERA* REVIEW...... 23

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*ACLU v. CIA*, No. 18-cv-2784 (CJN), 2022 WL 306630 (D.D.C. Feb. 2, 2022)........................ 23

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018) .............................................................. 20

*\*Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1 (D.D.C. Sept. 22, 2021) .......................... passim

*Burnett v. DEA*, No. 19-cv-870 (CJN), 2021 WL 1209142 (D.D.C. Mar. 31, 2021).................. 23

*\*Cabezas v. Fed. Bureau of Prisons*, No. 20-cv-2484 (CJN), 2023 WL 6312349 (D.D.C. Sept. 28, 2023) .................................................................................................. 19, 20, 22

*Codrea v. ATF*, No. 21-cv-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 25, 2023)................. 16

*\*CREW v. DOJ*, 746 F.3d 1082, 1094–95 (D.C. Cir. 2014)................................................ 15, 16

*\*CREW v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017)............................................................ 3, 11, 15

*Ctr. for Auto Safety v. EPA*, 731 F.2d 16 (D.C. Cir. 1984)............................................... 23

*Darnbrough v. U.S. Dep't of State*, 924 F.Supp.2d 213 (D.D.C. 2013) ................................ 11

*Dep't of Comm. v. New York*, 139 S.Ct. 1551 (2019)..................................................... 12

*Ditlow v. Shultz*, 517 F.2d 166 (D.C. Cir. 1975).......................................................... 3

*DOJ v. Reporter's Comm. For Freedom of Press*, 489 U.S. 749 (1989) .................................... 22

*\*Fling v. Martin*, No. 19-cv-693 (CJN), 2020 WL 4569335 (D.D.C. Aug. 8, 2020)............. 10, 12

*Gosen v. USCIS*, 75 F.Supp.3d 279 (D.D.C 2014) ....................................................... 25

*Gov. Accountability Project v. FDA*, 206 F.Supp.3d 410 (D.D.C. 2016)................................ 19

*Jud. Watch v. DOJ*, 616 F.Supp.3d 13 (D.D.C. 2022).................................................. 24

*Judicial Watch v. DOJ*, 394 F.Supp.3d 111 (D.D.C. 2019)............................................. 5

*\*Judicial Watch v. DOJ*, No. 19-cv-879 (CJN), 2022 WL 898825 (D.D.C. Mar. 28, 2022) passim

*King on the Application of the Duke of Sussex v. Sec. of State for the Home Dep't*, [2023] EWHC 1228 (Admin)................................................................................................ 11

*Long v. USCIS*, No. 5:17-cv-506 (BKS), 2020 WL 5994182 (N.D.N.Y. Oct. 9, 2020).............. 18

*Mezerhane de Schnapp v. USCIS*, 67 F.Supp.3d 95 (D.D.C. 2014) ............................................ 25

*\*Muchnick v. DHS*, 225 F.Supp.3d 1069 (N.D. Cal. 2016)........................................................ 13

*\*Muchnick v. DHS*, No. 15-cv-2060 (CRB), 2016 WL 730291 (N.D. Cal. Feb. 24, 2016) ........ 22

*Nat. Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)................................ 8, 15, 16, 18

*Nat'l Pub. Radio v. FBI*, 486 F.Supp.3d 293 (D.D.C. 2020)................................................. 23, 24

*Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1217 (9th Cir. 2002) ..................................................... 21

*Perlman v. DOJ*, 312 F.3d 100 (2d Cir. 2002) .............................................................................. 6

*Phillips v. Immigr. & Customs Enf't*, 385 F.Supp.2d 296 (S.D.N.Y. 2005)........................... 5, 25

*Property of the People v. DOJ*, 310 F.Supp.3d 57 (D.D.C. 2018) ......................................... 3, 16

*Property of the People v. DOJ*, 405 F.Supp.3d 99 (D.D.C. 2019) ............................................... 17

*Pub. Citizen Rsch. Grp. v. Nat'l Inst. of Health*, 209 F.Supp.2d 37 (D.D.C. 2002) .................... 18

*Queen on the Application of the Duke of Sussex v. Sec. of State for the Home Department*, [2022] EWHC 1936 (Admin)................................................................................................... 12

*Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978)........................................................................... 24

*\*Rodriguez v. Penrod*, No. 18-cv-240 (CJN), 2020 WL 686012 (D.D.C. Feb, 11, 2020) ..... 10, 12

*Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019) ....................................................... 9

*Roth v. DOJ*, 642 F.3d 1161 (D.C. Cir. 2011) .............................................................................. 9

*Scudder v. CIA*, 25 F.Supp.3d 19 (D.D.C. 2014)........................................................................ 19

*Snyder v. Dep't of Def.*, No. 03-cv-4992 (VRW), 2005 WL 8177543 (N.D. Cal. Feb. 2, 2005) . 18

*Tobias v. U.S. Dep't of Interior*, No. 18-cv-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) ......................................................................................................... passim

*Union Leader Corp. v. DHS*, 749 F.3d 45 (1st Cir. 2014)........................................................ 8, 10

*Urzaua Covarrubias v. Gonzalez*, 487 F.3d 742 (9th Cir. 2007)................................................. 20

*Vega v. USCIS*, 65 F.4th 469 (9th Cir. 2023) ............................................................................. 13

*Wash. Post Co. v. HHS*, 690 F.2d 252 (D.C. Cir. 1982)................................................................ 3

*Wash. Post. Co. v. U.S. Dep't of State*, 840 F.2d 26 (D.C. Cir. 1988) ........................................ 19

**Statutes**

5 U.S.C. § 552(b)(6) .................................................................................................................. 3

8 U.S.C. § 1101(a)(15)(A)(i) ..................................................................................................... 11

8 U.S.C. § 1126(c) ...................................................................................................................... 9

8 U.S.C. § 1182(a)(2)(A)(i)(II) .................................................................................................. 14

8 U.S.C. § 1182(d)(3)(A) ........................................................................................................... 12

8 U.S.C. § 1202(f) ..................................................................................................................... 11

**Other Authorities**

Brief of the United States, at 27–28, *United States v. Texas & Louisiana*, No. 22-58 (Sept. 12, 2022) ........................................................................................................................................ 9

*Matter of Hranka*, 16 I&N Dec. 491, 492 (BIA 1978) .............................................................. 13

**Rules**

Fed. R. of Evid. 801(d)(2).......................................................................................................... 21

\*   Authorities on which we principally rely are marked with asterisks.

**INTRODUCTION**

By any objective measure, Defendant is terrified of transparency in this case.  As Plaintiffs explained in their Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (ECF No. 26-1) ("Plaintiffs Motion" or "Plts. Mot."), this Court should compel Defendant to produce appropriately redacted records with a record-by-record *Vaughn* Index.  Nothing in Defendant's Combined Reply in Further Support of Defendant's Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 32) ("Defendant's Reply" or "Def. Reply") changes this conclusion.  Defendant's Reply is badly confused and disjointed and furthers the errors in Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgement (ECF No. 23-1) ("Defendant's Motion or "Def. Mot").

*First*.  Defendant for whatever reason still does not fully grapple with the fact that although this is a case about *Government* conduct, it relates to and involves HRH Prince Henry Charles Albert David George, the Duke of Sussex, Earl of Dumbarton, and Baron Kikeel K.C.V.O. ("HRH" or "Duke of Sussex").  The Duke of Sussex is one of the highest profile individuals in the world, subject to extraordinary press attention, and the subject of extraordinary and public debate as it relates to any number of issues.  But Defendant's Reply continues to selectively ignore this fact.  The Court itself previously highlighted that this Janus-esque approach simply is not sustainable.  Trans. of Oral Arg., at 20:3–13 (June 5, 2023) (ECF No. 19).

*Second*.  Defendant appears to raise the specter of a slippery slope:  Ordering disclosure in this case will result in disclosure in many others.  Def. Reply at 2.  But this case is *sui generis*. A ruling in favor of Plaintiffs would necessarily be just that—*sui generis* to this case.  Not only

1

does this case involve the application of law in the narrow area of a high-profile individual, but it comes about in the main because HRH voluntarily—and for *immense* profit—admitted in writing to the elements of any number of controlled substance violations.  *See* Am. Compl. at ¶¶ 27, 37, 39, 48.  (Indeed, some say HRH has approached the point of bragging and encouraging illegal drug use.  *See* Am. Compl. at ¶ 36).  The Duke of Sussex did so despite the fact that it is widely known that such admissions can have adverse immigration consequences for non-citizens (*see* generally App. B) and despite employing preeminent legal advisors on both sides of the Atlantic. But that is not all.  This case is further bespoke in that HRH—again for immense profit— detailed his immigration decisions and manner of entry in writing and via Netflix video.  Add to that the fact that all aspects of HRH's travel are extensively covered in the press.  To be sure, all but the last point is the Duke of Sussex's prerogative, but it is not an objectively normal course of action, and thus this case is about as far from a normal case as one can get.

*Third*.  Defendant's reply is replete with concessions via waiver.  For example, Defendant does not acknowledge the implications of the fact that the United States Citizenship and Immigration Services ("USCIS") only invoked Exemption 6.  *See* Declaration of Jarrod Panter ¶¶ 14–16 (Aug. 28, 2023) (ECF No. 23-3) ("Panter Decl."); Plts. Mot. at 4.

*Fourth*.  Defendant both badly misstates and misconstrues applicable law and attempts to distinguish controlling law with irrelevant factual distinctions.

*Fifth*.  Defendant entirely ignores the fact that on the question of whether Plaintiffs advance a significant governmental interest and the strength of that interest, Plaintiffs have presented expert testimony on key underlying technical questions of fact.  Defendant makes no response other than to, at times, present arguments in briefing contrary to bits and pieces of the

expert testimony.  But that is to concede the point on a motion for summary judgement; a non-controverted expert declaration prevails.

## ARGUMENT

### I.   DEFENDANT DOES NOT ADDRESS THAT USCIS ONLY INVOKED EXEMPTION 6.

USCIS only invoked Exemption 6.  *See* Panter Decl. at ¶¶ 14–16; Plts. Mot. at 4. Nothing in Defendant's Reply disputes this fact.  This Court should follow its established procedure and treat the matter is conceded.  *See Judicial Watch v. DOJ*, No. 19-cv-879 (CJN), 2022 WL 898825, at *8 (D.D.C. Mar. 28, 2022); *Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1, 9–10 (D.D.C. Sept. 22, 2021); *Tobias v. U.S. Dep't of Interior*, No. 18-cv-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021); *see also CREW v. DOJ*, 854 F.3d 675, 679–80 (D.C. Cir. 2017) ("*CREW IV*") (agency cannot assert Exemptions *seriatim* in litigation).

Thus, an entire aspect of this case is viewed not under Exemption 7(C), but the more pro-disclosure Exemption 6 which only shields records from disclosure that include "personnel and medical files and similar files the disclosure of which would constitute a *clearly* unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  The D.C. Circuit has instructed "that under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]."  *Wash. Post Co. v. HHS*, 690 F.2d 252, 261 (D.C. Cir. 1982); *see also Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C. Cir. 1975) (similar).

Defendant's Reply is infected by this error; it repeatedly justifies its withholdings as to USCIS with cases construing Exemption 7(C).  To take one example, Defendant relies extensively on *Property of the People v. DOJ*, 310 F.Supp.3d 57, 70 (D.D.C. 2018) ("*Property of the People I*") to justify USCIS's withholdings.  *See* Def. Reply at 9.  But the cited analysis

expressly applied only to Exemption 7(C); indeed the court there *rejected* the Government's efforts to *Glomar* material only protected by Exemption 6. *Id.* at 67.

## II.   THE DUKE OF SUSSEX'S PRIVACY INTERESTS ARE AT AN EBB.

Plaintiffs do not dispute that the Duke of Sussex has a non-*de-minimis* privacy interest sufficient to *trigger* balancing under Exemptions 6 or 7(C). Plts. Mot. at 12–13. Plaintiffs submit that the weight of those interests are at an ebb because: "(1) the combined weight of his disclosures regarding drug use—and the implications of that drug use on his life—actually reveal a considerable amount about the Duke of Sussex's immigration status; (2) he is a high-ranking public official; and (3) he is the paradigmatic public figure. Collectively, these factors significantly diminish HRH's privacy interests." *Id.* at 12. Nothing in Defendant's Reply rebuts this showing.

**1.**   As an initial matter, Defendant continues to be confused as to the actual question at issue. *Compare* Def. Mot. at 14 (arguing existence of a privacy interest) *with* Def. Reply at 2 (equivocal). Again, the question is the *weight* of the privacy interest. Plts. Mot. at 12–13.

**2.**   Defendant does not engage at *all* with Plaintiffs' submission that the Duke of Sussex is a public figure and that this significantly reduces his privacy interests. Plts. Mot. at 16–17. The Court should treat this issue as conceded. *See Judicial Watch*, 2022 WL 898825, at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488, at *2.

This point is no quibble; the Duke of Sussex's public status substantially diminishes his privacy interests in this case. The Duke of Sussex has sold every aspect of his private life for, in some estimates, over $135 million. *See* Am. Compl. at ¶ 48. HRH's claims of privacy interests in the face of this conduct have been met with widespread public ridicule. *See, e.g.*, *id.* at ¶ 51. The Duke of Sussex must take the good with the bad. Having sold all manner of private matters

for profit—including specific details on his taking up residence in the United States and every detail of his years of illegal drug use to the point of braggadocio—HRH must accept a substantially diminished privacy interest.  The law in this District is in accord.  Take for example, *Judicial Watch v. DOJ* where the FBI *Glomar'd* whether it held records postdating Christopher Steele's previous role as an FBI "confidential source."  394 F.Supp.3d 111, 116–17 (D.D.C. 2019);

> As an initial matter, the Court notes that Steele is not presently unknown to the world—or anywhere close to it.  He has already been thrust into the spotlight because of his relationship with the FBI.  It is hard for the Court to imagine that the disclosure of any communications between him and the FBI post-dating his time as a CHS—assuming such records exist—would occasion much greater public scrutiny than he has already endured.  For that reason, Steele's privacy interests are far different from those courts usually consider under Exemption 7(C), where disclosure would make public for the first time an individual's affiliation with law enforcement, whether as agent, cooperator, or target. . . .  That Steele is already a public figure with a well-known association with the FBI does not, to be sure, destroy his privacy interest in other communications he may have had with the FBI.  If, for example, those records reveal that Steele was suspected of some wrongdoing, it stands to reason he might suffer some new, additional reputational harm. . . .  Just the same, Steele's FBI-related notoriety certainly weakens his privacy interests.

*Id.* at 118.  So too here.

**3.**     Defendant does not appear to dispute that "public official[s]" have a "diminished privacy interest[]".  Def. Reply at 3.  Rather, Defendant submits that this rationale is "'inapplicable to a foreign government official' like Prince Harry."  Def. Reply at 3 (quoting *Phillips v. Immigr. & Customs Enf't*, 385 F.Supp.2d 296, 305 (S.D.N.Y. 2005) (in turn quoting *Perlman v. DOJ*, 312 F.3d 100, 107 (2d. Cir. 2002))).

On the merits, this argument has several fatal flaws.  First, Defendant's citation of *Phillips* is incomplete.  *Phillips* held "this rationale would *appear* to be inapplicable to former foreign government officials," and it is unclear whether this discussion was *obiter*.  385 F.Supp.2d at 305 (emphasis added).  Second, in any event, *Phillips'* analysis rests on a major

methodological error.  In *Phillips*, the District Court (correctly) rejected the requestors argument

"that as former high government officials, neither Garcia nor Vides–Casanova have any

legitimate privacy interest."  The *Phillips* Court then held that:

> [T]his argument confuses the existence of a privacy interest (which even high
> government officials may possess) with consideration of the competing interest of the
> public in the disclosure of government records.  The privacy interests of U.S. government
> officials might be "somewhat diminished" due to the countervailing interest of the public
> "to be informed about what their government is up to," *Perlman*, 312 F.3d at 107
> (internal citations omitted).  However, this rationale would appear to be inapplicable to
> former foreign government officials."

*Id.*  In so doing the *Phillips* Court conflated the question of the public interest and balancing that

interest with the strength of the privacy interests in question.  That is error.  The questions are

distinct; the strength of a privacy interest is not driven by nonapplicable public interests.  *See*

Plts. Mot. at 10–11.[1]

Plaintiffs follow the *Phillips* Court's methodological error here.  The relevant facts for

assessing the strength of the Duke of Sussex's privacy interest are that HRH holds public office,

is subject to incredible press scrutiny and diminished privacy interest because of that office, and

that Plaintiffs question whether HRH received preferential treatment because of that office.  *See*

Plts. Mot. at 14–15 (collecting authorities).  That is all.  To hold otherwise would collapse

distinct elements of the applicable test.  It would also create a very odd duality where foreign

---

[1] The *Phillips* Court's citation of *Perlman* was also in error.  The cited passage of *Perlman*
speaks to two separate issues.  First, the *Perlman* Court spoke to the fact that a public official's
privacy interest is "somewhat diminished."  *Perlman v. DOJ*, 312 F.3d 100, 107 (2d Cir. 2002)
(quoting *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998)).  Second, and distinctly, the
*Perlman* Court went on to comment on the next step in the process namely the balancing of the
public interest:  "We recognize that a government employee who is the subject of an
investigation possesses a strong privacy interest in avoiding disclosure of the details of the
investigation.  *Id.* at 949.  The public, however, possesses a strong interest and "right to be
informed about what their government is up to."  *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct.
1468 (internal quotation marks omitted)."  312 F.3d at 107.

government officials would almost always be granted *greater* privacy interests than U.S. government officials.  Under Defendant's construct, if the House Majority Leader and the Leader of the House of Commons were under investigation as masterminds of a bribery scheme in the United States and a requestor sought to determine if the Department pulled its punches in favor of powerful and high office holders, the House Majority Leader's office would count against him, but the Leader of the House of Commons' office would not.

4.      Defendant does not appear to challenge Plaintiffs' submissions that the Duke of Sussex's extensive disclosures regarding:  (1) his drug use; (2) his travel; and (3) the "timing and manner of his entry to take up residence and the details of his decision to maintain residence in the United States undercut the strength of any asserted privacy interest."  Plts. Mot. at 13.  *See* Def. Reply at 3 (traversing only Plaintiffs' *separate* argument regarding whether "Prince Harry forfeited his privacy interests in whether he received a waiver pursuant to Section 212(d)(3) of the Immigration and Nationality Act.").  That these factors substantially weaken the Duke of Sussex's privacy interest in this case is conceded.  *See Judicial Watch*, 2022 WL 898825, at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488, at *2.

### III.   PLAINTIFFS HAVE DEMONSTRATED TWO WEIGHTY PUBLIC INTERESTS IN DISCLOSURE.

Plaintiffs' Motion demonstrates at length two paramount and profound public interests in disclosure:

> *First*.  Plaintiffs have been clear that they have established a sufficient basis to raise the question of whether DHS committed misconduct or acted negligently in either admitting the Duke of Sussex or in allowing him to stay within the United States.  *See* ECF No. 6 at 1–2; ECF No. 16 at 1, 19–20.
> *Second*.  Plaintiffs have also been clear that they seek to better understand how DHS conducts itself and exercise official discretion in high-profile cases involving the admission of high-profile and influential individuals who have engaged in illegal drug use.

Plts. Mot. at 17; *accord id.* 17–25.  Defendant's Reply has no answer.

### A.   The Record "would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."

#### 1.   Defendant Badly Misconstrues *Favish*.

Defendant's Reply doubles down on the assertion in Defendant's Motion that *Favish* requires Plaintiff to overcome the "presumption of legitimacy":  Courts afford official Government conduct a "presumption of legitimacy," and "clear evidence is usually required to replace it."  *Nat. Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  Def. Reply at 8; *accord* Def. Mot. at 18.  Plaintiffs already explained this is wrong; *Favish* e*xpressly* says *less* evidence is required.  Plts. Mot. at 18–19.  But for the avoidance of doubt:

> In *Department of State v. Ray*, 502 U.S. 164 [] (1991), we held there is a presumption of legitimacy accorded to the Government's official conduct.  *Id.* at 178–79. The presumption perhaps is less a rule of evidence than a general working principle. However the rule is characterized, where the presumption is applicable, clear evidence is usually required to displace it. . . .  *Given FOIA's prodisclosure purpose, however, the less stringent standard we adopt today is more faithful to the statutory scheme.*

*Favish*, 541 U.S. at 174 (emphasis added).  Again, all *Favish* requires is a "circumstantial showing of *possible* misconduct or *possible* negligence."  Plts. Mot. at 19.[2]

---

[2] Defendant obliquely attacks several cases Plaintiffs cite for their construction of *Favish*. *Union Leader Corp. v. DHS*, 749 F.3d 45 (1st Cir. 2014).  Defendant appears to submit that *Union Leader* is not *factually* apposite to this case.  *See* Def. Reply at 6–7.  But Plaintiffs never made such an argument; they rely on the *ratio* of *Union Leader* on two distinct *legal* points.  *See* Plts. Mot. at 19, 23.  Defendant also seems to attack the citation of *Union Leader* for the proposition that circumstantial evidence of possible misconduct satisfies *Favish*.  *See* Def. Reply at 6 ("In other words, the *Union Leader* requester had all relevant information regarding the apprehended individuals' prior criminal convictions and presented concrete evidence that ICE delayed performing a statutory duty by more than two decades.").  This statement is simply wrong–the requester in *Union Leader* simply demonstrated possible negligence circumstantially and Defendant makes no effort to distinguish the *holding* of *Union Leader* that such a showing satisfied the *Favish* standard, which Plaintiffs *block quoted*.  Plts. Mot. at 19.  There may very well have been *good* reasons the fugitives were not arrested—to take but one, many illegal alien fugitives are quite adept at avoiding capture.  Moreover, the statement is startling in its own

**2.      Defendant Has No Coherent Answer to Plaintiffs' Showing Under *Favish*.**

1.      Defendant attempts to reduce Plaintiffs' submissions under *Favish* to a syllogism:

"(1) Prince Harry is a foreign national living in the United States who publicly admitted to using

drugs; (2) foreign nationals who admit to using drugs face difficulty obtaining admission into the

United States; thus, (3) Prince Harry's presence in the United States suggests that "government

impropriety" is afoot." Def. Reply at 5.  Elegant, but a complete strawman.  Plaintiffs have

always been clear that their case turns on the specific records assembled here, the nature, type,

location, and timing of the drug use (including admission to *post*-entry conduct), the intersection

of that drug use with specific admissions regarding HRH's decision to enter the United States, a

detailed application and parsing of those facts to immigration law and present procedure.  *E.g.*

---

right.  The point at issue is *arrest* of criminal aliens.  *Union Leader*, 749 F.3d at 48–49.
Defendant submits *Union Leader* involved a delay "in performing a *statutory duty*", *i.e.*, direct
evidence of "possible negligence or impropriety" in failing to perform that statutory duty in a
timely manner.  Def. Reply at 7 (emphasis added).  (The relevant statute is 8 U.S.C. § 1126(c)).
Defendant's position is directly contrary to the view of the Solicitor General of the United States.
The Solicitor General was *explicit* last term that "Section 1226(c) does not displace the
Executive's traditional discretion over decisions to apprehend individuals not yet in its custody"
and that this position "adhered to [Defendant's] longstanding view that subsection (c)(1) leaves
intact its discretion as to the apprehension of those not yet in its custody."  Brief of the United
States, at 27–28, *United States v. Texas & Louisiana*, No. 22-58 (Sept. 12, 2022).
*Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019).  Defendant confusingly argues
Rojas "is inapposite because the requester sought email addresses for Federal Aviation
Administration employees, not a private individual."  Def. Reply at 8.  But again, Plaintiffs make
no factual comparison (*see* Plts. Mot. at 19, 24, 33), and Exemptions 6 and 7(C) apply to agency
officials just as much as to private individual.  *See* Panter Decl. ¶¶ 28–29 invoking Exemption
7(C) as to USCIS employees); Declaration of Shari Suzuki ¶¶ 25–27 (Aug. 24, 2023) (ECF No.
23-5) ("Suzuki Decl.") (same as to CBP employees).  And nothing in the *ratio* of *Rojas* cited by
Plaintiffs' turned on the status of the requested records.  *See* Plts. Mot. at 19, 24, 33.
*Roth v. DOJ*, 642 F.3d 1161 (D.C. Cir. 2011).  Defendant alleges Plaintiffs quotation (Plts. Mot.
at 20) was selective because Plaintiffs failed to include the "public interest" at issue in *Roth* was
"corroborat[ing] a death-row inmate's claim of innocence" and that therefore *Roth* is inapposite
because "Prince Harry's presence in the United States is not a threat to a potentially innocent
person's life."  Def. Reply at 8 n. 4.  But again, the public interest in question has nothing to do
with the cited holding—the nature of evidence necessary to overcome *Favish*.  *See* Plts. Mot. at
20.

Plts. Mot. at 2.  In that Defendant simply does not respond to Plaintiffs' actual submission, this Court should deem the matter conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488 at *2.

 **2.** Defendant's attack does not even level its own strawman.  It consists of underdeveloped arguments (which this Court has discretion to disregard) that have no coherent logic.

 *First*.  Defendant starts by arguing that Plaintiffs cannot clear *Favish* because they "do not know all the facts and circumstances behind Prince Harry's application."  Def. Reply at 5. True enough, but what of it?  The entire point of this lawsuit is to obtain that complete picture. What matters here is a *threshold* showing under *Favish*.  It may well be that one of the illegal aliens at issue in *Union Leader* was actually Carlos the Jackel's equal in avoiding detection, but what mattered was a *threshold* showing to clear *Favish*.  749 F.3d at 56.

 *Second*.  Defendant's next volley is that "the declarations and other materials that Plaintiffs submit reveal that there are ways in which Prince Harry could have gained admission, including with a diplomatic visa, or a Section 212(d)(3) waiver."  Def. Reply at 5; *see also id.* at 7.  This argument is extraordinary.  It also is so underdeveloped that this Court may refuse to consider it.  *See Fling v. Martin*, No. 19-cv-693 (CJN), 2020 WL 4569335, at*2 n.5 (D.D.C. Aug. 8, 2020); *Rodriguez v. Penrod*, No. 18-cv-240 (CJN), 2020 WL 686012, at *9 n.5 (D.D.C. Feb, 11, 2020).

 Start with the obvious.  The argument is a non-sequitur.  Basic logic dictates that the fact that there are multiple avenues by which one could lawfully be in the United States does not mean that Defendant acted appropriately in admitting that individual; government abuse could occur in either or both channels.

10

For the first time in its Reply, Defendant seriously contends that the Duke of Sussex, no longer a working Royal, is nonetheless in the United States on a diplomatic visa which would require that he be "an ambassador, public minister, or career diplomatic or consular officer who has been accredited by a foreign government, recognized de jure by the United States and who is accepted by the President or by the Secretary of State, and the members of the alien's immediate family".  8 U.S.C. § 1101(a)(15)(A)(i).

To start, that argument proves too much in that if the Duke of Sussex actually is here on a diplomatic visa, that diplomatic accreditation would be in Defendant's files and is responsive to Plaintiffs' FOIA Request.  One cannot seriously assert a privacy interest in the fact that they are an accredited diplomat.  The Defendant would be required to disclose the materials related to the diplomatic note.  *See* Declaration of Art Arthur at App. A (Oct. 9, 2023) (ECF No. 28) ("Arthur Decl.") (discussing required diplomatic note). [3]

Moreover, it is simply bizarre without more to suggest that the Duke of Sussex is diplomatically accredited to the United States given:  (1) the relative spontaneity of his decision to take up residence in the United States (*see, e.g.*, Arthur Decl. at ¶ 29); and (2) the fact that the British Government removed official security from the Duke of Sussex in February of 2022 because he was no longer a working Royal and diplomatic status was never mentioned in HRH's subsequent action for judicial review.  *See* App. D. 387–88; *King on the Application of the Duke of Sussex v. Sec. of State for the Home Dep't*, [2023] EWHC 1228 (Admin); *Queen on the*

---

[3]  Defendants have not asserted 8 U.S.C. § 1202(f) via Exemption 3.  *Cf.* Def. Reply at 4. Therefore, the issue is waived.  *CREW IV*, 854 F.3d at 79–80.  And in any event the disclosure bar under 8 U.S.C. § 1202(f) would not extend from the matter of the visa to the separate (albeit admittedly related) issue of accreditation.  *See Darnbrough v. U.S. Dep't of State*, 924 F.Supp.2d 213, 218 (D.D.C. 2013) (8 U.S.C. § 1202(f) only applies to issuance and refusal of "visa applications").

*Application of the Duke of Sussex v. Sec. of State for the Home Department*, [2022] EWHC 1936 (Admin).  The Government's position simply blinks reality and courts are "'not required to exhibit a naiveté from which ordinary citizens are free.'"  *Dep't of Comm. v. New York*, 139 S.Ct. 1551, 2575 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)).

Finally, if the Duke of Sussex was granted a diplomatic visa without a diplomatic note it would be both illegal and a massive abuse of power that easily clears the *Favish* standard.  Put differently, the Government's suggested other avenue of admission could be construed as a tacit admission of rank impropriety.

*Third*.  Defendant submits that "[a]dditionally, even if Prince Harry did receive a Section 2[12](d)(3) waiver, the fact that he received a waiver *could not* establish government impropriety.  'There are no set written standards governing waivers under section 212(d)(3)(A) of the INA.' Arthur Decl. ¶ 21; Saunders Decl. ¶ 16."  Def. Reply at 5 (emphasis added). Defendant appears to argue in a sentence that there cannot be "government impropriety" in granting a waiver under 8 U.S.C. § 1182(d)(3)(A) ("Section 1182(d)(3)(A)") as a *categorical* matter ("could not") because the agency lacks written standards.  This germ of an argument should not be considered.  *See Fling*, 2020 WL 4569335, at*2; *Rodriguez*, 2020 WL 686012, at *9.  And on its merits, it is absolutely extraordinary.

It is a fundamental premise of Ango-Saxon law that discretionary decisions can and should be reviewable even when the agency has written standards to guide its own discretion. And the related principle that an entirely discretionary decision can be an utterly improper, immoral, and scandalous act has even earlier roots.  *See, e.g.*, 2 Samuel 11 (King James) (King David and Uriah the Hittite).

12

Closer to hand, Defendant ignores that there *are* standards governing review of Section 1182(d)(3)(A) waiver decisions.  *See, e.g.*, Arthur Decl. ¶ 31 (discussing standards per *Matter of Hranka*, 16 I&N Dec. 491, 492 (BIA 1978)).  Indeed, Section 1182(d)(3)(A) waivers would likely be reviewable under the Administrative Procedure Act but for 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdictional ouster clause.  *See, e.g.*, *Vega v. USCIS*, 65 F.4th 469 (9th Cir. 2023).  And at a higher-level, other provisions of law clearly impact the exercise of discretion for purposes of *Favish*.  The absence of written standards does not change the fact that, for example, it is *improper* (although perhaps not *illegal*) for government discretion to be exercised purely as a political favor.

*Fourth.*  Defendant argues that Plaintiffs cannot use the fact that all available information shows the Duke of Sussex's entry process did not reflect the usual delay and complexity associated with the waiver process, indicating possible preferential treatment.  Def. Reply at 6.  Defendant argues: (1):  "Plaintiffs contend that Prince Harry entered the United States 'with ease' but cite no facts to support this statement" (Def. Reply at 6 (citing Plts. Mot. at 27); and (2) that "[t]he date in which Prince Harry first sought admission is not publicly known."  *Id.*

This is just wrong.  The record provides a wealth of details on the Duke of Sussex's ease of entry, making the decision to take up *residence* (not to temporarily seek refuge) in the United States sometime in March of 2020, and entering on March 14, 2020, around 6:00 a.m.  *See* App. D 386–91; *Harry & Meaghan*, Netflix, Episode 6.  And the date of application for admission is documented by the video selfie on *Netflix*, when what the Duke of Sussex termed his "freedom flight" landed and he presented himself for admission.

**3.**      Defendant finally addresses *Muchnick v. DHS*, 225 F.Supp.3d 1069 (N.D. Cal. 2016) in its Reply.  But yet again, Defendant has no answer for *Muchnick*.

First, Defendant argues *Muchnick* is different because the immigrant in question, George Gibney ("Gibney") was "criminally charged", but not proceeded against because limitations had run, and therefore "in contrast to Gibney, a credibly accused sexually violent predator, Prince Harry simply admitted to abusing illegal substances." Def. Reply at 7.  That is no answer. Indeed, it shows the strength of Plaintiffs' case.  A *charge* is not a *conviction*, and the conduct Gibney was *charged* with is generally not a ground for exclusion absent *conviction*.  *See* Plts. Mot. at 21–22.  Indeed, *Defendant* makes this point elsewhere.  *See* Def. Reply at 3 (noting the Duke of Sussex was not "convicted for a drug-related offense).  But an admission to the essential elements of a drug offense *is* a ground of exclusion.  8 U.S.C. § 1182(a)(2)(A)(i)(II).

Second, Defendant relatedly argues "[c]ommon sense dictates that the public's interest in knowing how a credibly accused sexual predator, with allegations that spanned decades, came to be living in the United States for twenty-five years is at a significantly higher ebb than how someone who wrote a book admitting to using drugs came to be living in the United States." Def. Reply at 7–8.  But again, that is no answer.  "[C]redibl[e] or not Gibney was merely *accused*—the Duke of Sussex *admitted* the conduct in question, to great profit, with a hint of pride.  *See e.g.*, Am. Compl. ¶ 36, 46.  And on first principles, Defendant completely ignores the profile of the Duke of Sussex—this is not just another case of "someone who wrote a book" it is the handling of an extraordinarily high-profile case in a manner that is highly suspect and in which the Government's conduct has been *extensively* questioned in the press.  And again, while the Defendant may consider Gibney "credibly accused" conduct more grave than HRH's *admitted* conduct; Congress does not for immigration purposes.

**B.     Understanding the Exercise of Discretion in a High-Profile Case:  Did the Government Pull its Punches?**

14

Plaintiffs explain at length that under controlling D.C. Circuit precedent there is a weighty public interest in understanding how the Defendant exercised its discretion in this highest of high-profile cases.  *See* Plts. Mot. at 24–25.

1.      Defendant's principal response appears to be that "to the extent that Plaintiffs are relying on an assertion that the government may have 'pulled its punches' in taking any adverse action against Prince Harry, Cross-Mot at 31, that analysis is part of the *Favish* inquiry, *CREW v. Dep't of Just.*, 854 F.3d 675, 683 (D.C. Cir. 2017); *Prop. Of the People [I]*, 310 F.Supp.3d at 70 (citing *CREW*, 746 F.3d at 1093)."  Def. Reply at 10.  That is just plain wrong.  *See CREW v. DOJ*, 746 F.3d 1082, 1094–95 (D.C. Cir. 2014) ("*CREW III*") (expressly rejecting Government's argument that *Favish* controlled writing "*Favish* was such a case . . . but this is not.  CREW alleges no impropriety on the part of the FBI or the DOJ; it has nonetheless established a sufficient reason for disclosure independent of any impropriety:  ''[M]atters of substantive law enforcement policy are properly the subject of public concern,' whether or not the policy in question is lawful.'" (internal citations omitted)); Plts. Mot. at 24.

*CREW IV* was very clear as to the public interest present:  "As we explained at length in our previous opinion, *see CREW I[II]*, 746 F.3d at 1092–96, a 'weighty public interest' is present here: the interest in finding out "how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct.'  *Id.* at 1092–93."  *CREW IV*, 845 F.3d at 382.

*CREW IV*'s only mention of *Favish* was to cite it for the unremarkable position that "when conducting this balancing, it is *CREW*'s burden to "show the information is likely to advance" the public interest in learning whether DOJ pulled its punches.  854 F.3d at 683 (quoting *Favish*, 541 U.S. at 172).  That proposition speaks to standards *generally* as the

sentence before demonstrates, "the citizen must show that the public interest sought to be advanced is a significant one." *Favish*, 541 U.S. at 172.  (The *Favish* "standard" for potential government impropriety is not found until page 174 of the opinion.).

> The portion of *Property of the People I* Defendant relies on states:

> Plaintiffs next speculate that these records might reveal "whether such a prominent and influential public figure was subjected to the same investigative scrutiny as ordinary citizens." Pl. MSJ at 13. The D.C. Circuit has allowed that the public may have an interest in whether the FBI "pulled its punches" when investigating high-profile targets. *See CREW* [*III*], 746 F.3d at 1093. Critically, however, when "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174.

310 F.Supp.3d at 70.  With respect, the *Property of the People* opinion is just wrong.  It provides no reasoning for its holding and does not even consider the fact that the D.C. Circuit expressly *rejected* the application of the *Favish* standard in *CREW III*, 746 F.3d at 1094–95.[4]

    **2.**      Defendant next appears to rehash its prior argument that releasing a single individual's records *cannot* state a public interest in informing the public about Defendant's exercise of discretion.  Plaintiffs have already explained that is contrary to controlling D.C. Circuit law.  *See* Plts. Mot. at 24–25.  Perhaps realizing this point, Defendant trots out a revised version of its argument attempting to distinguish that authority via *Property of the People I* arguing that Plaintiffs' FOIA Request does not seek information about a particular investigation, but about an individual.  *See* Def. Reply at 9 (citing *Property of the People I*, 310 F.Supp.3d at 69.  *Property of the People I* distinguished *CREW III* and related cases because in that case the requestor sought information about an *investigation*, here requestor sought "records related to a

---

[4] There is no bar to a requester asserting both a public interest under *Favish* and the broader interest in understanding how the government is exercising its discretion. *See, e.g.*, *Codrea v. ATF*, No. 21-cv-2201 (RC), 2022 WL 4182189, at *8–9 (D.D.C. Sept. 25, 2023).

particular *individual*." 310 F.Supp.3d at 69.  Whatever the merits of that holding, it does not

apply here.  The request in *Property of the People* swept extraordinarily broadly:  "[a]ny and all

records mentioning or referring to the living person Donald John Trump' from June 14, 1946, to

June 15, 2015." *Id.* at 62 (internal citation omitted).  Any investigation involving President

Trump would be swept in, on any number of potential subjects.  Here, by contrast Plaintiffs

focus on a specific proceeding—The Duke of Sussex's admission to the United States in light of

his illegal drug use.  That keeps the case within *CREW III*.  *Cf. Property of the People v. DOJ*,

405 F.Supp.3d 99, 115–16 (D.D.C. 2019) ("*Property of the People II*") (distinguishing *Property

of the People I* because Plaintiffs shifted their focus from a Congressman generally to that

Congressman's role in Special Counsel Robert Mueller's investigation).

Defendant's only other response is a variation of the theme that Plaintiffs' cases are

inapposite because "Plaintiffs here seek information about how the Government handled a

particular foreign national's admission into the United States, not an investigation into corruption

by a high-ranking government official."  Def. Reply at 10.  That argument ignores Plaintiffs

previous explanation that the status of the official in question runs only to the profile of the case;

it is not a necessary condition (*see* Plts. Mot at 26. n.23) and furthers the Government's failure to

consistently acknowledge the immense profile of HRH.

C      **Defendant's Failure to Traverse Plaintiffs' Expert Declarations Requires
       Judgement for Plaintiffs.**

Given the complexities in overlying the known factual record on the intricacies of the

immigration law applicable here, Plaintiffs submitted the Declarations of two Experts, Andrew

Arthur, and Leonard D.M. Saunders.  *See* Arthur Decl.; Declaration of Leonard D.M. Saunders

(Oct. 9, 2023) (ECF No. 27) ("Saunders Decl.") (collectively "Plaintiffs' Experts").  Relevant

here, both opined the *Favish* standard was met in this case.  *See* Arthur Decl. at ¶ 20 ("it is my

opinion that the current record 'warrant[s] a belief by a reasonable person that the alleged

Government impropriety might have occurred.'  *Nat. Archives & Records Admin. v. Favish*, 541

U.S. 157, 159 (2004)"); *id.* at ¶¶ 19–33; Saunders Decl. at ¶¶ 15–29.  They also opined that

"understanding how DHS adjudicated the Duke of Sussex's waiver (if it did so at all) under

section 212(d)(3)(A) of the INA, 8 U.S.C. § 1182(D)(3)(A) would provide the public with not

only the ability to know if the government "pull[ed] its punches" in a high-profile case, but

would more importantly provide the public with valuable lessons about *how* DHS is exercising

its discretion."  Arthur Decl. at ¶ 39; Saunders Decl. at ¶ 35.

Defendant does not in any way challenge Plaintiffs' Experts or their opinions.  They do

not attack the basis of the Expert's qualifications.  *See, e.g.*, *Long v. USCIS*, No. 5:17-cv-506

(BKS), 2020 WL 5994182, at *3 (N.D.N.Y. Oct. 9, 2020) (rejecting Government's objection to

expert witness's qualifications); *Snyder v. Dep't of Def.*, No. 03-cv-4992 (VRW), 2005 WL

8177543, at *2 (N.D. Cal. Feb. 2, 2005) (sustaining Government's objection to putative expert's

qualifications.).  Nor did the Government challenge the basis of Plaintiffs' Experts' knowledge.

*See, e.g.*, *Pub. Citizen Rsch. Grp. v. Nat'l Inst. of Health*, 209 F.Supp.2d 37, 45–46 (D.D.C.

2002) (rejecting challenge on basis of expert's knowledge).  And Defendant certainly has not

sought a *Daubert* hearing.  Nor has Defendant put forward its own expert declarations despite

being the agency largely in charge of immigration in the United States.

Indeed, the *only* references to Plaintiffs' Experts' Declarations in Defendant's Reply are

to:  (1) *rely* on the Arthur Declaration to argue HRH may have a diplomatic visa (Def. Reply at

4–5); (2) rely on the Arthur Declaration's acknowledgement that the Duke of Sussex could be

admitted on a non-immigrant visa with a Section 1182(d)(3)(A) waiver (*id.* at 8); and (3) restate

Plaintiffs' Experts' opinion "that obtaining a waiver is an 'extremely difficult and lengthy

process,' and 'any waiver would likely require a lengthy processing time and a number of affirmative steps to examine his drug use.'"  *Id.* at 5–6.[5]

      Given Defendant's complete failure to traverse Plaintiffs' Experts' Declarations and opinions this Court can and should treat any and all issues related to the competence or relevance of Plaintiffs' Experts' opinions as conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosari*o, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488 at *2.  And on a record where there is undisputed relevant expert testimony that is dispositive, the law of summary judgement requires ruling for Plaintiffs on those points.  *See, e.g.*, *Scudder v. CIA*, 25 F.Supp.3d 19, 43 (D.D.C. 2014); *Gov. Accountability Project v. FDA*, 206 F.Supp.3d 410, 439 (D.D.C. 2016); *cf. e.g.*, *Wash. Post. Co. v. U.S. Dep't of State*, 840 F.2d 26, 30–31 (D.C. Cir. 1988), *vacated on other grounds*, 898 F.2d 793 (1990) (dispute of fact on declarations resolved through traditional adversary methods); *Cabezas v. Fed. Bureau of Prisons*, No. 20-cv-2484 (CJN), 2023 WL 6312349, at *3 (D.D.C. Sept. 28, 2023) (judgment precluded by dueling factual declarations).

## IV.    THE PUBLIC INTEREST IN DISCLOSURE OUTWEIGHS THE DUKE OF SUSSEX'S PRIVACY INTERESTS.

### A.    Defendant Cannot Sustain its *Glomar* of Records Relating to Section 1182(d)(3).

      Plaintiffs' Motion explained in detail that Defendant could not maintain its *Glomar* because the supporting declarations are deficient in that they do not explain why disclosure would harm the interests protected by the Exemptions, and that under the facts publicly disclosed

---

[5] Defendant uses this last citation to set-up its submission that "Plaintiffs contend that Prince Harry entered the United States 'with ease' but cite no facts to support this statement."  Def. Reply at 6.  That argument is wrong, *see supra*.  And Defendant disregards the detailed factual basis Plaintiffs' Experts provided for their opinion on that point.  *See, e.g.*, Arthur Decl. at ¶¶ 22–31; Saunders Decl. at ¶¶ 17–27.

by the Duke of Sussex he either committed a felony and lied to the or has a Section 1182(d)(3)(A) waiver.  Plts. Mot. at 27–29.

      1.     Defendant does not answer the objection to its Declarations (*see* Plts. Mot. at 28–29), it simply repeats its earlier submission and adds that a Section 1182(d)(3)(A) waiver would confirm HRH holds a nonimmigrant visa (true).  Def. Reply at 12.  What of that?  That is not a careful consideration of the Duke of Sussex's diminished privacy interests, the weighty public interests present, and the balancing of those interests in the *specific context* of the mere existence of a Section 1182(d)(3)(A) waiver.  And *that* specificity is what is required to sustain a *Glomar*. *See Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018); *Cabezas*, 2023 WL 6312349, at \*2–3.

      2.     As to the publicly known facts, Defendant aggressively attacks the fact that if the Duke of Sussex told the truth, he would require a Section 1182(d)(3)(A) waiver.  *See* Def. Reply at 3–4.  Start with the fact that Plaintiffs' Experts opined a Section 1182(d)(3)(A) waiver would be required if HRH was truthful and Defendant does not attack that opinion.  *See* Arthur Decl. at ¶¶ 14–15; Saunders Decl. ¶¶ 11–12.  That alone dispenses with Defendant's objection.

      On the merits, Defendant's argument is both wrong and upside down.

      Defendant's submission is wrong because nothing in Statute or 9 Foreign Aff. Manual 302.4-2(B)(4) proscribes "established procedures" to secure a "legally valid admission" in the relatively unique context of this case.  Def. Reply at 4.  The referenced "procedural safeguards "[were] adopted for the purpose of insuring that the alien would receive fair play and to preclude any possible later claim . . . that he had been unwittingly entrapped into admitting the commission of a crime involving moral turpitude." *Urzaua Covarrubias v. Gonzalez*, 487 F.3d 742, 749 (9th Cir. 2007) (quoting *Matter of K—*, 7 I & N Dec. 594, 597, 1957 WL 10581 (BIA 1957)).  Those procedures apply to a custodial interrogation.  Accordingly, these procedures

have been held inapplicable to voluntary admissions to a government psychiatrist conducting an examination required for admission because the psychiatrist "had no reason to suspect that *Pazcoguin* would admit to having used marijuana, and her examination was not conducted for the purpose of obtaining any such admission." *Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1217 (9th Cir. 2002). So to as to statements made under oath with one's attorney present. *See Urzua Covarrubias*, 487 F.3d at 749. These "required procedures" are in a different world from the situation here—an admission by the party in question *in writing*. How can such a statement possibly fall within the need for "procedural safeguards" to protect the declarant? *Cf.* Fed. R. of Evid. 801(d)(2) (statement by a party opponent is not hearsay).

Defendants' argument is upside down because even if it is correct it presumes that Defendant, confronted with the Duke of Sussex's extensive record of illegal drug use, both its admission (and then HRH's admission to post-entry use (*see* Arthur Decl. at ¶ 31)) did absolutely nothing, which would be an extraordinary dereliction of duty and itself compelling grounds for disclosure.

**B.    Defendant's Categorial Withholdings Cannot be Sustained.**

Plaintiffs' Motion explained at length that Defendant's declarations simply do not sustain its *categorical* burden. Plts. Mot. at 29–32. Once more Defendant has no coherent response.

**1.**    Plaintiffs' Motion explained that Defendant's declarants did not even consider the public interest under the *CREW IV* and *CREW III* line of cases in "how DHS exercised its discretion in a high-profile immigration case involving repeated admissions to use of illegal drugs." Plts. Mot. at 30. Defendant's only response is to rehash perfunctory statements that "the way the Department handled one particular matter would not shed light on the components' performance of their statutory duties" citing to single sentence *ipse dixit* in the Panter and Suzuki

Declarations.  Def. Reply at 13.  *See* Panter Decl. at ¶ 25 (single sentence *ipse dixit*); Suzuki Decl.¶ 21 (same); *id.* at ¶ 37 (same).  As this Court recently explained more is required.  *See Cabezas*, 2023 WL 6312349, at *2.

      **2.**      Plaintiffs' Motion explained by way of example how Defendant's single sentence *ipse dixit* did not suffice under this Court's explication of D.C. Circuit precedent in *Cabezas*. Plts. Mot. at 31.  Defendant does not respond to this argument at all; it is conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488 at *2.

      **3.**      Plaintiffs also explained how Defendant's analysis was entirely conclusory: Defendant's declarants merely stated a harm would occur, but failed to explain in any way the mechanism of the harm, or to explain the specific balance of harm in each and every case or to explain why that balance "characteristically tips in one direction" in every case.  *DOJ v. Reporter's Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989).  *See* Plts. Mot. at 31–32. Defendant does not address that argument (or the authority on all fours, *Muchnick v. DHS*, No. 15-cv-2060 (CRB), 2016 WL 730291, at *2, *4 (N.D. Cal. Feb. 24, 2016)).  Yet again, that argument is conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488 at *2.

      **C.**      **The Balance of Interests Favors Disclosure.**

      Plaintiffs' Motion sets forth at length how the balance of interests favors disclosure based on a number of factors relied on by courts.  Plts. Mot. at 33–38.  Defendant did not respond.  The matters are conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–10; *Tobias*, 2021 WL 4262488 at *2.

## V.       THIS COURT SHOULD RESOLVE ANY DOUBTS VIA *IN CAMERA* REVIEW.

Plaintiffs' Motion sets forth at length why this Court should conduct *in camera* review if it had any doubts as to the merit of Plaintiffs' position.  Plts. Mot. at 38–41.  Defendant has no coherent answer to this argument.

1.       Defendant's argument starts by conceding, as it must, that whether to conduct *in camera* review is committed to this Court's sound discretion.  Def. Reply at 13.  But Defendant then immediately pivots to argue "courts, however, generally rule on FOIA actions based on agency declarations without *in camera* review of documents unless there is a showing of bad faith." *Id.* at 13.  That of course is not the law in this Circuit as this Court well knows—bad faith is but one of many factors the Court can consider.  *See, e.g.*, *ACLU v. CIA*, No. 18-cv-2784 (CJN), 2022 WL 306630, at *2 (D.D.C. Feb. 2, 2022) (under controlling authority "The district court has 'broad discretion' to decide whether conducting *in camera* inspection would be helpful" and ordering *in camera* review); *Nat'l Pub. Radio v. FBI*, 486 F.Supp.3d 293, 305 (D.D.C. 2020), *on reconsideratio*n, 539 F.Supp.3d 1 (D.D.C 2021) (discretion includes the authority to conduct *in camera* review as an aid to decision out of an "abundance of caution"); *Burnett v. DEA*, No. 19-cv-870 (CJN), 2021 WL 1209142, at *7 (D.D.C. Mar. 31, 2021) ("The Court of Appeals has set forth criteria for determining the need for such review, including:  (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) possible bad faith on the part of the agency, (4) whether the agency proposes *in camera* review, (5) disputes concerning the content of the document, and (6) the strong public interest in disclosure.").  Defendant's contrary citations are badly misleading.[6]

---

[6] Defendant first cites *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C. Cir. 1984), but the quoted portion says nothing about bad faith and the cited provision makes clear that bad faith is

**2.**      Defendant next submits that at a general and global level "*in camera* review is not necessary because, as explained above, Defendant's declarations adequately explain why the information responsive to Plaintiffs' request is being withheld under Exemptions 6 and 7(C), and in their cross-motion for summary judgment, Plaintiffs' have not alleged bad faith."  Def. Reply at 14.  Erroneous.

Start with the fact that Plaintiffs most certainly *have* alleged bad faith as to the Suzuki Declaration—there is an entire motion on that point.  *See* ECF No. 30.  Moreover, Plaintiffs *have* shown deficiencies in Defendant's Declarations on the key points in dispute.  Plts. Mot. 27–32.

Continue to the fact that this argument does not engage at all with the sophisticated and flexible analysis that guides a District Court's discretion—it seeks to simply collapse the "merits" with whether *in camera* review is justified, erasing any role for *in camera* review in the words of Defendant's own authority "on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination" (*Ray*, 587 F.2d at 1195) or in the words of this Court, in an "abundance of caution".  *Nat'l Pub. Radio,* 486 F.Supp.3d at 305.[7]

**3.**      Next (and fatally), Defendant does not respond at all to Plaintiffs' detailed cross-walk of the facts in this case to the specific factors the D.C. Circuit and this Court have identified

---

but a factor that justifies *in camera* review.  *Id.*  Next, Defendant cites *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978), but the entirety of the quoted language cannot be found in the opinion.  In any event *Ray* demolishes Defendant's assertion:  "*In camera* inspection does not depend on a finding or even tentative finding of bad faith.  A judge has discretion to order *In camera* inspection on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination." *Ray*, 587 F.2d at 1195.  Finally, Defendant cites *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  But *Hayden* is in the same vein as *Ray*.  *Id.*

[7]  Defendant also invokes this Court's opinion in *Jud. Watch v. DOJ*, 616 F.Supp.3d 13, 25 n.7 (D.D.C. 2022) for the proposition that caution must be exercised in ordering *in camera* review for fear of inadvertent release of the information at issue.  Def. Reply at 14.  Fair enough, but Defendant has demonstrated that (if necessary) the applicable factors support *in camera* review (and Defendant has conceded much of this point).

to guide judicial discretion in ordering *in camera* review.  *See* Plts. Mot. at 38–40.  That

omission is particularly glaring in that Defendant does not engage *at all* with cases ordering *in*

*camera* review in the *specific context* of the assertion of Exemptions 6 or 7(C) as concerns

immigration records.  *See, e.g.*, *Mezerhane de Schnapp v. USCIS*, 67 F.Supp.3d 95, 103–104

(D.D.C. 2014); *Gosen v. USCIS*, 75 F.Supp.3d 279, 289–90 (D.D.C 2014); *Phillips*, 385

F.Supp.2d at 306.  On its own, this omission is sufficient for this Court to deem the point

conceded.  *See Judicial Watch*, 2022 WL 898825 at *8; *Bautista-Rosario*, 568 F.Supp.3d at 9–

10; *Tobias*, 2021 WL 4262488 at *2.

    **4.**    Finally, Defendant submits that "should the Court find that Defendant has not

sustained its burden, the Court should order submission of new declarations to address any

shortcomings."  Def. Reply at 15.  True enough, courts have discretion to take this approach.

But application of reasoned discretion indicates this approach is not prudent here.  The main

thrust of Plaintiffs' submission as to *in camera* review stems from the relatively low number of

records, the fact the asserted exemptions require fact specific balancing often best conducted

with the actual record to hand, and the immense efficiencies recognized by other judges in this

District who ordered *in camera* review in similar cases.  Plts. Mot. at 38–40.  *Those* factors stand

substantially independent from declarations.

## CONCLUSION

    Defendant's Motion for Summary Judgement should be denied.  Plaintiffs' Cross-Motion

for Summary Judgement should be granted; Defendant's *Glomars* and categorical withholding

rejected; and Defendant should be required to produce appropriately redacted records with a

record-by-record *Vaughn* Index.

    Dated:  December 4, 2023             Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*