IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-1198 (CJN) |
| U.S. DEPARTMENT OF HOMELAND SECURITY | ) ) ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY AND CLARIFICATION**

Plaintiffs submit this Notice to provide the Court with the attached supplemental authority, *R (Duke of Sussex) v. Secretary of State for the Home Department*, [2024] EWHC 418 (Admin), which (to the best of Plaintiffs' knowledge) provides substantial additional previously non-public information related to the timeline of events in January–March of 2020 and to clarify a statement by Plaintiffs' Counsel during the February 23, 2024 oral argument.

1.   **Supplemental Authority.**

Plaintiffs submit that Mr. Justice Lane's Judgement will be helpful to the Court. The Judgement provides additional authoritative detail on the decision of HM Government, acting through the Executive Committee for the Protection of Royal and Public Figures ("RAVEC"), in February of 28, 2020 to remove security in the United Kingdom from the Duke of Sussex effective after a transition "'no later than 31 March 2020.'" *Id.* at [7] (internal citation omitted).[1]

---

[1] RAVEC governs security for the Royal Family and others within the United Kingdom. Security abroad was governed during the relevant time period by the Royal and Ministerial Visits Committee ("RMV"). *Id.* at [17]. RMV also removed security from the Duke of Sussex and

To Plaintiffs' knowledge, much of this detail was not previously publicly available. *Cf.* App. D at 387–88; *R (Duke of Sussex) v. Secretary of State for the Home Department*, [2023] EWHC 1228 (Admin), [1], [3]; *R (Duke of Sussex) v. Secretary of State for the Home Department*, [2022] EWHC (Admin) 1936, [2], [5]. Plaintiffs submit two aspects of the attached Judgement support their submissions.

*First*. Plaintiffs submit that Mr. Justice Lane's detailed recitation of the official record reinforces Plaintiffs' argument that it would be extraordinary for HM Government to have issued the diplomatic note necessary for the Duke of Sussex to enter the United States around the same time HM Government was deliberating on: (1) the process that led to the February 28, 2020 decision by RAVEC to withdraw royal security; or (2) implementing that decision.[2] *See*, *e.g.*, Transcript of Oral Argument at 48:18–22 (May 23, 2020) (ECF No. 37) ("Trans."). The record demonstrates HM Government took a hardline against providing the Duke of Sussex with official benefits while he lives a private life. *See R (Duke of Sussex)*, [2024] EWHC 418 at [4]–[10] (summarizing February 28, 2020 decision); *id.* at [11]–[21] ("*Dramatis Personae*"); *id.* at [22]–[62] (background of February 28, 2020 decision). HM Government's position against

---

informed him of that decision by letter dated March 12, 2020. *Id.* at [61], [65]. Both RAVEC and RMV provide security in large part through the Metropolitan Police Service ("MPS"), which appears to provide a common link between the entities. *See id.* [7], [40], [48]. The RMV Chairman also serves on RAVEC. *Id.* at [74].

[2] *See* 8 U.S.C. § 1101(a)(15) ("The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—(A)(i) an ambassador, public minister, or career diplomatic or consular officer who has been accredited by a foreign government, recognized de jure by the United States and who is accepted by the President or by the Secretary of State, and the members of the alien's immediate family; (ii) upon a basis of reciprocity, other officials and employees who have been accredited by a foreign government recognized de jure by the United States, who are accepted by the Secretary of State, and the members of their immediate families. . . ."); Plaintiffs' Reply Memorandum, at 11 (Oct. 9, 2023) (ECF No. 35) (discussing 8 U.S.C. § 1101(A)(15)(A)(i)); Declaration of Andrew Arthur at Ex. 1 at 3–4 (Oct. 10, 2023) (ECF No. 28) (discussing diplomatic note requirement).

providing official benefits to the Duke of Sussex extended to "rule[ing] . . . out" the "Royal Household . . . pay[ing] for security delivered by the MPS". *Id.* at [28]; *accord id.* at [30].

*Second*.  Plaintiffs submit the Judgment reinforces the fact that the Duke of Sussex intended to reside in Canada in 2020 and made a sudden, abrupt, and apparently unplanned decision to enter the United States to take up residence on March 14, 2020.  *See, e.g.*, Trans. at 20:14–23.  Mr. Justice Lane recounts that the February 28, 2020 decision was expressly predicated on "the change in roles of the claimant and his wife from full-time working members of the Royal Family to privately-funded members of the Family; *and of their decision to spend the majority of their time in Canada for the next 12 months at least*." *Id.* at [5] (emphasis added); *id.* at [8] (referencing "'private arrangements if any are being made for his security in Great Britain to link with and complement those which are being put in place in *Canada*'" (internal citation omitted) (emphasis added)).  Mr. Justice Lane's timeline is clear that both HM Government and the Duke of Sussex's Private Secretary operated under the core fact that the Duke of Sussex and his family intended to reside in Canada in 2020.  *See id.* at [30] (circa January 16, 2020:  "What followed in the email was said to be on the assumption that the couple 'would essentially become private citizens and would spend much of the year in *Canada*'" (internal citation omitted) (emphasis added)); *id.* at [34] ("The Government's advice would be for the claimant and his wife to contract a private security team, which had the confidence of the *Canadians*, as well as having a [redacted text]." (emphasis added)); *id.* at [44] (February 18, 2020:  "The letter said Sir Mark was reassured to understand that Sir Edward had begun to develop options for private provision for the relocation of the claimant and his wife to *Canada*."

(emphasis added)); *id.* at [63] (March 2, 2020: "The discussion included the issue of arrangements that needed to be put in place regarding *Canada*."(emphasis added)).[3]

2. **Clarification of Plaintiffs' Counsel's Statement.**

The undersigned counsel stated at oral argument: "At that time, January 18th is the so-called Sandringham statement. The Queen takes him back. He does not have any official duties at that point." Trans. at 48:5–17. Counsel was imprecise. Her late Majesty the Queen's statement of January 18, 2020 announced the Duke of Sussex was stepping back from all official duties and that statement clearly demarked for the world that the Duke of Sussex was giving up any official role. However, to be precise, the Duke of Sussex technically remained a "working royal" until April 1, 2020. That said, the public record reveals he was not assigned any new official duties during that transition. He performed a handful of (it appears) residual, previously scheduled Royal engagements ending with the Commonwealth Day Service of March 9, 2020 in London and took measures to implement his transition to private life. To be precise, Counsel should have stated that on the public record the Duke of Sussex was not assigned any new official duties following Her late Majesty the Queen's statement of January 18, 2020. Counsel for Plaintiffs apologize to the Court and the Government for any possible confusion; they only recently identified the need for clarification upon careful review of the argument transcript. It is not material in any way to Plaintiffs' submissions that: (1) It is not really plausible to believe the Duke of Sussex entered the United States on March 14, 2020 on a Class A or "diplomatic" visa;

---

[3] To be sure, at one point the Judgement references that "[w]hat [A] had been doing on the claimant's behalf was "scoping what 'best in class' commercial security provision is available in Canada and the US". *Id.* at [52]. However, this is but a fleeting reference to the United States without context, and it does not change that both the Duke of Sussex in *Spare* (App. D 387–88), and HM Government and the Duke of Sussex's staff through the facts recounted by Mr. Justice Lane, all seemed to find common ground that the Duke of Sussex and his family intended to take up residence in Canada, until they did not, and immediately moved to the United States.

or (2) alternatively, if Defendant somehow allowed the Duke of Sussex to enter on March 14, 2020 on a Class A visa, Defendant's conduct would raise extreme red flags.

Dated: March 9, 2024                             Respectfully Submitted

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone: (703) 261-4194
Email: samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone: (202) 489-2969
Email: Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*