IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br><br>*Defendant*. | Case No. 23-cv-1198 (CJN) |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs submit this Notice to provide the Court with supplemental authority.

**I.   STATEMENTS BY THE HON. JEAN HARTLEY, THE UNITED STATES AMBASSADOR TO THE COURT OF ST. JAMES'S (UK).**

Defendant has repeatedly maintained in this litigation that it *cannot* reveal *any* information that would provide *any* insight into HRH Prince Henry Charles Albert David George, the Duke of Sussex, Earl of Dumbarton, and Baron Kikeel K.C.V.O.'s ("HRH" or "Duke of Sussex") immigration status.  *E.g.*, Transcript of Oral Argument at 4:16–19 (Feb. 23, 2023) (ECF No. 37) ("Arg. Trans.") ("The reason for the categorical withholding and the partial *Glomar* is none of the information that we have can be released without acknowledging what Prince Harry's immigration status is or tipping our hand as to what it is.").[1]  But on March 25,

---

[1] *See also* Declaration of Jarrod Painter at ¶¶ 16, 19–20 (Aug. 28, 2023) (ECF No. 23-3); Second Declaration of Shari Shazuki at ¶¶ 21, 25–26 (Aug. 24, 2023) (ECF No. 23-5); Declaration of Catrina Pavlik-Keenan at ¶ 24 (Aug. 25, 2023) (ECF No. 23-8); Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgement at 15–17 (Aug. 28, 2023) (ECF No. 23-1); Combined Reply in Support of Defendant's Motion for Summary Judgement and Memorandum in Opposition to Plaintiffs Cross-Motion for Summary Judgment at 1, 10–11 (Nov. 13, 2023) (ECF No. 31) ("Def. Reply").

1

2024, the Hon. Jane Hartley, the United States Ambassador to the Court of Saint James's ("Ambassador Hartley") did just that.  In a television interview with *Sky News*, Ambassador Hartley spoke directly not only to the Duke of Sussex's current immigration status, but HRH's future immigration status as well:

> KAY BURLEY:  Apparently, President Trump says that he thinks that he might deport Harry if he becomes president.
> JANE HARTLEY:  Um, what can I say?  I didn't hear that.
> KAY BURLEY:  It's not going to happen, though, is it?
> JANE HARTLEY:  Well, it's not going to happen in the Biden administration.
> KAY BURLEY:  There we are.  There we are.

Sky News Transcript at 8:16–23 (Mar. 25, 2024) ("SN Trans.") (Exhibit 1 to the Fifth Declaration of Samuel Everett Dewey (Apr. 10, 2024) ("5th Dewey Decl.")).[2]  This statement is extraordinary.

*First*.  Ambassador Hartley spoke directly to some of the very information concerning the Duke of Sussex's immigration status sought by Plaintiffs' FOIA Request—information DHS has repeatedly told this Court must be kept confidential.  We now know that regardless of what occurred with the "red flags" raised on the publicly known facts (Arg. Trans. at 42:12–14), the Duke of Sussex will not be deported.

*Second*.  The Government has now admitted to an additional aspect of Government misconduct under *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157 (2003) concerning the Duke of Sussex's immigration records.  Ambassador Hartley categorically stated that the Duke of Sussex will not be deported by the Biden Administration.  Thus, the Executive Branch has now categorically stated that, regardless of future circumstances, they will decline to deport

---

[2]  *See also* https://news.sky.com/video/in-full-kay-burley-speaks-to-us-ambassador-to-the-uk-13101233 (last visited Apr. 12, 2024) (full video).  The former President's comments were made on March 19, 2024 during an interview with *GB News* (*see* Dewey Decl. Ex. 2 at 22:24–25:8), and on February 24, 2024 to the *Daily Express US* (*see* Dewey Decl. Ex. 3).

the Duke of Sussex—even in the most extreme of cases. *See, e.g.*, 8 U.S.C. § 1228 (expedited removal for aggravated felonies). Even under the Government's own (incorrect) reading of relevant authorities, that clears the *Favish* bar with considerable room to spare. *See* Def. Reply at 6–7 (discussing *Union Leader Corp. v. DHS*, 749 F.3d 45 (1st Cir. 2014)); *see also* Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgement at 8 n.2 (Dec. 4, 2023) (ECF No. 35) ("Plts. Reply") (same). Thus, Ambassador Hartley's statements dramatically enhance the already compelling public interest in disclosure.

      *Third*. To be sure, the Government has the prerogative to selectively release the Duke of Sussex's immigration information. But that choice can and should impact the Court's resolution of this case. First off, the choice to selectively disclose while simultaneously vigorously resisting any disclosure in this matter can and should be considered in evaluating the Government's Declarations. To start, the categorical statements of the Government's Declarants that disclosure cannot and ought not occur (*see supra* note 1) are now repudiated. *Some* information clearly *can* be released. More fundamentally, the Government's choice to disclose some information selectively for what many may see as a political or tactical benefit, requires review of the Government's submissions that the disclosure will harm the Duke of Sussex's privacy interests with (at the most charitable) healthy skepticism. *Cf.* Notice of Compliance (Apr. 4, 2024) (ECF No. 41). Combined with the prior affirmative bad faith of Customs and Border Protection's Declarant, it would justify this Court exercising its discretion up to and including disregarding the Government's Declarations and concluding there is no proper submission of harm to the Duke of Sussex's privacy interest in this record to weigh against the compelling public interest in disclosure. *See* Plaintiffs' Motion to Strike the Declaration of Shari Suzuki or in the Alternative for Limited Discovery (Oct. 9 2023) (ECF No. 30); Plaintiffs' Reply

3

in Support of Motion to Strike the Declaration of Shari Suzuki or in the Alternative for Limited Discovery (Dec. 4, 2023) (ECF No. 34).

Beyond the Government's Declarants, the Government's choice to make certain information about the Duke of Sussex's immigration status publicly available for what may be political gain should cut in favor of disclosure in the required balancing. It demonstrates both the power and salience of the information Plaintiffs seek and that information's significance in media and political discourse, both factors which favor disclosure. *See* Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgement and In Opposition to Defendant's Motion for Summary Judgment at 36–37 (Oct. 9, 2023) (ECF No. 26-1) ("Plts. Mot.").

*Fourth*. Ambassador Hartley's statement cannot be dismissed as uninformed or idle polite speculation or conversational puffery. It is a categorical statement in response to a question based on the fact that the "red flags"[3] raised in this case have been widely discussed in both the press and as salient points of political debate. Put differently, according Ambassador Hartley and her staff the presumption they are about their business, Ambassador Hartley knew full well that the question had media and political salience, and yet she still spoke directly to the issues being litigated in this case by answering the question. Moreover, the full *Sky News* interview shows that Ambassador Hartley knows full well how to decline to comment on

---

[3] Arg. Trans. at 42:12–14 (Court).

hypothetical questions (she did so twice)[4] and how to decline to answer questions as to which she lacked sufficient knowledge (she again did so twice)[5].

*Fifth*.  Ambassador Hartley is a constitutional principal officer exercising a direct delegation of the President's Constitutional powers.  *See, e.g.*, *Officers of the United States Within the Meaning of the Appointments Clause*, 31 OLC 73, 92 (2007) ("the power of a diplomatic office is peculiarly delegated directly by the President, who makes such officers 'the unquestionable representatives *pro tanto* of the sovereignty of the United States.'" (internal citation omitted)); *id.* (discussing ambassadors status as Constitutional principal officers noting "[t]o the Founders, the proper exercise of such sovereign authority by officers abroad was critical for the security of the Nation.").  Ambassador Hartley clearly made her statements in her official capacity.  That is how *Sky News* billed the interview (*see* 5th Dewey Decl. at ¶ 7); that is how it was captioned by *Sky News* (*see supra*, at n.3); and that is how the Ambassador herself

---

[4] SN Trans. at 3:15–22 ("KAY BURLEY:  As a proud American, do you, at any stage, worry that the Oval Office may, to all intents and purposes, have to be turned into a prison cell if President Trump finds himself in a position where he's at the wrong side of the law?  JANE HARTLEY: Listen, I can't go there.  It is a hypothetical.  I do have confidence in my country, and I do have confidence in the American people.  I think they'll make the right decision."); *id.* at 4:12–5:3 ("KAY BURLEY:  Do you think the world would be a safer place or less safe place with President Trump in charge?  JANE HARTLEY: Well, listen, I don't—it's once again a hypothetical, and—KAY BURLEY:  It is.  JANE HARTLEY:—I don't like commenting on that, but if you look at what President Biden has done, in contrast to what President Trump may do, and I don't know what he's going to do, I don't know him, but support for Ukraine.  The US has given $75 billion to Ukraine.  Jake Sullivan was just there yesterday.  Our commitment is strong and it's personal.  President Biden cares about this.  NATO, you just asked, another example.  Our support for NATO and how important we think international cooperation, supporting democracy, supporting freedom.  I don't know what the Trump administration will do, but I know that's what President Biden stands for.").

[5] SN Trans. at 6:14–15 ("KAY BURLEY:  Do you still think that Israel is acting within international law?  JANE HARTLEY:  I don't know enough about that."); *id.* at 7:24–8:6 ("KAY BURLEY:  President Putin has said that he was hugely victorious in his election.  Marina Litvinenko, who, I'm sure, you will know, said, 'You can't call it an election.  It was an event.' What would you call it?  JANE HARTLEY:  Well, I don't know enough about it, but looking at other Russian elections, I would say she might be right.").

categorized the video in three separate postings on her official X (formerly Twitter) account (*see* 5th Dewey Decl. at ¶ 8).

Ambassador Hartley's statements were an authorized disclosure within the meaning of FOIA. The Ambassador is clearly authorized (and has apparent authority) to speak on matters of United States immigration policy of interest to the United Kingdom. *See Officers of the United States*, 31 OLC at 91 ("There also are diplomatic offices. They have the delegated sovereign authority to speak and act on behalf of the United States toward or in other nations, whether executing the laws or otherwise"); *see also Hourani v. Mirtchev*, 796 F.3d 1, 13–14 (D.C. Cir. 2015) (general power of an ambassador to bind their State); *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1295–96 (11th Cir. 1999) (same); *Jota v. Texaco, Inc.*, 157 F.3d 153, 162 (2d Cir. 1998) (same). At no time has Ambassador Hartley retracted her statement concerning the Duke of Sussex. And at no time has a superior officer in the United States Government done so.

## II. *UNITED FOR FBI INTEGRITY V. DOJ*, NO. 22-cv-2885 (RC), 2024 WL 961001 (D.D.C. MAR. 6, 2024) ("OPINION").

Judge Contreras's recent opinion supports a number of Plaintiffs' submissions.

*First.* The Opinion correctly recognizes and articulates that *Favish* is not a high bar—rather it simply requires "Plaintiff . . . [to] provide[] evidence that creates more than a bare suspicion of impropriety." 2024 WL 961001, at *12; *accord* Plts. Mot. at 18–20; Plts. Reply at 8. In the same vein the Opinion acknowledges that circumstantial evidence, *i.e.*, a showing that it would be "reasonable to believe" the key operative fact occurred or to "support a belief" impropriety "may" have occurred, suffices under *Favish*. 2024 WL 961001, at *12; *accord* Plts. Mot. at 18–20; Plts. Reply at 8.

*Second*.  The Opinion reaffirms the longstanding rule that important questions about how an agency enforces the law is a public interest that does not require a showing under *Favish* and that can be advanced by a single case study.  *See* 2024 WL 961001, at *14–*15; *accord* Arg. Trans. at 13:5–11 (Court noting authority that "individual cases" can warrant disclosure); Arg. Trans. at 12–13 (Government conceding that general premise); Plts. Mot. at 24–25; Plts. Reply at 15–17.

*Third*.  The Opinion provides additional guidance on the Court's prescient questions concerning what factors to consider in balancing the public interest in disclosure against the Duke of Sussex's privacy interest (while bearing in mind the D.C. Circuit's instruction that because the applicable test is highly factual, each case will be unique).  *See* 2024 WL 961001, at *16–*17; *accord* Arg. Trans. at 27:13–25, 30:1–5 (Court's questions).  The Opinion is additional authority for the proposition that when a substantial amount of information is already public, that reduces the applicable privacy interest, and that that reduction has real weight in the ultimate balancing.  *See* 2024 WL 961001, at *15; *accord* Arg. Trans. at 32:9–33:15 (Court and Plaintiffs' Counsel discussing this point).  The Opinion also confirms that the public interest in disclosure of potential government wrongdoing once the *Favish* burden has been met is great and that the balancing of interests should reflect that fact.  *See* Arg. Trans. at 30:6–13, 31:10–32:5 (Court and Plaintiffs' Counsel discussing point).  Finally, the Opinion confirms that the Court should ensure there is a "fit" between the requested information and the asserted public interest, or put differently, that the information is necessary to advance the public interest.  *See* 2024 WL 961001, at *16.  As to the Duke of Sussex the "fit" is abundant; the strong public interests present here cannot be advanced without disclosure of the limited information sought by Plaintiffs' FOIA Request.  *See, e.g.*, Plts. Mot. at 36–37; Plts. Reply at 16–17.

Dated:  April 12, 2024                                Respectfully Submitted

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*