IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-1198 (CJN) |
| U.S. DEPARTMENT OF HOMELAND SECURITY | ) ) ) ) | |
| *Defendants*. | ) ) | |

**MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(E)**
**(ORAL ARGUMENT REQUESTED)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   RULE 59 STANDARD. ................................................................................................ 2

    II.  *EX PARTE* PROCEEDINGS ARE HIGHLY DISFAVORED. ...................................... 3

    III.     THE *EX PARTE* PROCEEDINGS HERE WERE IMPROPER AND PREJUDICIAL. ............................................................................................................... 4

        A.  The Court Failed to Comply with D.C. Circuit Precedent............................................ 4

        B.  The Consideration of *Ex Parte* Materials was Prejudicial............................................. 5

           1.  The Court's Opinion Turned Entirely on the Sealed Materials. ............................... 5

           2.  *Ex Parte* Declarations Likely Contained Legal Argument or Were Made in Bad Faith. ................................................................................................................ 7

           3.  No Procedures Were Employed to Minimize the Impact of the Additional *Ex Parte* Proceedings. ................................................................................................. 9

    IV. BRIEFING ON MEASURES TO AMELIORATE THE LACK OF ADVERSARIAL TESTING IS APPROPRIATE WHERE THE ENTIRE *RATIO* OF THE COURT'S DECISION IS REDACTED. ...................................................................................... 11

CONCLUSION............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462 (D.C. Cir. 1983) .......................................... 3, 4, 11, 12

*Armstrong v. Exec. Off. Of the Pres.*, 97 F.3d 575 (D.C. Cir. 1996) ...................................... 3, 4, 5

*Browning v. Info. Comm.*, [2014] EWCA Civ 1050 ....................................................................... 12

*Cabezas v. Fed. Bureau of Prisons*, No. 20-cv-2484 (CJN), 2023 WL 6312349 (D.D.C. Sept. 28, 2023) ................................................................................................................................. 8

*Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175 (1968) ...................................... 3

*Lykins v. DOJ*, 725 F.2d 1455 (D.C. Cir. 1984) ......................................................................... 4, 5

*Nat. Pub. Radio v. FBI*, 539 F.Supp.3d 1, 7 (D.D.C. 2021) ............................................................ 2

*Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061 (D.C. Cir. 2023) ..................................................................................................................... 4

*Schaerr v. DOJ*, 69 F.4th 924 (D.C. Cir. 2023) ............................................................................. 8

*Shapiro v. DOJ*, 239 F.Supp.3d 100 (D.D.C. 2017) ...................................................................... 3

*United State v. DeSilva*, ---F.Supp.3d---, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024) ...................................................................................................................................... 3

*United States v. Arpaio*, 887 F.3d 989 (9th Cir. 2018) ................................................................ 11

**Statutes**

8 U.S.C. § 1202(f) ....................................................................................................................... 2, 9

**Rules**

Fed. R. Civ. P. 59(e) ........................................................................................................................ 2

Fed. R. of Evid. 706 ...................................................................................................................... 11

# INTRODUCTION

With the utmost respect, the totality of the collective proceedings in this case run afoul of the D.C. Circuit's ironclad guardrails on conducting *ex parte* proceedings. The D.C. Circuit is clear that in a FOIA case the Court must review the responsive records *in camera* prior to seeking *in camera* declarations. That was not done here. Moreover, there was no explanation of these proceedings in the manner the D.C. Circuit requires. Finally, additional *ex parte* proceedings were conducted without being docketed despite the fact that parts of those proceedings were made public in this Court's Memorandum Opinion granting the Government Summary Judgment (ECF No. 48) ("Op." or "Opinion").

Collectively, these errors were not harmless.

First. The operative parts of the Opinion are entirely redacted. Neither Plaintiffs nor the public know anything about the core *ratio* on which the Opinion rests. Indeed, the nature of the Opinion is such that the adversarial process would be impacted not only in this court, but in the extreme difficulty in framing issues for appellate review based on redacted reasoning.

Second. The public record suggests that the *ex parte* declarations may well have contained improper argument or misleading information. One of the *ex parte* declarations was from Shari Suzuki who was the subject of the Motion to Strike on grounds of bad faith, and the Government's prior affidavits contained legal argument and factual conclusion about the Duke of Sussex's immigration records made (apparently) without the benefit of having actually searched for and reviewed those records. The inability of Plaintiffs to counter the *ex parte* declarations on that record undermines the adversarial process particularly given that immigration is a highly technical field and Plaintiffs' two experts were unable to opine on the factual statements in the *ex parte* submissions.

1

Third.  There was *ex parte* correspondence in which the Court "asked the government whether it would be willing to produce additional records relating to [REDACTED]" (Op. at 6 n.2) and the Government responded to the Court's inquiry with an *ex parte* filing resting upon (apparent) legal argument concerning the scope and operation of 8 U.S.C. § 1202(f) (Op. at 6 n.2).  That correspondence was not docketed in redacted form despite this Court finding it appropriate for redacted release in the Opinion.  That deprived Plaintiffs of an opportunity to mitigate the lack of adversarial testing, such as by requesting leave to argue questions of law concerning which agencies have custody of records or the scope of 8 U.S.C. § 1202(f), which was disputed by the parties at oral argument.

In light of the foregoing, this Court should vacate its opinion and order, enter all *ex parte* correspondence on the docket, unseal *ex parte* correspondence consistent with the Opinion, direct the Plaintiffs to brief any legal issues raised in the *ex parte* declarations or relating to the *ex parte* declarations, and allow Plaintiffs to brief procedures to ameliorate the lack of adversarial testing.[1]

## ARGUMENT

### I. RULE 59 STANDARD.

As this Court has explained, Fed. R. Civ. P. 59(e) "permits reconsideration when 'there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Nat. Pub. Radio v. FBI*, 539 F.Supp.3d 1, 7 (D.D.C. 2021) (citations omitted).  Courts have "a large measures of discretion in deciding to grant relief", but that discretion must be exercised "'sparingly' and only in 'extraordinary circumstances.'"  *Id.* at 7–8. (citation omitted).  That said, this Court has held that reconsideration is generally

---

[1] Defendant opposes this Motion.

2

appropriate in FOIA cases where the Government presents "new facts." *Id.* There is no particular reason to confine this reasoning to the Government; if the facts on the ground change, reconsideration should run both ways. This Court has also previously granted reconsideration where a serious issue arose which had not previously been considered and addressed by the parties. *See United State v. DeSilva*, ---F.Supp.3d---, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024) (reconsidering guilty verdict upon discovery of error in jury instructions).

## II. *EX PARTE* PROCEEDINGS ARE HIGHLY DISFAVORED.

In this Circuit, "[w]hereas the use of *in camer*a review is generally encouraged, the use of *in camera* affidavits has generally been disfavored. Case law in this Circuit is clear that when a district court uses an *in camera* affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party." *Armstrong v. Exec. Off. Of the Pres.*, 97 F.3d 575, 580 (D.C. Cir. 1996). As then-Judge Scalia put it, *ex parte* affidavits are permissible only "where absolutely necessary." *Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983). This is because *in camera* filings are at odds with the "strong presumption in favor of public access to judicial proceedings," and because *ex parte* proceedings deprive the Court of the "benefit of criticism and illumination" that comes with the arguments of opposing counsel." *Shapiro v. DOJ*, 239 F.Supp.3d 100, 110–11 (D.D.C. 2017) (cleaned up); *see also, e.g.*, *Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 183 (1968) ("The value of a judicial proceeding . . . is substantially diluted where the process is *ex parte*, because the Court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate.").

The D.C. Circuit has explained that because of the strong presumption against *ex parte* declarations, they should be accepted "if, and only if, '(1) the validity of the government's assertion

3

of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061, 1065 (D.C. Cir. 2023) (quoting *Arieff*, 712 F.2d at 1471).

Closely related to extreme disfavor of *ex parte* proceedings is the rule that relevant material must be at least filed on the docket ex parte under seal unless the mere filing of the docket entry would significantly harm the secret interest at stake. *See, e.g.*, *Al-Hela v. Biden*, 66 F.4 217, 240–41 (2023) (*ex parte* proceedings must be docketed).

## III. THE *EX PARTE* PROCEEDINGS HERE WERE IMPROPER AND PREJUDICIAL.

### A. The Court Failed to Comply with D.C. Circuit Precedent.

This Court failed to comply with the D.C. Circuit's mandatory procedures. As just explained, the D.C. Circuit has been clear that is a mandatory procedural step to first review the records in question *in camera*. This was not done. Indeed, although it is not clear, it appears from the Opinion that the Court did not review the full set of responsive records *in camera* even contemporaneously with the *ex parte* declarations. *See* Op. at 5. Additionally, prior to seeking *in camera* declarations, this Court should have "justified" the use of *in camera* filings "to the greatest extent possible on the public record." *Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984). Finally, this Court should have conducted and docketed an independent analysis of whether any portion of the *ex parte* declarations could be released. *See, e.g.*, *Armstrong*, 97 F.3d at 581; *Lykins*, 725 F.2d at 1465.

4

### B.     The Consideration of *Ex Parte* Materials was Prejudicial.

To be sure, improper receipt of an *ex parte* declaration is subject to harmless error analysis. *Armstrong*, 97 F.3d at 581. That analysis focuses on whether there is a breakdown of the adversarial process. *Id.* Here there appears to have been. First, the entirety of the ratio of the Opinion turns exclusively on the *ex parte* submissions. *See Lykins*, 725 F.2d at 1465 ("In short, appellant had no opportunity to challenge the government's claim of exemption")[2]; *cf. Armstrong*, 97 F.3d at 581 (harmless error where most records were produced). Second, there is every reason to believe that legal argument was contained in the *ex parte* declarations and one of the declarants had previously acted in bad faith. Third, procedures were not put in place to minimize the non-adversarial portions of the litigation particularly as it concerns the Court's failure to docket certain *ex parte* proceedings.

### 1.     The Court's Opinion Turned Entirely on the Sealed Materials.

The Opinion makes any effort at an appeal difficult. Plaintiffs simply do not know *ratio* of the Court's decision.

First. Plaintiffs posited that there were likely two ways the Duke entered the United States: (1) disclosing his drug use and obtaining a waiver; or (2) failing to disclose his drug use. Under either scenario the Government would have committed misconduct. However, the Court has redacted the operative portion of its Opinion on this point. Op. at 11. To be sure, the Opinion does provide some context to the redacted portion to the reasoning:

> As Heritage puts it, "[I]f the records fail to shed light on those questions, or show that in fact the expected impropriety did not occur then the case immediately is at an end; there is no need to evaluate the sufficiency of Plaintiffs' asserted public interest or conduct the

---

[2] To be sure, *Lykins* was a more extreme case in that even the claimed exemptions were not properly revealed, but the principle is the same; the decision turned on sealed material and thus Plaintiffs had no way to adversarially test it.

> complex balancing inquiry. Judgement may simply be entered for Defendant." *See* Pl. Cross-Mot. for Summ. J., ECF No. 26-1 at 46.

Op. at 11. But the obvious issue is that it is unclear if the records reflect nothing useful or if there is some independent reason to conclude the impropriety did not occur. If it is the latter, and the Duke of Sussex did not enter the country in a manner that included questioning on his drug use such as on a diplomatic visa or parole, or received some sort of diplomatic expedition, then that action would also have been improper and Plaintiffs should have been able to brief those issues and, where relevant, provide opinions from their experts.

Second. On a related line of argument, the Opinion sustains Defendant's *Glomar* response as to a Section 1182(d)(3)(A) waiver in a FN immediately following the redacted argument thus discussed. *See* Op. at 11 n. 4 ("For the reasons discussed above, disclosing that information would infringe on the Duke's reasonable expectation of privacy in his immigration records without a sufficiently strong public interest in them.").

Third. The Court rejected Heritage's argument "that the records will help the public better understand how the Department conducts itself and how its officials exercise discretion" on the grounds that "[p]ublic disclosure of records about a single admission of a foreign national *in the circumstances described above* would provide the public, at best, limited information about the Department's general policy in admitting aliens." Op. at 11–12 (emphasis added). But of course, the "circumstances described above", *i.e.*, the circumstances of the Duke of Sussex's entry are entirely redacted. *See* Op. at 5–6, 10, 11.

Fourth. It is unclear to what extent the redacted reasoning also affects the unredacted portion of the Court's opinion. For example, United States Citizenship and Immigration Services ("USCIS") only asserted Exemption 6, which requires a showing that disclosure would be a "clearly unwarranted" imposition on the Duke of Sussex's privacy. But the Court used the

language of the more privacy deferential Exemption 7(C) for its analysis of all withholdings. *See, e.g.*, Op. at 11–12 ("Whatever Interest the Public Has in Disclosure of the Records is *Outweighed* by the Duke's Privacy Interest" (emphasis added)). Without the key redacted reasoning, Plaintiffs are unable to confirm if there is a potential issue as to the standards applied in the Opinion.

### 2. *Ex Parte* Declarations Likely Contained Legal Argument or Were Made in Bad Faith.

The Department's past practice suggests that its *ex parte* declaration likely contained legal arguments and misrepresentations. Consider the first declaration the Department provided. Shari Suzuki advanced several legal conclusions. *See e.g.* ECF No. 23-5 at ¶ 21 ("Release of the Duke's personal information to a third party without the Duke's authorization would constitute a clearly unwarranted invasion of privacy."); *id*. at ¶ 37 ("The minimal amount of information of interest to the public revealed by the treatment of one individual does not shed enough light on CBP's conduct to overcome the Duke of Sussex's privacy interest in his encounters with CBP or in any information in CBP's records related to this immigration status."). This practice was not limited to Ms. Suzuki. Declarant Jarrod Panter concluded "[w]hen government misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary to confirm or refute that evidence." ECF No. 23-3 at ¶ 19. Declarant Catrina Pavlik-Keenan concluded:

> Merely alleging wrongdoing, however, is insufficient to establish public interest; the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety may have occurred. Plaintiff has failed to provide such evidence in this case. As such, Plaintiff has failed to show that public interest outweighs the Duke of Sussex' right to personal privacy.

7

ECF No. 23-8 at ¶ 26.  Moreover, the Suzuki Declaration cannot be read without considering the prior bad faith that Plaintiffs' laid out in detail in their Motion to Strike.  *See* ECF No. 30-1 at 2–10.  Indeed, Defendant did not contest that Ms. Suzuki maintained a frivolous *Glomar* assertion—surefire bad faith.  *See* ECF No. 34 at 2.

Another concern is that Defendant's *ex parte* Declarants made statements without knowing what the records contained in their earlier public declarations.  Following the Court's March 7, 2024 Order, Defendant moved for an extension to submit its declarations because it had not yet conducted a search for the *Glomar*-ed records.  ECF No. 40 at ¶ 4.  Specifically, the Government asserted "Defendant now needs to conduct a search in order to provide a meaningful response to the Court's order" (*id.*) to provide declarations "that detail, with particularity, the records it is withholding and the particular harm that would arise from public disclosure of them."  *Id.* at ¶ 3 (quoting ECF No. 38 at 2).

To be sure, an agency is generally not required to run a search when they *Glomar* records.  That makes sense because in many cases where a *Glomar* is employed such as national security or law enforcement, it does not matter what is contained in the records; they are either all classified or the fact of the investigation is not public.  *See e.g.*, *Schaerr v. DOJ*, 69 F.4th 924, 928–29 (D.C. Cir. 2023) (Exemptions 1 and 3).  But as to Exemptions 6 & 7 as the Court's Opinion recognizes, the inquiry requires record by record balancing of interests; the content of the record matters to record specific balancing.  *See* Op. at 10–12.  That is precisely why categorical withholding is so disfavored.  *See, e.g.*, *Cabezas v. Fed. Bureau of Prisons*, No. 20-cv-2484 (CJN), 2023 WL 6312349, at *3 (D.D.C. Sept. 28, 2023).  Put differently, the Defendant has no basis for the *Glomar* without knowing what is actually in the records.  *Cf. Schaer*, 69 F.4th at 929 ("The Agencies were not required to search for responsive records because they properly issued *Glomar* responses that

8

cited an applicable FOIA exemption and explained with reasonable specificity the basis for their response."). That the Declarants did not do this work calls into question their representations that everything was assuredly confidential. They did not know what they did not know.[3]

These issues render the lack of adversarial process to be particularly serious at two levels. At the more concrete level, Plaintiffs were unable to respond to *ex parte* declarations that they believe must be viewed as highly suspect. Most critically, Plaintiffs were deprived of the opportunity to have their experts review Defendant's *in camera* filings. Plaintiffs' experts may disagree with factual statements in the *ex parte* declarations for reasons that would not be readily apparent to anyone but an expert in the field of immigration. On the law, Plaintiffs were unable to brief any legal issues raised by the *ex parte* declarations. It may well be that Plaintiffs could have briefed legal questions in the abstract without revealing any protected information.

### 3. No Procedures Were Employed to Minimize the Impact of the Additional *Ex Parte* Proceedings.

The Opinion revealed that following the Department's original *ex parte* filing, the Court requested additional records related to a redacted topic, but the Department refused on the grounds that 8 U.S.C. § 1202(f) prohibits the Department of State—not a party to this action—from releasing records "pertaining to the issuance or refusal of visas or permits to enter the United States." *See* Op. at 6 n.2. It is unclear from the Court's footnote if the Department refused to do so on the grounds that the identified records were not responsive to the request or if the claim is that the Department of State was the custodian of the records.

This raises a number of issues related to whether the Court took the required steps to mitigate and minimize the effects of the *ex parte* proceedings on the adversarial process.

---

[3] Of course, the actual search would not be revealed if it supported the *Glomar*.

9

To start, the fact that the Court acknowledged this procedure occurred indicates that it found no issue with disclosing those facts on the public docket. But the pertinent order and the Department's response were not docketed (even in redacted form). This impermissibly deprived the Plaintiffs of their ability to seek further unsealing or even join issues. Had Plaintiffs been aware of these *ex parte* proceedings, they would have sought additional unsealing and to brief at least two separate issues and may well.

First, Plaintiffs would have sought additional unsealing or provision of some form of summary information to allow Plaintiffs to understand whether the records in question where in fact responsive to the Plaintiffs' FOIA Request and in Defendant's possession, but deemed to be State Department records.

Second, the reason Plaintiffs would have sought additional detail about the records in question is that State Department records are typically included in a complete A-File maintained by USCIS. For example, the recently released A-File of Melania Trump's mother contains a number of State Department forms. *See* Declaration of Eric Neal Cornett at Exs. 1–3 (Oct. 22, 2024). If the records were in fact substantively responsive to the FOIA Request, Plaintiffs would have sought leave to brief whether Defendant's possession of a copy of the record was sufficient to compel production notwithstanding that the original of the record may have been maintained at the State Department.

Third, Plaintiffs were unable to challenge the scope of Defendant's 8 U.S.C. §1202(f) assertion. Again, State Department records are routinely produced by Defendant in A-Files, 8 U.S.C. § 1012(f) notwithstanding. And there was considerable dispute between the parties as to the construction of 8 U.S.C. §1012(f). *See* Trans. of Oral Argument at 43:7–44:13 (Defendant); 49:9–21 (Plaintiffs) (Feb. 23, 2024) (ECF No. 37).

## IV. BRIEFING ON MEASURES TO AMELIORATE THE LACK OF ADVERSARIAL TESTING IS APPROPRIATE WHERE THE ENTIRE *RATIO* OF THE COURT'S DECISION IS REDACTED.

The most obvious consequence of the entire ratio of the Court's opinion being redacted is that it severely compromises Plaintiffs' ability to prepare arguments on appeal. Moreover, it again occurred on a record that contains ample evidence of agency bad faith and arguments couched in declarations. Plaintiffs of course are not blind to the fact that they have brought a unique case that is fraught with these complexities. Plaintiffs simply submit that the way forward taken by the Court does not comport with our adversarial system. This is not an unfamiliar issue to FOIA, Justice Scalia expressed significant discomfort in reconciling FOIA to adversarial proceedings in *Arieff* when he categorically rejected making material available to Plaintiffs' Counsel under a protective order. 712 F.2d at 1469–71. But that does not mean that there are not other procedures to ensure some measure of adversarial testing even in the case of *ex parte* filings. This Court has broad powers in equity and it can work any number of solution. *See Arieff*, 712 F.2d at 1469 (discussing broad equitable procedural powers).

First, this Court clearly has the power to appoint its own expert. *See* Fed. R. of Evid. 706. Plaintiffs believe it would be appropriate to brief such an appointment here given the complex subject matter, the serious questions concerning Defendant's *in camera* submissions, and the fact that part of the lack of adversarial testing here is the inability of Plaintiffs' experts to assess any factual representations in the *in camera* declarations.

Second, Plaintiffs believe they should be permitted to brief the appointment of an amicus or "Special Advocate" to view the *in camera* filing and argue for disclosure. Courts in this county regularly appoint attorneys to argue positions as *amici*. *See, e.g.*, *United States v. Arpaio*, 887 F.3d 989 (9th Cir. 2018) (appointing "specific prosecutor" to defend contempt conviction the United

11

States decline to defend), *reh'g en banc denied*, 906 F.3d 800.  This authority is ample enough to extend to present *ex parte* argument in a manner that would ameliorate the concerns raised by Justice Scalia in *Arieff* regarding the attorney for the requestor viewing the very information in dispute or viewing private information despite being obligated to be professionally "hostile" to the individual in question.  Given the vast equitable discretion the Court enjoys it may be appropriate to consider and flesh out the fact that the common law legal system in the United Kingdom has approved the appointment of a "special advocate" in appropriate circumstances.  *See, e.g.*, *Browning v. Info. Comm.*, [2014] EWCA Civ 1050.

## CONCLUSION

This Court should vacate its opinion and order, enter all *ex parte* correspondence on the docket, unseal *ex parte* correspondence consistent with the Opinion, direct the Plaintiffs to brief any legal issues raised in the *ex parte* declarations or relating to the *ex parte* declarations, and allow Plaintiffs to brief procedures to ameliorate the lack of adversarial testing.

Dated: October 22, 2024

Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ERIC NEAL CORNETT
(No. 1660201)

Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone: (202) 489-2969
Email: Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*