UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, et. al,

    Plaintiffs,

    v.

DEPARTMENT OF HOMELAND SECURITY

    Defendant.

Civil Action No. 23-1198 (CJN)

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR RELIEF FROM JUDGMENT**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................................ i

Table of Authorities .......................................................................................................................... ii

Background ........................................................................................................................................ 1

Legal Standards ................................................................................................................................. 2

Argument ............................................................................................................................................ 3

    I.      The Court Appropriately Sought and Considered Ex Parte Declarations. .............. 3

    II.     The Court Released Sufficient Information About Its Analysis to Allow for Adversarial Testing. ............................................................................................................. 6

    III.    Plaintiffs' Assumptions About the Ex Parte Declarations Lack a Basis in Fact. ..10

Conclusion ....................................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agrama v. IRS*,
  No. 17-5207, 2019 U.S. App. LEXIS 11560 (D.C. Cir. Apr. 19, 2019) ................................... 5

*Allen v. CIA*,
  636 F.2d 1287 (D.C. Cir. 1980) ............................................................................................... 5

*Anyanwutaku v. Moore*,
  151 F.3d 1053 (D.C. Cir. 1998) ............................................................................................... 2

*Arieff v. Dep't of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983) ........................................................................................... 4, 6

*Armstrong v. Exec. Off. of President*,
  97 F.3d 575 (D.C. Cir. 1996) ................................................................................................... 6

*Associated Press v. Dep't of,
  Def.*, 549 F.3d 62 (2d Cir. 2008) ............................................................................................. 9

*Campbell v. Dep't of Health & Hum. Servs.*,
  682 F.2d 256 (D.C. Cir. 1982) ................................................................................................. 5

*Carter v. Dep't of,
  Com.*, 830 F.2d 388 (D.C. Cir. 1987) ...................................................................................... 8

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004) ................................................................................................. 3

*Clevinger v. Advoc. Holdings, Inc.*, Civ. A.,
  No. 23-1159 (JMC), 2023 WL 5220570 (D.D.C. Aug. 15, 2023) ............................................ 3

*Cobell v. Jewell*,
  802 F.3d 12 (D.C. Cir. 2015) ................................................................................................... 2

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ................................................................................................................. 8

*Dep't of State v. Muñoz*,
  602 U.S. 899 (2024) ................................................................................................................. 9

*Jud. Watch, Inc. v. Dep't of Just.*,
  365 F.3d 1108 (D.C. Cir. 2004) ........................................................................................... 8, 9

*Kattan v. District of Columbia*,
  995 F.2d 274 (D.C. Cir. 1993) ................................................................................................. 3

*Kennecott Utah Copper Corp. v. Dep't of Interior*,
  88 F.3d 1191 (D.C. Cir. 1996) ................................................................................................. 8

*King v. Dep't of Just.*,
  830 F.2d 210 (D.C. Cir. 1987) ............................................................................................... 11

*Logistics, LLC v. Dep't of Vets. Affs.*, Civ. A.,
  No. 20-0095, 2021 U.S. Dist. LEXIS 187724 (D.D.C. Sept. 30, 2021) ................................... 5

*Loving v. Dep't of,
  Def.*, 550 F.3d 32 (D.C. Cir. 2008) .......................................................................................... 3

*Lykins v. Dep't of Just.*,
  725 F.2d 1455 (D.C. Cir. 1984) ....................................................................................... 5, 6, 7

*Medina-Hincapie v. Dep't of State*,
   700 F.2d 737 (D.C. Cir. 1983) ................................................................................... 10, 11
*Montgomery v. IRS*,
   40 F.4th 702 (D.C. Cir. 2022) ............................................................................................ 5
*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ............................................................................................... 6, 7, 9
*Nat'l Ass'n of Home Builders v. Norton*,
   309 F.3d 26 (D.C. Cir. 2002) ........................................................................................... 8
*New York v. United States*,
   880 F. Supp. 37 (D.D.C. 1995) ........................................................................................ 3
*Niedermeier v. Off. of Baucus*,
   153 F. Supp. 2d 23 (D.D.C. 2001) ................................................................................... 2
*Perioperative Servs. & Logistics, LLC v. Dep't of Vets. Affs.*,
   57 F.4th 1061 (D.C. Cir 2023) .............................................................................. 3, 4, 5, 6
*Roth v. Dep't of Just*,
   642 F.3d 1161 (D.C. Cir. 2011) ...................................................................................... 11
*Schaerr v. Dep't of Just.*,
   69 F.4th 924 (D.C. Cir. 2023) ......................................................................................... 11
*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) .......................................................................................... 4
*Tax Analysts v. IRS*,
   410 F.3d 715 (D.C. Cir. 2005) ..................................................................................... 7, 9
*United States v. Armstrong*,
   517 U.S. 456 (1996) ......................................................................................................... 9
*W.C. & A.N. Miller Cos. v. United States*,
   173 F.R.D. 1 (D.D.C. 1997) ............................................................................................. 3

**Statutes**

5 U.S.C. § 552(a)(4)(B) .............................................................................................................. 8
5 U.S.C. § 706(2)(A) .................................................................................................................. 8
8 U.S.C. § 1202(f) .................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 59(e) .................................................................................................................. 2

Defendant the Department of Homeland Security ("Defendant" or "the Department") respectfully submits this memorandum in opposition to the Motion for Relief from Judgment filed by Plaintiffs the Heritage Foundation and Mike Howell (ECF No. 50, "Pl. Mot.").

## INTRODUCTION

Motions for relief from judgment are granted only in "extraordinary circumstances," and Plaintiffs fail to advance arguments demonstrating that the proceedings in this case created one of those circumstances. Plaintiffs' motion is based on their objection to the Court's handling of the in camera proceedings, but, as demonstrated below, this case presented a circumstance where the Court appropriately ordered in camera declarations to protect the information that Defendant properly withheld. The Court released sufficient information about its analysis of the in camera submissions to allow for adversarial testing. Finally, Plaintiffs' objections to the in camera proceedings are based on speculative assumptions about various documents and declarations that they have not seen and thus their allegations of bad faith should be disregarded.

## BACKGROUND

This case stems from a three-part Freedom of Information Act ("FOIA") request that Plaintiffs the Heritage Foundation and Mike Howell filed with Defendant the Department of Homeland Security ("Defendant" or "the Department") that broadly sought records related to Henry Charles Albert David, a British National, otherwise known as "Prince Harry," or the "Duke of Sussex." *See* Heritage Request (ECF No. 7-2). Defendant determined that it did not have any records responsive to the request that were not exempt from disclosure under FOIA Exemptions 6 and 7(C). *See generally* Panter Decl. (ECF No. 23-3); Suzuki Decl. (ECF No. 23-5); Pavlik-Keenan Decl. (ECF No. 23-8). Defendant acknowledged that it had possession of at least some of the records that Plaintiffs sought, Panter Decl. ¶ 16; Suzuki Decl. ¶ 16, but for others, Defendant issued a *Glomar* response, refusing to confirm or deny whether it had responsive records because

simply acknowledging whether those records exist would itself effect an unwarranted invasion of the Duke of Sussex's personal privacy. Panter Decl. ¶¶ 32-33; Suzuki Decl. ¶¶ 31-38; Pavlik-Keenan Decl. ¶¶ 18-26.

The parties cross moved for summary judgment. *See* ECF Nos. 23, 26. After briefing was complete, the Court ordered Defendant to submit ex parte declarations and exhibits for in camera review, *see* Order (ECF No. 38), and Defendant complied. Notice of Compliance (ECF No. 41). After reviewing the in camera submissions, the Court was satisfied that the Duke of Sussex's privacy interest in his immigration information outweighed any public interest, granted summary judgment in Defendant's favor, and denied Plaintiffs' cross-motion for summary judgment. See Mem. Op. at 9-13 (ECF No. 48). Plaintiffs now seeks relief from judgment, asking the Court to "vacate its opinion and order, enter all *ex parte* correspondence on the docket, unseal *ex parte* correspondence consistent with the Opinion, direct the Plaintiffs to brief any legal issues raised in the *ex parte* declarations or relating to the *ex parte* declarations, and allow Plaintiffs to brief procedures to ameliorate the lack of adversarial testing." Pl. Mot. at 5.

## LEGAL STANDARDS

"Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered." *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (citations omitted). "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) ("Rule 59(e) motions need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice" (quoting *Anyanwutaku v. Moore,* 151 F.3d 1053, 1057 (D.C. Cir. 1998)). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (cleaned up). "Rule 59(e) motions are not intended to be 'an opportunity to reargue facts and theories upon which a court has already ruled.'" *Clevinger v. Advoc. Holdings, Inc.*, Civ. A. No. 23-1159 (JMC), 2023 WL 5220570, at *1 (D.D.C. Aug. 15, 2023) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). "It is also not an opportunity for the losing party to argue new issues that could have been raised earlier." *Id.* (citing *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993)). "[N]or is [reconsideration] a means to bring before the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

## ARGUMENT

### I. The Court Appropriately Sought and Considered Ex Parte Declarations.

After hearing oral argument on the parties' motions for summary judgment, the Court ordered Defendant to submit "(*ex parte* and *in camera*) declarations detailing, with particularity, the records it was withholding and the particular harm that would arise from public disclosure of them." Mem. Op. at 4, ECF No. 48 (Sept. 23, 2024) (describing in Camera Order, ECF No. 38 at 2). In issuing this order, the Court acted within its "broad discretion" to manage proceedings in FOIA cases. *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (holding that district courts have "broad discretion" to decide if in camera submissions are "necessary to determine whether the government has met its burden").

As Plaintiffs note, Pl. Mot at 6-7, "a district court may receive an ex parte affidavit if and only if '(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted.'" *Perioperative*

*Servs. & Logistics, LLC v. Dep't of Vets. Affs.*, 57 F.4th 1061, 1065 (D.C. Cir 2023) (quoting *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983)).  The Court's order for in camera declarations was consistent with this rule because the parties' dispute of the withheld documents centered on "the contents of the withheld documents," "not the parties' interpretation of those documents."  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).

To protect the Duke of Sussex's privacy, the Department and its components, U.S. Citizen Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), and the Office of Biometric Identity Management ("Biometric Identity Office"), withheld some records in full, and refused to confirm or deny whether it had information about the Duke in some of the databases that Plaintiffs had listed in their request and whether the Duke had sought a waiver under Section 212(g) of the Immigration and Nationality Act.  Panter Decl.¶¶ 32-33; Suzuki Decl. ¶¶ 31-39; Pavlik-Keenan Decl. ¶¶ 18-26.  Rather than simply order Defendant to provide all of the records for in camera inspection the Court ordered Defendant to, "submit to the Court *in camera* a declaration or declarations that detail, with particularity, the records it is withholding and the particular harm that would arise from public disclosure of them[,]" Order at 2 (ECF No. 38), because the Court anticipated that the underlying documents would not be "all that easily decipherable without explanation."  Hearing Tr. at 51 (ECF No. 37).  In other words, the Court believed "the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves," making in camera declarations the appropriate method to evaluate the legality of the withholdings. *Perioperative Servs.*, 57 F.4th at 1065.

The public declarations provided the maximum amount of information about the documents without revealing non-public information about the Duke of Sussex's immigration

status, any immigration benefits that he sought, or any adverse actions to which he was subject. *See* Panter Decl. ¶¶ 32-33; Suzuki Decl. ¶¶ 31-38; Pavlik-Keenan Decl. ¶¶ 18-26.  Releasing any additional information on the public docket would have revealed the information that Defendant had sought to shield from disclosure. *Id.*  The Court has discretion to order in camera declarations in circumstances, like here, where revealing the existence of any document would "give away the information that the Agency was trying to withhold," *Montgomery v. IRS*, 40 F.4th 702, 713 (D.C. Cir. 2022), or "'when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed.'"  *Agrama v. IRS*, No. 17-5207, 2019 U.S. App. LEXIS 11560, at *7 (D.C. Cir. Apr. 19, 2019) (quoting *Lykins v. Dep't of Just.,* 725 F.2d 1455, 1463 (D.C. Cir. 1984); in affirming withholdings, considering agency's "public and *ex parte* disclosures"); *Campbell v. Dep't of Health & Hum. Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982) (permitting district court to use its discretion to accept in camera declarations to elaborate on Exemption 7(A) withholding, because "[m]aterials submitted to justify withholding the documents [plaintiff] requested may contain information that could itself interfere with subsequent enforcement proceedings"); *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980) ("Sufficiently detailed justifications [in public affidavits] for the agency's withholding is often impossible . . . because such justifications would reveal the very information sought to be protected.").

Plaintiffs argue that the Court must view the underlying records in camera as a prerequisite to ordering in camera declarations.  Pl. Mot. at 7.  Plaintiffs cite no authority for this argument, and indeed none exists.  On the contrary, the D.C. Circuit has affirmed the grant of summary judgment in the Government's favor where an ex parte declaration, "with its detailed description of the nature of the withheld document and the reasons underlying the exemption, was necessary to preserve the privacy of the third party involved." *Perioperative Servs. & Logistics, LLC v.*

*Dep't of Vets. Affs.*, Civ. A. No. 20-0095, 2021 U.S. Dist. LEXIS 187724, at *14 (D.D.C. Sept. 30, 2021), *aff'd*, 57 F.4th at 1065; *accord Arieff*, 712 F.2d at 1469 (recognizing that "the receipt of in camera affidavits is also, when necessary, part of a trial judge's procedural arsenal").

## II. The Court Released Sufficient Information About Its Analysis to Allow for Adversarial Testing.

The public declarations and the Court's unsealed opinion sufficiently explained why the Government withheld any responsive records in full and why the Court upheld the Government's decision. *See Armstrong v. Exec. Off. of President*, 97 F.3d 575, 581 (D.C. Cir. 1996) (affirming withholding where the overall information that was publicly available, despite submission of an in camera declaration, offered sufficient detail "'for the adversary system to function effectively in the District Court'" (quoting *Lykins*, at 725 F.2d. at 1465)). The Court made an independent determination that "the redacted Memorandum Opinion includes all of the information that can be made publicly available without disclosing information subject to properly asserted FOIA exemptions." Mem. Op. at 5 n.1. The parties agreed that the Duke had a privacy interest in the records responsive to the request. *Compare* Def. Mot. for Summ J. at 18-23 (ECF No. 23) *with* Pl. Cross Mot. for Summ. J. (ECF No. 26) at 12. Instead, the dispute turned on whether the Duke of Sussex's privacy interest outweighed the public interest in disclosure. Mem. Op. at 10-11.

Plaintiffs contended that the public interest that would come from knowing "whether [the Department] committed misconduct or acted negligently in either admitting the Duke of Sussex or allowing him to stay in the United States." *Id.* at 10 (quoting Cross Mot. for Summ. J. at 24). In other words, Plaintiffs sought to demonstrate public interest by "produc[ing] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Through its public declarations, Defendant sought to demonstrate that Plaintiffs' purported evidence of

government wrongdoing amounted merely to a "bare suspicion" of government misconduct, which is insufficient to override the Duke's privacy interests.  *Id.;* Panter Decl. ¶¶ 21-25, Suzuki Decl. ¶ 27; Pavlik-Keenan Decl. ¶ 26.  Rather than take these declarations at face value, the Court sought supplemental declarations and other materials that contained facts about the Duke's immigration status and entry into the United States.  Mem. Op. at 10-11.  Based on these facts, the Court did not find evidence of government impropriety.  *Id.* at 11.  Even Plaintiffs admitted that if the records show that the "expected impropriety did not occur then the case is immediately at an end[.]"  Cross Mot. for Summ. J. at 11.  Plaintiffs argue that they did not have the opportunity to adequately respond to this determination because the circumstances regarding the Duke's entry are redacted.  Pl. Mot at 8-9.  But accepting this argument would give Plaintiffs a back door to obtaining the information that the Court has already determined that the government properly withheld.  *Cf. Tax Analysts v. IRS*, 410 F.3d 715, 722 (D.C. Cir. 2005) (reasoning that "[Appellant's] demand for further inquiry into the substance of the documents would, if granted, turn FOIA on its head, awarding Appellant in discovery the very remedy for which it seeks to prevail in the suit").

      The in camera proceedings in this case contrast with those in *Lykins*, the case on which Plaintiffs primarily rely to argue that the in camera proceedings were improper.  Pl. Mot at 7-8.  The court in *Lykins,* 725 F.2d at 1465, was troubled because the public version of the declaration did not "discuss the question of what parts of the report might be segregable and therefore subject to disclosure, nor does it relate particular parts of the report to particular FOIA exemptions."  The *Lykins* declaration instead explained how releasing the record would disrupt the plaintiff's progress at the psychiatric facility where he was being held.  *Id.* at 1464.  Here, in contrast, the Department and its components identified in the public declarations the FOIA exemptions relied upon, detailed the reasons they were claimed, and explained that there was no meaningful non-exempt

information that could be segregated for release. *See generally* Panter Decl., Suzuki Decl., Pavlik-Keenan Decl. The Court concluded, "based on the public and *in camera* record, that the non-exempt portions of the documents that Heritage requests are not reasonably segregable from the exempt portions, and that there would be no marginal public value in what would remain unredacted." Mem. Op. at 12 n.5.

Plaintiffs argue that if there is some independent reason why impropriety did not occur, then "Plaintiffs should have been able to brief those issues and, where relevant, provide opinions from their experts." Pl. Mot. at 9. Importantly, in evaluating whether Defendant properly withheld information under both Exemptions 6 and 7(C), the Court was tasked with deciding whether the Duke's privacy interest in the records outweighed the public interest in disclosure. *Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same"). "[U]nless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Plaintiffs are asking the Court for much more.

In contending that they are entitled to submit supplemental briefing and expert declarations on potential impropriety, Plaintiffs seek to turn this FOIA case into an Administrative Procedure Act case. They are essentially asking the Court for the opportunity to contend that the Government's decision to admit the Duke of Sussex was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is not a relevant inquiry or an available remedy under FOIA. 5 U.S.C. § 552(a)(4)(B); *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (holding that remedial provision

of FOIA limits relief to ordering disclosure of documents to FOIA complainant). Instead, in rejecting Plaintiffs' assertion of government misconduct or negligence, the Court pointed to Plaintiffs' own admission that if "'the expected impropriety did not occur then the case immediately is at an end,'" Mem. Op. at 11, and the evidence before the Court plainly sufficed to show that Plaintiffs' speculation of impropriety was unfounded. In short, Plaintiffs cannot demand the withheld information to contest in this FOIA action issues of immigration law or procedure, *see Tax Analysts*, 410 F.3d at 722—issues they have no standing to contest in the first place. *Cf. Dep't of State v. Muñoz*, 602 U.S. 899, 917 (2024) ("Lest there be any doubt, [our precedent] does not hold that citizens have procedural due process rights in the visa proceedings of others.").

Plaintiffs' argument that the Court should appoint its own expert witness or an amicus to review the in camera filings lacks merit for similar reasons. Pl. Mot at 14-15. The *Favish*, 541 U.S. at 175 balancing test puts the burden on the requester to "produce any evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Courts start with the presumption that government agencies properly discharged their duties. *Id.* at 174 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). In asking the Court to appoint an independent expert or amicus to review the in-camera submissions, Plaintiffs are asking the Court to appoint someone to look for the evidence of government impropriety that Plaintiffs were unable to produce themselves as required under *Favish*, 541 U.S. at 175. A similar analysis applies for records withheld solely under Exemption 6. As the requester, Plaintiffs "bear the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Associated Press v. Dep't of Def.,* 549 F.3d 62, 66 (2d Cir. 2008); *see also Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same"). As the public can discern through

the unsealed opinion, the Court viewed the facts about the Duke's admission and made an independent determination that the records would not reveal evidence of government impropriety or any other public interest in disclosure that would outweigh the Duke's privacy interest in his immigration information.  *See, e.g.,* Mem. Op at 11.

Finally, Plaintiffs argue that they should have had the opportunity to weigh in on whether Defendant had to provide Department of State records as part of the in camera process.  Pl. Mot at 9.  But in advancing this argument, Plaintiffs overestimate the degree to which this colloquy between Defendant and the Court affected the outcome of the case and ignore relevant information in the Court's opinion.  Defendant declined to provide these records for the Court's inspection the records "are maintained at the Department of State (a non-party)."  Mem Op. at 6 n.2.  In other words, the records are not maintained at the Department of Homeland Security, the addressee of the FOIA request that is the subject of this lawsuit.  *See* Heritage Request (ECF No. 7-2). Moreover, the Immigration and Nationality Act prohibits the Department of State from releasing records "pertaining to the issuance or refusal of visas or permits to enter the United States," 8 U.S.C. § 1202(f), so, had Plaintiffs sought such records from the State Department, the State Department would withhold them under FOIA Exemption 3.  *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 739 (D.C. Cir. 1983) (applying FOIA Exemption 3, finding that 8 U.S.C. § 1202(f) prohibits disclosure of "information pertaining to the denial of [a] visa application," even to the applicant himself).  Thus, State Department records reasonably were not provided in this action, and Plaintiffs' had no role to play concerning the non-provision of any records by that non-party.

### III. Plaintiffs' Assumptions About the Ex Parte Declarations Lack a Basis in Fact.

Even though they have not seen the declarations, Plaintiffs claim the ex parte declarations likely contained legal arguments or misrepresentations.  Pl. Mot at 10.  Plaintiffs base this argument on criticisms of Defendant's public declarations, alleging that they were made in bad

faith. *Id.* But Plaintiffs have raised these arguments before, Pl. Mot to Strike (ECF No. 30), and the Court properly rejected them. Order (ECF No. 46). An Agency may meet its burden to justify withholding exempt material by "filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Just.*, 830 F.2d 210, 217 (D.C. Cir. 1987). That is what Defendant did here. The public declarations considered Plaintiffs' reasons for why the public interest in disclosure outweighed the Duke of Sussex's privacy interests in the records sought and explained why any public interest in the records did not override the Duke's privacy interest in his immigration records. *See e.g.,* Panter Decl. ¶¶ 20-25; Suzuki Decl. ¶¶ 21, 36-38; Pavlik-Keenan Decl. ¶¶ 18-26.

Plaintiffs argue that the declarations should be viewed with skepticism because the declarants wrote them before knowing all the full catalogue of responsive records. Pl. Mot at 11-12. In raising this argument, Plaintiffs misunderstand the purpose of *Glomar*. A *Glomar* response is appropriate when "the existence or nonexistence of the requested records is itself information protected by [the exemption]." *Roth v. Dep't of Just*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). Moreover, "an agency need not search for responsive records before invoking [*Glomar*]." *Schaerr v. Dep't of Just.*, 69 F.4th 924, 926 (D.C. Cir. 2023). As the declarants explained, revealing whether Defendant had records regarding a request for an INA Section 212(g) waiver or whether it had records regarding the Duke of Sussex in all but one of the listed databases would reveal information about the Duke's immigration status and the circumstances behind his admission that is itself exempt from disclosure under Exemptions 6 and 7(C). Panter Decl. ¶¶ 32-33; Suzuki Decl. ¶¶ 31-39; Pavlik-Keenan Decl. ¶¶ 18-26.

Further, Defendant's acknowledgment that it ultimately searched for records, yet it would not publicly acknowledge whether such records do or do not exist, does not undermine the validity

of the *Glomar* response. Defendant performed these searches because the Court ordered it "to detail, with particularity, the records it is withholding." Order at 2 (ECF No. 38). And in acknowledging that it performed the search, Defendant never publicly disclosed the fruits of the search and thus never confirmed or denied that it had records evidencing a request for a waiver, or that it had information regarding the Duke of Sussex in any CBP or Biometric Identity Office database, other than the entry and exist database. Panter Decl. ¶¶ 32-33; Suzuki Decl. ¶ 37; Pavlik-Keenan Decl. ¶ 25. Thus, that Defendant conducted a search at the Court's direction that the government would not necessarily have had to perform does not in any way undercut the *Glomar* invocation, as no information about whether the search yielded any responsive records was ever publicly detailed. Put simply, the government's declarations appropriately justified the *Glomar* reliance, which in no way turns on whether the search would or did yield anything responsive, and therefore Plaintiffs' accusations of bad faith lack the requisite support.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for relief from judgment.

Dated: November 19, 2024          Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/ John J. Bardo*
JOHN J. BARDO
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*