IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HERITAGE FOUNDATION & MIKE HOWELL,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br><br>*Defendants*. | Case No. 23-cv-1198 (CJN) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(E)**
**(ORAL ARGUMENT REQUESTED)**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    THERE IS NO DISPUTE OVER THE APPLICABLE LEGAL STANDARD FOR CONSIDERING *EX PARTE* DECLARATIONS. ............................................................... 1

    II.    THE *EX PARTE* PROCEEDINGS HERE WERE IMPROPER AND PREJUDICIAL ..... 2

        A.    The Court Failed to Comply with D.C. Circuit Precedent. ........................................... 2

        B.    The Consideration of *Ex Parte* Materials was Prejudicial. ........................................... 5

            1.    The Court's Opinion Turned Entirely on the Sealed Materials. ............................. 5

            2.    The *Ex Parte* Declarations Likely Contained Legal Argument or Were Made in Bad Faith. .................................................................................................................. 8

            3.    No Procedures Were Employed to Minimize the Impact of the Additional Improper *Ex Parte* Proceedings. ........................................................................... 10

    III.    BRIEFING ON MEASURES TO AMELIORATE THE LACK OF ADVERSARIAL TESTING IS APPROPRIATE WHERE THE ENTIRE RATIO OF THE COURT'S DECISION IS REDACTED. ............................................................................................. 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Al-Hela v. Biden*, 66 F.4th 217 (D.C. Cir. 2023) .............................................................................. 10

*Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462 (D.C. Cir. 1983) ............................................. 1, 2, 3, 4

*Armstrong v. Exec. Off. Of the Pres.*, 97 F.3d 575 (D.C. Cir. 1996) .................................. 1, 3, 4, 8

*Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1 (D.D.C. Sept. 22, 2021) ........................................ 5

*Elec. Frontier Found. v. DOJ*, No. 07-cv-403(TFH), 2007 WL 9813149 (D.D.C. Aug. 14, 2007) ................................................................................................................................................. 4

*Judicial Watch v. DOJ*, No. 19-cv-879 (CJN), 2022 WL 898825 (D.D.C. Mar. 28, 2022) ........... 5

*Lykins v. DOJ*, 725 F.2d 1455 (D.C. Cir. 1984) ............................................................. 2, 3, 5, 7, 8

*Medina Hincapie v. U.S. Dep't of State*, 700 F.2d 737 (D.C. Cir. 1983) ..................................... 12

*Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061, 1065 (D.C. Cir. 2023) ............................................................................................................. 2, 3, 4, 5

*Spirko* v. U.*S. Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998) ............................................................ 5

*Summers v. DOJ*, 140 F.3d 1077 (D.C. Cir. 1998) .......................................................................... 6

*Tobias v. U.S. Dep't of Interior*, No. 18-cv-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) ............................................................................................................................................... 5

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ........................................................................... 6

**Statutes**

5 U.S.C. § 552(a)(4)(B) .................................................................................................................... 3

8 U.S.C. § 1202(f) ........................................................................................................................... 12

**INTRODUCTION**

Plaintiffs' Rule 59 Motion (ECF No. 50) ("Plaintiffs' Motion" or "Plts. Mot.") explains that the proceedings in this case violated the D.C. Circuit's rules concerning the use of *ex parte* declarations thrice over. First, the Court improperly considered *ex parte* declarations. Second, the Court did not explain its justification for allowing *ex parte* declarations to be filed or analyze whether portions of those declarations could be made public in redacted form. Third, a separate *ex parte* filing was not even docketed. Plaintiffs were prejudiced by these errors because they led to a breakdown in the adversarial process. Accordingly, this Court should vacate its Memorandum Opinion ("Opinion or "Op.") and Order (ECF Nos. 48 and 46) and conduct further adversarial proceedings pursuant to the procedures set forth by the D.C. Circuit. Nothing in Defendant's Opposition (ECF No. 53) ("Defendant's Opposition" or "Def. Op.") changes this conclusion.

**ARGUMENT**

**I.    THERE IS NO DISPUTE OVER THE APPLICABLE LEGAL STANDARD FOR CONSIDERING *EX PARTE* DECLARATIONS.**

Defendant does not dispute that, "[w]hereas the use of *in camer*a review is generally encouraged, the use of *in camera* affidavits has generally been disfavored." *Armstrong v. Exec. Off. Of the Pres.*, 97 F.3d 575, 580 (D.C. Cir. 1996). Nor does Defendant take issue with then-Judge Scalia's pronouncement that *ex parte* declarations are permissible only "where absolutely necessary." *Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983). And Defendant expressly agrees that "a district court may receive an *ex parte* affidavit if, and only if, '(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted.'" *See* Def. Mot. at 3

1

(quoting *Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061, 1065 (D.C. Cir. 2023) (in turn quoting *Arieff*, 712 F.2d at 1471)).

## II. THE *EX PARTE* PROCEEDINGS HERE WERE IMPROPER AND PREJUDICIAL.

### A. The Court Failed to Comply with D.C. Circuit Precedent.

1. Under the undisputed standard laid down by Justice Scalia, this Court lacked power to consider *ex parte* declarations unless "the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits *and in the records themselves*." *Arieff*, 712 F.2d at 1471 (emphasis added). This Court never concluded that it *could not* resolve the case without going beyond the public declarations and "the records themselves", let alone "justified" the use of *in camera* filings "to the greatest extent possible on the public record." *Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984). Accordingly, the Court erred. *See* Plts. Mot. at 4.

Revealingly, Defendant cannot bring itself to directly defend the *In Camera* Order (ECF No. 38) or its reasoning. Rather, it attempts to ascribe a *post hoc* rationale to the *In Camera* Order that complies with *Arieff*. Defendant asserts that "the Court anticipated that the underlying documents would not be 'all that easily decipherable without explanation'" Def. Opp. at 4 (quoting Trans. at 51:20–21), and from that concludes that "the Court believed 'the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves,' making *in camera* declarations the appropriate method to evaluate the legality of the withholdings." Def. Opp. at 4 (quoting *Perioperative Servs.*, 57 F.4th at 1065). But this Court did nothing of the sort, let alone make the

2

necessary findings under *Arieff* with the specificity the D.C. Circuit requires. *See, e.g.*, *Perioperative Servs.*, 57 F.4th at 1067; *Armstrong*, 97 F.3d at 581; *Lykins*, 725 F.2d at 1465.

To start, Defendant truncates its quotation from the oral argument transcript. The full quotation reads:

> I understand the government's argument that even if I do that, I should, in the first instance, permit or accept declarations, rather than the underlying materials. Frankly, that's my view generally because it's often the case that the underlying documents aren't all that easily decipherable without explanation, and sometimes the declarations help that.

Trans. at 51:15–22. Far from supporting Defendant's position the full quotation undermines it. The Court was clear that it was speaking in *generalities*, and generalities do not comply with the D.C. Circuit's clear command that a Court may not accept *in camera* declarations unless it determines "the validity of the government's assertion of exemption *cannot* be evaluated without information beyond that contained in the public affidavits and in the records themselves." *Arieff*, 712 F.2d at 1471 (emphasis added).

Moving on to what the Court *actually* held in ordering *in camera* declarations, the *In Camera* Order pointedly does not make the findings Defendant ascribes to it; it did not consider the issue at all and did not make the required findings. *See, e.g.*, *Perioperative Servs.*, 57 F.4th at 1067; *Armstrong*, 97 F.3d at 581; *Lykins*, 725 F.2d at 1465. To start, the Court erred in parsing the statute itself. The Court stated "FOIA authorizes the Court to review declarations and/or contested records *in camera*" citing 5 U.S.C. § 552(a)(4)(B). *In Camera* Order at 1. But 5 U.S.C. § 552(a)(4)(B) pointedly does not authorize *in camera* declarations, rather it provides the Court "may examine *the contents of such agency records in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section." 5 U.S.C. § 552(a)(4)(B) (emphasis added). As Defendant itself acknowledges, the D.C.

3

Circuit authority cited by the *In Camera* Order dealt solely with the *in camera* review of *records*: "the parties' dispute of the withheld documents centered on 'the contents of the withheld documents,' 'not the parties' interpretation of those documents.'" Def. Mot. at 4 (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998)).

Because the Court did not make the required findings—it erred.[1]

**2.**    Even if the District Court had complied with Justice Scalia's rule in *Arieff*, the District Court erred in that it did not conduct and docket an independent analysis of whether any portion of the *ex parte* declarations could be released. *See, e.g.*, *Armstrong*, 97 F.3d at 580 ("when

---

[1] Defendant makes much ado about the fact that the Court is not "required view the underlying records *in camera* as a prerequisite to ordering *in camera* declarations." Def. Opp. at 5. To start that does nothing to solve the core problem—that the *In Camera* Order violates Justice Scalia's rule in *Arieff*. But in any event, under *Arieff* the Court would be required to review the records *in this case* prior to seeking in camera declarations. As noted, the parties agree this case turns on the content of the records. *See* Def. Opp. at 4. The Court could not comply with *Arieff* without reviewing the records in this Exemption 6 and 7(C) case. If Plaintiffs are correct and the records reveal clear Department impropriety (more on that later) that resolves the case. Therefore, without first reviewing the records the Court cannot conclude that "the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves." *Arieff*, 712 F.2d at 1471 (emphasis added). To be sure, in a different case this logic would not apply and Plaintiffs concede their categorical statement was inartful for which they apologize to the Court and Defendant. For example, in *Arieff* the requestors sought the names of drugs provided to the Office of Attending Physician to the United States Congress and the withholding turned on whether releasing the names of certain drugs would cause speculation that Members of Congress and others had conditions those drugs were designed to treat. *Areif*, 712 F.2d at 1464–66. There, consideration of the *ex parte* affidavit was proper because the answer to that question was necessarily *external* to the records themselves; "Evaluation of the claim that the name of the drug would disclose the disease for which it was prescribed would be impossible without further explanation; and that explanation would of necessity disclose the name of the drug itself." *Id.* at 1470; *see also cf. Elec. Frontier Found. v. DOJ*, No. 07-cv-403 (TFH), 2007 WL 9813149, at *4 (D.D.C. Aug. 14, 2007) ("Furthermore, contrary to EFF's assertion that it is improper to review classified affidavits *in camera* without also reviewing the documents at issue, several cases suggest that an *in camera* review of affidavits alone not only is permissible, but might be warranted in cases involving national security issues."). In so far as Defendant analogizes this case to the District Court's Opinion in *Perioperative* Services, it ignores that there the Court *applied Arieff*. *See Perioperative Servs.*, 57 F.4th at 1065–66.

4

a district court uses an *in camera* affidavit, it must both make its reasons for doing so clear and make as much as possible of the *in camera* submission available to the opposing party"); *accord Perioperative Servs.*, 57 F.4th at 1067; *Lykins*, 725 F.2d at 1465. Defendant does not respond at all to this argument so it should be treated as conceded. *See Judicial Watch v. DOJ*, No. 19-cv-879 (CJN), 2022 WL 898825, at *8 (D.D.C. Mar. 28, 2022); *Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1, 9–10 (D.D.C. Sept. 22, 2021); *Tobias v. U.S. Dep't of Interior*, No. 18-cv-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021).

      **B.**      **The Consideration of *Ex Parte* Materials was Prejudicial.**

Defendant does not directly engage with much of Plaintiffs' submissions as to prejudice. But Defendant does appear to agree that the analysis of prejudice focuses on whether there was a breakdown of the adversarial process. *See* Def. Mot. at 6. Under that standard the prejudice here is severe and requires vacatur of the Opinion and further briefing on remedy.

      **1.**      **The Court's Opinion Turned Entirely on the Sealed Materials.**

      **1.**      Plaintiffs' Motion sets forth in detail how the *ratio* of the Court's Opinion relied entirely on sealed material and thus directly impaired further adversarial testing on the appeal. *See* Plts. Mot. at 5–7. The immense difficulty in framing an appeal of an opinion whose entire *ratio* is redacted and which relies on entirely secret filings clearly constitutes prejudice because it drastically impairs adversarial proceedings by (perhaps) forcing the appellate court to simply review the secret materials in chambers and come to their own conclusions without the benefit of any argument from Plaintiffs. That is precisely why in FOIA cases a Vaughen Index and detailed judicial findings are required—to ensure some ability for meaningful adversarial appellate review. *See, e.g.*, *Spirko* v. *U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998) (Courts should guard against concern that even in camera review of records "may not be amenable to meaningful

5

review"); *Summers v. DOJ*, 140 F.3d 1077 (D.C. Cir. 1998) (reversing because District Court's failure to make adequate factual findings impeded appellate review); *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973) (requiring Vaughen Index in part because without it "[a]n appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; it must conduct its own investigation into the document. The scope of inquiry will not have been focused by the adverse parties and, if justice is to be done, the examination must be relatively comprehensive.").

**2.**    Defendant's responses to Plaintiffs' submission are unavailing. As an initial matter, Defendant simply asserts that "the public declarations and the Court's unsealed opinion sufficiently explained why the Government withheld any responsive records in full and why the Court upheld the Government's decision." Def. Opp. at 6. But the only explanation Defendant proffers, that "based on [the *ex parte* declaration] . . . , the Court did not find evidence of government impropriety" (Def. Mot. at 7), proves Plaintiffs' point—the *entire ratio* of the Court's decision is redacted.

Moving on, the Defendant appears to seize on Plaintiffs' discussion of the portion of the Court's opinion that states;

> Heritage's first argument is based on its contention that in March 2020 the Duke entered the United States either by disclosing his past drug use (and was admitted inappropriately) or failing to disclose his past drug use. *See supra* at 3–4. REDACTED. As Heritage puts it, "[I]f the records fail to shed light on those questions, or show that in fact the expected impropriety did not occur then the case immediately is at an end; there is no need to evaluate the sufficiency of Plaintiffs' asserted public interest or conduct the complex balancing inquiry. Judgement may simply be entered for Defendant." *See* Pl. Cross-Mot. for Summ. J., ECF No. 26-1 at 46.

Op. at 11. *See* Def. Opp. at 8. Defendant reasons it really does not matter whether the records failed to shed light on the "those questions" or whether there is "some independent reason to

conclude the impropriety did not occur" (Plts. Mot. at 6) such as admission via parole because Plaintiffs are not entitled to "supplemental briefing and expert declarations on potential impropriety." Def. Mot. at 8.

As an initial matter this confuses the record. Plaintiffs did not confine their arguments to the questions identified by the Court in the foregoing portion of it its Opinion. Rather, Plaintiffs submitted there was *no* proper method by which the Duke of Sussex could have been admitted. Thus, Plaintiffs point is that if Defendant "paroled" the Duke of Sussex into the country in the same manner as illegal aliens pouring over the Nation's Southern Border that would be so illogical and illegal that Plaintiffs did not even think it in issue. *Cf.* ECF No. 35 at 11–12 (discussing Defendant's arguments first made in reply regarding a diplomatic visa).[2]

And in any event, Defendant misses the point. The lack of adversity is still present in that the *ratio* of the Court's opinion is unknown making it extraordinarily difficult to appeal.

Defendant also misunderstands *Lykins*. It does not matter that here (unlike in *Lykins*) the public filings detailed "the FOIA exemptions relied upon, detailed the reasons they were claimed, and explained that there was no meaningful non-exempt information that could be segregated for release" precisely because the Opinion turns entirely on Defendant's *nonpublic filing*. Def. Mot. at 7. The prejudice in *Lykins* was not confined to its facts, but turned on the lack of adversarial testing. *See Lykins*, 725 F.2d at 1465. As the D.C. Circuit put it in distinguishing *Lykins* in

---

[2] Plaintiffs do not seek some free ranging type of "Administrative Procedure Act case" review (Def. Mot. at 8), but rather assert prejudice because if the *ex parte* declarations made a factually or legally incorrect statement (which is likely) Plaintiffs were unable to respond to it and thus there was a lack of adversity.

7

*Armstrong*, "[i]n *Lykins* the court decided that a document was properly withheld based almost exclusively on the *in camera* affidavit." *Armstrong*, 97 F.3d at 581.[3] So to here.

In the end the procedure employed by the Court prejudiced Plaintiffs. Perhaps the end result under the correct procedure would be the same, but that does not matter. What matters is that there was and is prejudice from improper procedures and that prejudice was not harmless.

**2.   The *Ex Parte* Declarations Likely Contained Legal Argument or Were Made in Bad Faith.**

Defendant entirely misunderstands Plaintiffs' submissions concerning the *ex parte* declarations. The point is that Plaintiffs were prejudiced because they could not respond to those dispositive declarations which on the public record likely would have been significantly undercut, if not destroyed, by adversarial testing.

**1.**   To start, Defendant does not appear to dispute Plaintiffs imminently' reasonable conclusions that the *ex parte* declarations likely contain the same legal arguments and misrepresentations found in the public declarations. *See* Plts. Mot. at 7–8. Of course, that supports a showing of prejudice; Plaintiffs were unable to respond.

**2.**   Defendant's only response to the fact that Shari Suzuki's public declaration (ECF No. 23-5) was made in bad faith (*see* Plts. Mot. at 8) is to assert that the Court "properly rejected" this argument. Def. Opp. at 11 (citing ECF No. 46). To be sure, the Court denied the Motion to Strike. *See* ECF No. 46. But nothing in the Court's Opinion or Order says anything about whether the Court did so on the merits, because it found bad faith but disagreed as to remedy[4], or simply

---

[3] To be sure, *Armstrong* also identifies the failures parsed in Defendant's Opposition, but that just shows that *Lykins* turned on impairment of the adversarial system generally, not factually specific impairments. *See* Def. Opp. at 7–8; *Armstrong*, 97 F.3d at 581.

[4] *Defendant* did not contest that Ms. Suzuki maintained a frivolous *Glomar* assertion. *See* ECF No. 34 at 2.

8

because it viewed the matter as moot. And in any event, the Motion to Strike takes on added importance from when it was filed in the context of the *ex parte* declarations because while the Suzuki Declaration's patently absurd contention that one could *Glomar* whether the Duke of Sussex ever entered the country is easily disproved by public facts, other lies may not be as easily disprovable. *See* ECF No. 30-1 at 2–10. Thus, discovery may well be appropriate prior to receipt of an *ex parte* declaration from the same declarant, *i.e.*, without adversarial testing. *Id.* at 16.

Simply put, Plaintiffs were severely prejudiced because they were unable to adversarially test a dispositive declaration made by a declarant who previously acted in extreme bad faith in this case.

    **3.**    Defendant does not appear to dispute the fact that the public declarations all swore that Plaintiffs lacked a substantial public interest in the requested records and that the Duke of Sussex's privacy interest outweighed any public interest without knowing what the records contained. *See* Plts. Mot. at 7–8. Nor does Defendant seek to modify its prior statement in response to the *In Camera Order* that "Defendant now needs to conduct a search in order to provide a meaningful response to the Court's order" (*id.*) to provide declarations "that detail, with particularity, the records it is withholding and the particular harm that would arise from public disclosure of them." ECF no. 40 at ¶ 3 (quoting *In Camera* Order at 2). Thus, as Plaintiffs explained, it is clear that all declarants asserted a *Glomar* without any factual basis because they did not know whether the records actually supported a *Glomar*. *See* Plts. Mot. at 8–9. If an exemption depends on what is in the records—as Defendant admits here (Def. Opp. at 4)—then those records must be reviewed prior to making categorical statements concerning the public interest and balancing. Thus, there is real prejudice here because the declarants acted

9

inappropriately in this case and yet Plaintiffs were unable to adversarially test their dispositive *ex parte* declarations.

Defendant's only response is that Plaintiffs "misunderstand the purpose of *Glomar*" and even in the fact and document specific context of Exemptions 6 and 7(C) a *Glomar can* be asserted without looking at the underlying records. Def. Mot. at 11. The implications of the Defendant's argument are breathtaking. Take a hypothetical case to illustrate. A requestor seeks DOJ investigative files concerning Mr. X. who they argue actually committed the crime for which the requestor is serving a life sentence. Under Defendant's view because the investigation into Mr. X was not public it may simply *Glomar* the matter and be done with it. It does not matter that a search would reveal an FBI- 302 with a full confession Mr. X made a year after requestor was convicted that has a cover note "don't show to defense; we cannot afford a wrongful conviction politically." That cannot be right and it follows that Plaintiffs were prejudiced.

### 3. No Procedures Were Employed to Minimize the Impact of the Additional Improper *Ex Parte* Proceedings.

Defendant does appear to dispute that the Court erred when it failed to docket Defendant's response to this Court's Order (ECF No 45) at least insofar as concerns the information revealed in the Court's Opinion at 6 n.2. *See Al-Hela v. Biden*, 66 F.4th 217, 240–41 (D.C. Cir. 2023) (*ex parte* proceedings must be docketed). Instead, Defendant appears to claim that there was no prejudice from the error because "Plaintiffs overestimate the degree to which this colloquy between Defendant and the Court affected the outcome of the case and ignore relevant information in the Court's opinion." Def. Mot. at 10. Defendant's "relevant information" is simply the portion of Defendant's *ex parte* submission summarized in the Court's Opinion.

Defendant's first argument is a complete *non sequitur*. As Defendant notes elsewhere, prejudice from failing to docket an *ex parte* submission accrues at the denial of notice and opportunity to be heard concerning that submission, *i.e.*, a complete breakdown in the adversarial process. *See* Def. Mot. at 6. Thus, it is no answer to say that on the *ex parte* record the *ex parte* filing was not *that* important. What matters is that Plaintiffs were denied an opportunity to adversarially test Defendant's arguments.

As to Defendant's second argument, far from "ignor[ing] relevant information in the Court's opinion" Plaintiffs set out in detail how failure to docket that information when it was filed impeded Plaintiffs' ability to adversarially test Defendant's case. *See* Plts. Mot. at 9–10. Tellingly, Defendant does not reply to Plaintiffs' submissions on this point (which would have illustrated there were live issues Plaintiffs were denied the opportunity to argue) but simply restates the content of its *ex parte* submission filing. *See* Def. Opp. at 10.

Moreover, even on its own terms Defendant's non-response supports Plaintiffs. The Court's Opinion notes that Defendant declined to produce certain records for *in camera* review that were "*maintained* at the Department of State (a non-party)." Op. at 6 n. 2 (emphasis added). Plaintiffs' Motion submitted that Plaintiffs were thus denied the opportunity to explore whether the records "maintained" by the State Department were in fact in Defendant's *possession* (most A-Files contain copies of State Department forms) and thus directly subject to the FOIA Request. *See* Plts. Mot. at 10. Notably, Defendant not only does not respond to Plaintiffs' submissions, but it carefully parses its restatement of its *in camera* position that "the records 'are *maintained* at the Department of State (a non-party).'" Def. Mot. at 10 (quoting Mem Op. at 6 n.2) (emphasis added). Specifically, Defendant reiterated, "[i]n other words, the records are not *maintained* at the Department of Homeland Security, the addressee of the FOIA request that is the subject of this

11

lawsuit." *Id.* (emphasis added).  That Defendant carefully hews to its use of "maintained", rather than simply deny that DHS has copies of the records in question in its possession, strongly suggests that Plaintiffs are correct and that DHS does have copies in its possession that are responsive to the Request.  *See* Webster's (3d ed.) ( Maintain "to keep in a state of repair, efficacy, or validity: preserve from failure or decline"); OED (Maintain "To keep up, preserve, cause to continue in being (a state of things, a condition, an activity, etc.); to keep vigorous, effective, or unimpaired; to guard from loss or deterioration").

As to 8 U.S.C. § 1202(f), Defendant's restatement of the issue not only ignores the fact that State Department records generated as part of the visa process are routinely produced by Defendant in A-files (*see* Plts. Mot. at 10), but it also highlights the significance of this routine production. Defendant's own authority holds that 8 U.S.C. § 1202(f)'s withholding provision is mandatory— not discretionary.  *See Medina Hincapie v. U.S. Dep't of State*, 700 F.2d 737, 741–72 (D.C. Cir. 1983).  Thus, Defendant's prior production of State Department visa related forms was not only not discretionary, but presumably reflected Defendant's legal conclusion that 8 U.S.C. § 1202(f) *did not apply* to copies of those forms used by Defendant for non-visa related purposes.  This merely goes to show that the application of 8 U.S.C. §1202(f) is nuanced and that Plaintiffs were prejudiced by their inability to present relevant legal argument.

### III. BRIEFING ON MEASURES TO AMELIORATE THE LACK OF ADVERSARIAL TESTING IS APPROPRIATE WHERE THE ENTIRE RATIO OF THE COURT'S DECISION IS REDACTED.

Defendant profoundly misunderstands Plaintiffs' submissions concerning how this Court should attempt to cure the prejudice of its improper consideration of *ex parte* declarations and undocketed *ex parte* proceedings.  Plaintiffs' Motion sets forth a number of *potential* options to restore adversity to these proceedings precisely because to a certain extent the prejudice cannot be

directly remediated. The Court already viewed the *ex parte* declarations and that bell cannot be undone. Rather, the remedy must be collateral. Defendant thus misses this point when it complains that Plaintiffs' proposed remedies "seek to turn this FOIA case into an Administrative Procedure Act case" by seeking an "opportunity to contend that the Government's decision to admit the Duke of Sussex" violated the APA. Def. Opp. at 8. Plaintiffs simply seek a path to restore the adversity the D.C. Circuit requires. This error infects Defendant's subsidiary argument.

To take an example, Plaintiffs suggested that this Court appoint its own expert not to "appoint someone to look for the evidence of government impropriety" (Def. Opp. at 9), but rather because such a measure may remedy the lack of adversarial testing in a case involving the factually complex field of immigration law and where the declarants had been less than candid with the Court. *See* Mot. at 11. Whether such a measure would be appropriate in a run of the mill FOIA case is beside the point; the point here was to cure the prejudice from the lack of adversity. And again, the result may not change at the end of the day, but what matters here is curing the prejudice from lack of adversity.

Moreover, Plaintiffs' suggestions were not intended to be exclusive, but merely to illustrate that there are paths forward on which the Court should seek further briefing. Other measures may be appropriate. For example, the Court should also seek the parties' views on whether full *in camera* review of the disputed records is appropriate.

## CONCLUSION

This Court should vacate its opinion and order, enter all *ex parte* correspondence on the docket, unseal *ex parte* correspondence consistent with the Opinion, direct the Plaintiffs to brief any legal issues raised in the *ex parte* declarations or relating to the *ex parte* declarations, and allow Plaintiffs to brief procedures to ameliorate the lack of adversarial testing.

Dated: December 10, 2024                Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email:  neal@cornettlegal.com

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*