# Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION,

                                            Civil Action
              Plaintiff,                    No. 1:23-1198

        vs.                                 Washington, DC
                                            April 30, 2024
U.S. DEPARTMENT OF HOMELAND SECURITY,

              Defendant.                    3:25 p.m.
_____/


              TRANSCRIPT OF EX PARTE STATUS CONFERENCE
          **BEFORE THE HONORABLE CARL J. NICHOLS**
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:


**For the Defendant:**         **John Bardo**
                               **Peter Pfaffenroth**
                               DOJ-USAO
                               601 D Street NW
                               Washington, DC  20530
                               Email: john.bardo@usdoj.gov


**Reported By:**               **Lorraine T. Herman, RPR, CRC**
                               Official Court Reporter
                               U.S. District & Bankruptcy Courts
                               333 Constitution Avenue NW
                               Washington, DC 20001
                               lorraine_herman@dcd.uscourts.gov


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.











































1    public about how the government was dealing with the Duke.

2            I'm not saying that's the case.  I'm just saying

3    that, depending on what the true state of affairs was, that

4    may or may not be true.

5            So my whole point in doing the ex parte discussion

6    and submission was, rather than think about the set of

7    hypothetical possibilities and whether each of them could

8    possibly disclose some conduct by the government that one

9    might want to know about or whatever, was to know with

10   certainty what actually happened and then to think through

11   what disclosing that set of facts would harm, by way of

12   privacy interests, and what it would -- what, if any, public

13   interest it would forward.

14           So while I have some of the "true set of facts"

15   right now, I don't have all of them.  And I well understand

16   that some of this information that we've been talking about

17   today is not at DHS.

18           **MR. BARDO:**  That's correct.

19           **THE COURT:**  I completely understand that.

20           Do I have authority, in your view, to require the

21   executive branch to disclose that information to me by way

22   of declaration or a brief or something like that, all of the

23   relevant true set of facts, even if one of the executive

24   branch agencies is not a defendant and even if one of the

25   executive branch agencies that has relevant information at





1    declarations that lay out all of the relevant facts even

2    though that might require them to get information from a

3    sister agency?

4         **MR. BARDO:**  Could I confer with Mr. Pfaffenroth?

5         **THE COURT:**  Yes, of course.

6         **MR. BARDO:**  Thank you.

7         **THE COURT:**  Of course.

8    (Discussion off the record.)

9         **MR. BARDO:**  So, Your Honor, our position would be

10   getting the State Department involved in this case would run

11   far afield of what exactly plaintiff is seeking.

12        We believe that the issue in this case is whether

13   the Department of Homeland Security is lawfully withholding

14   these records under Exemption 6 and 7(C).  It's about

15   plaintiff's request for these specific records.

16        We would have to research whether the Court is

17   able to get another agency that's not involved in this case

18   into this case, and we would likely need to take it up the

19   chain through various people at State and at Justice.  But

20   this case is really about whether the Heritage Foundation is

21   entitled to these records.

22        **THE COURT:**  No, I agree with that.  Clearly, we're

23   not talking about State Department FOIA production here

24   but --

25        **MR. BARDO:**  Can I mention something else,











1    hived into two separate buckets.  You have buckets over at

2    DHS, which reference State Department materials and

3    decisions, but the documents or at least the reasons for

4    them are over at State and vice versa.

5         So you have a universe of documents that the

6    documents are their own universe but the information isn't

7    contained within that universe only; and that's what makes

8    it complicated in my view.  So I completely understand.  And

9    I'm open to your telling me, By the way, here's the true

10   state of affairs -- this is hypothetical.  Right?

11        This is a true state of affairs but the public's

12   interest in knowing is reduced because if you -- if we had

13   to produce the CBP materials or the DHS materials, that

14   wouldn't tell the whole story.  The public doesn't have an

15   interest in knowing the full story.

16        So even if you think about this as the true state

17   of affairs versus private interest, as you are, Judge

18   Nichols, you may know that but the production of the

19   materials at issue here wouldn't disclose that true state of

20   affairs.  It would disclose the DHS half of it.  I totally

21   get that and I'm open to that argument.  I understand it

22   completely.

23        It seems to me, though, that, thinking about even

24   that argument, it's easier for me to think about the

25   strength of it when I know the true state of affairs.  So

1     I'm not rejecting the argument at all.  It just seems to me

2     that that, like many of the other arguments here, is more

3     easily weighed when I know everything.

4          And so I'll leave it to the government to decide

5     if it would like to do that.  You have until May 10th to

6     communicate however you would like to propose how you would

7     like to proceed.  Again, if you need a little bit more time

8     past the 10th, just let me know that.

9          Yes, Counsel, please.

10          **MR. PFAFFENROTH:**  I apologize, Your Honor.

11          **THE COURT:**  No, please.

12          **MR. PFAFFENROTH:**  Peter Pfaffenroth.  We'll

13     obviously run this up the chain.

14          The only points that I would just like to add are,

15     you know, when we're talking about State records, as the

16     Court just correctly summarized, we're talking about records

17     that are, by statute, exempt.

18          And under the relevant precedence, you know,

19     Congress has already done the balancing there and the

20     weighing there.  This case is unusual and, frankly, more

21     interesting than almost all other FOIA cases because it's

22     the interplay of immigration law and FOIA law.

23          But I know that, you know, various judges of this

24     court have not always been particularly enamored of the

25     consular non-reviewability arguments but the Court is









1    in whether Prince Harry or Sting or anyone else you can

2    think of who is prominent has a particular visa status.

3            Anyway, I don't want to belabor the point.

4        **THE COURT:**  No, I get it.

5        **MR. PFAFFENROTH:**  I know the Court is well aware

6    of all these --

7        **THE COURT:**  No, I know -- I mean, certainly my

8    view is that I have ex parte discussions and ask for

9    ex parte information only in particularly unique cases.  I

10   don't like to do it.  I know the government has a strong

11   interest in not having it happen.

12           It did seem to me that, in this case, given the

13   parade of hypotheticals that Heritage had laid out, some of

14   which, at least in theory, could suggest information the

15   public would have an interest in seeing about the

16   government, that the better path for me was to understand,

17   again, the true set of facts.

18           And then that would be -- I mean, just again, I've

19   said this a couple times but, if all of the relevant

20   information was at DHS, if we didn't have State off to the

21   side, and then I knew right now exactly what happened with

22   all of these things, and that information, again, would be

23   produced if -- because I have the defendant with all of the

24   relevant records in front of me and I would know that

25   production of those FOIA records would be 100 percent of the

1    relevant information, and I had all of that information,

2    then I would be able to weigh the public's interest in

3    knowing that against the privacy concerns.

4         What makes this unique is that we have the added

5    complication -- really two things.  Of course the thing that

6    you've been talking about, which is the State status, but

7    also that, even an order requiring production of every

8    single document here doesn't disclose the true state of

9    affairs.

10        But again, if you assume a counter-hypothetical

11   where all of the information is here, then what I would know

12   in an ex parte setting is an order of disclosure would tell

13   the public what happened and I could say, Does the public

14   have much of an interest in knowing that picture versus the

15   privacy interest?

16        And I was trying to, sort of, get to that point,

17   not because I thought the public had an interest in knowing.

18   I mean, to be really clear, I know you just said this, but

19   everything I've asked today is hypothetical.

20        I'm not suggesting that the public has one iota of

21   interest in knowing any of this because I don't know what

22   actually happened.  And that's the question for you guys to

23   consider is whether I should.

24        **MR. PFAFFENROTH:**  The only other follow-up I have,

25   Your Honor, is about timing --

1          **THE COURT:**  Yeah.

2          **MR. PFAFFENROTH:**  -- because, depending upon how

3     far we have to run this, people may want to read a

4     transcript of the Court's questions, and I don't know how

5     quickly we can get that.  So if -- but I don't want to put

6     pressure on your court reporter if we have a -- we need to

7     get back to you on May 10th.

8          **THE COURT:**  How about we do this.  You know I'd

9     like to know an answer by May 10th, if possible.

10          **MR. PFAFFENROTH:**  Right.

11          **THE COURT:**  I have amazing staff.  As I've said

12     recently, I probably don't say it enough.  I'm sure she will

13     do her level best to get it to you as soon as possible, if

14     that's the case.

15          **MR. PFAFFENROTH:**  I appreciate that, yes.

16          **THE COURT:**  And in the event that, for whatever

17     reason you say, We need a little bit more time, just come

18     back.

19          **MR. PFAFFENROTH:**  Great.

20          **THE COURT:**  I realize that, whereas my original

21     request was for DHS information of course, this is asking

22     for information from a non-party, at least, obviously in a

23     sense.  And that may be more complicated than the prior

24     requests.  So if you need more time, just let me know.

25     Okay?

1          **MR. PFAFFENROTH:**  Thank you, Your Honor.

2          **THE COURT:**  All right.

3          **MR. BARDO:**  Your Honor --

4          **THE COURT:**  Yes.

5          **MR. BARDO:**  -- would you like me to communicate

6     with Ms. Moore?

7          **THE COURT:**  Yes, unless you decide you need to

8     file something.  In other words, I'm envisioning -- I sort

9     of leave it to you to decide how you'd like to come back on

10    May 10th.

11         But as I said before, if you say, We've had a

12    chance to confer, we would like another discussion with you

13    ex parte, Your Honor, then go to Ms. Moore and tell her that

14    because she'll set that up.

15         If you send an email that just says, Yes, we'd

16    like to submit an ex parte filing, can we have 30 days, send

17    that to her.  If you want to submit something ex parte

18    that's like a, We're not doing this and here's why,

19    hypothetically, if it's a filing, then you don't need to do

20    that.

21         **MR. BARDO:**  I understand, Your Honor.

22         **THE COURT:**  Well, actually maybe you have to

23    anyway because it would be ex parte.  So probably, in all

24    circumstances, you're going through Ms. Moore.  Okay?

25         **MR. BARDO:**  I understand, Your Honor.

1          **THE COURT:**  Okay.  Thank you all for your time

2    today.

3          **MR. BARDO:**  Thank you, Your Honor.

4      (Proceedings concluded at 4:30 p.m.)

1                        **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9        _____May 8, 2024_____    ___/s/__Lorraine T. Herman___
10              **DATE**                    **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25